## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HITACHI KOKI CO., LTD.** | : |
| **Plaintiff** | : |
| **vs.** | : **Civil Action Number:** _____ |
| | : **Under 35 USC § 145** |
| **JON W. DUKAS** | : |
| **Director, United States Patent & Trademark Office** | : |
| **Defendant** | : |

## COMPLAINT

Plaintiff, Hitachi Koki, Ltd. ("HKK") for its complaint against Jon W. Dudas, Director of the United States Patent and Trademark Office (the "Director").

### THE PARTIES

1.     Plaintiff HKK is a corporation organized and existing under the laws of Japan, having its principal place of business at 1060 Takeda Hitachinaka-City, Ibaraki-Pref. 312-8502.

2.     Defendant Director is, on information and belief, United States government agency located at United States Patent and Trademark Office, P.O. Box 15667, Arlington, Virginia 22215.

### THE NATURE OF THE ACTION

4.     This is an action to remedy the decision and judgment of the Board of Patent Appeals and Interferences (the "Board") of the United States Patent and Trademark Office, as provided for by 35 U.S.C. § 145. The proceedings relevant to this action are for reissue application Serial No. 08/879,517 in the name of Shigehera Ushiwata entitled "Desktop Cutting Machine With Tiltable Saw" ("the '517 application").

## JURISDICTION AND VENUE

5.      Jurisdiction is based on 35 U.S.C. § 145 and 28 U.S.C. § 1338(a).  Venue is

proper in this judicial district under 35 U.S.C. § 145 and 28 U.S.C. § 1391(b) and (c).

## FACTS GIVING RISE TO THE COMPLAINT

6.      HKK, as assignee of Ushiwata, filed United States Patent Application No.

08/070,799 on June 3, 1993, which application issued as U.S. Patent No. 5,425,294 on June 20,

1995 ("the '294 patent")(Exhibit A).  HKK then filed a '517 application on June 20, 1997,

seeking reissuance of the '294 patent.  On February 7, 2005, HKK received a final rejection of all

pending claims in the '517 application ("the Final Rejections"), on April 11, 2005, appealed the

Final Rejection to the Board of Patent Appeals and Interferences (the "Board").  On October 19,

2006 the Board upheld certain of the rejections made in the Final Rejection (Exhibit B).  HKK

requested that the Board reconsider this decision on December 16, 2006.  HKK's request was

denied on June 21, 2007 (Exhibit C).

7.      The invention described and claimed in the '517 Application is directed to a

compact, desk-top cutting machine having a 45° left-right miter saw capability.

8.      Shigeheru Ushiwata is the first inventor of the subject matter claimed in all

pending claims of the '517 Application.

9.      Mr. Ushiwata has assigned all rights in the '517 Application to HKK.  HKK is the

legal owner of the '517 Application and of the entire right, title and interest in and to the

inventions disclosed and claimed therein.  HKK is the party in interest for the purposes of this

action.

10.    The Board's October 19, 2006 decision erroneously affirmed the following two rejections:

a.    Claims 1-3, 26, 27, 37, 48-56 and 58-62 were found unpatenable under 35 U.S.C. §103 in view of the acknowledged prior art in U.S. Patent No. 5,425,294 (Figures 6, 7 and Col. 1:11-33); U.S. Patent No. 4,574,670 to Johnson ("Johnson"), U.S. Patent No. 1,417,669 to Langworthy ("Langworthy") and U.S. Patent No. 3,013,592 to Ambrosio ("Ambrosio").

b.    Claims 1-3, 26, 27, 37, 48-56 and 58-62 were found unpatenable under 35 U.S.C. §103 in view of the combined teachings of Johnson, Langworthy, Ambrosio and U.S. Patent No. 5,357,824 to Ito et al.

11.    In its denial of HKK's petition for reconsideration, the Board affirmed its decision on June 21, 2007.

12.    HKK, as the assignee of the '517 Application and the party in interest for the purposes of this action, is dissatisfied with all those portions of the Board's decision of October 16, 2006 and June 21, 2006 regarding the '517 Application.

13.    HKK has commenced this action within two (2) months of the Board's decision of June 21, 2006 rendering a judgment in the '517 Application.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff HKK prays for a judgment:

A.    Reversing the October 19, 2006 and June 21, 2007 decisions of the Board;

B.    Adjudging that the '517 Application is entitled to reissuance of Letters Patent of the United States for the invention claimed in claims 1-3, 26, 27, 37, 48-56 and 58-62.

For such other relief as the Court deems proper.

Respectfully submitted,

Date: Aug 21, 2007

By _____

Paul Devinsky (DC Bar No. 250373)
Michael Connelly
McDermott Will & Emery LLP
Attorneys for Hitachi Koki Co., Ltd.
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
202.756.8369
202.756.8087 (Facsimile)

US005425294A

# United States Patent [19]

## Ushiwata et al.

[11] **Patent Number:** 5,425,294

[45] **Date of Patent:** Jun. 20, 1995

[54] **DESK-TOP CUTTING MACHINE WITH TILTABLE SAW**

[75] Inventors: **Shigeharu Ushiwata; Ryuichi Imamura,** both of Fukushima, Japan

[73] Assignee: **Hitachi Koki Haramachi Co., Ltd.,** Fukushima, Japan

[21] Appl. No.: **70,799**

[22] Filed: **Jun. 3, 1993**

[51] Int. Cl.$^6$ ................................................ **B27B 5/20**

[52] U.S. Cl. .................................. **83/471.3; 83/468.3; 83/470; 83/581**

[58] Field of Search ................. 83/471.1, 471.2, 471.3, 83/490, 581, 563, 473, 477.1, 468.3; 30/376, 388

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,694,721 | 9/1987 | Brickner | 83/471.3 |
| 4,869,142 | 9/1989 | Sato et al. | 83/490 |
| 4,934,233 | 6/1990 | Brundage et al. | 83/490 |
| 5,046,390 | 9/1991 | Saski | 83/490 |
| 5,054,352 | 10/1991 | Fushiya et al. | 83/490 |
| 5,181,448 | 1/1993 | Terpstra | 83/490 |
| 5,189,937 | 3/1993 | Garuglieri | 83/477.1 |
| 5,241,888 | 9/1993 | Chen | 83/490 |

### FOREIGN PATENT DOCUMENTS

63-49901  4/1988  Japan .

Primary Examiner—Eugenia Jones
Assistant Examiner—Allan M. Schrock
Attorney, Agent, or Firm—Sughrue, Mion, Zinn, Macpeak & Seas

[57] **ABSTRACT**

A desk-top miter saw with a bevel function is improved through the use of a belt drive transmission between the saw shaft and the motor drive shaft. This allows the unit to be more compact while simultaneously offering a greater bevel tilt range of the saw. A centering detent mechanism is used to correctly locate the turntable for zero-angle (non bevel) cutting.

**5 Claims, 6 Drawing Sheets**





*FIG. 1*

*FIG. 2*

Case 1:07-cv-01504-ESH    Document 1-2    Filed 08/21/2007    Page 3 of 9

## FIG. 3



## FIG. 4



## FIG. 5

*FIG. 6*     **PRIOR ART**



*FIG. 7*     **PRIOR ART**



**U.S. Patent**    June 20, 1995    Sheet 4 of 6    5,425,294



*FIG. 8*

*FIG. 9*

## FIG. 10



## FIG. 11



*FIG. 12*



*FIG. 13*



5,425,294

| 1 | 2 |

**DESK-TOP CUTTING MACHINE WITH TILTABLE SAW**

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

The present invention relates to a desk-top cutting machine whose saw can be tilted rightward and leftward relative to the top of the base of the machine.

### 2. Description of the Prior Art

FIGS. 6 and 7 show a conventional desk-top cutting machine in which a saw shaft 9 supporting a saw 10, and the shaft 12 of a motor 11 are connected to each other through toothed engagement to transmit the motive power of the motor to the saw. Since the saw shaft 9 and the motor shaft 12 are disposed in parallel with each other, the motor 11 projects sideward from a circular saw assembly 8.

To tilt the circular saw assembly 8, a clamping lever 5 is loosened, a holder 6 is tilted, and the lever is thereafter tightened to keep the holder at a desired tilt angle. When a workpiece is normally cut by the tilted saw assembly 8, the angle of the desired tilt is usually 45 degrees. However, the end 15a of a motor housing 15 comes into contact with the top of base 1 when the saw assembly 8 is tilted rightward by an angle of 20 to 30 degrees, as shown in FIG. 7. For that reason, the workpiece cannot be cut at 45 degrees. Therefore, to cut the workpiece, the saw assembly 8 is tilted leftward, the workpiece is cut at the left-hand end and then the workpiece is flipped around and cut at the right-hand end. This means that the efficiency of the cutting work is very low.

To solve this problem, a tiltable circular saw assembly was developed as disclosed in Japanese Utility Model Application (OPI) No. 49901/88. In this machine, a saw shaft and a motor shaft are connected to each other through a bevel gear and a bevel pinion, and the motor housing extends transverse to the saw shaft, so that even if the circular saw assembly is tilted toward the side of the motor by an angle of 45 degrees, a space is left between the top of the base and the end of the housing to make it possible to cut the workpiece with the saw assembly tilted rightward. However, the bevel gear and the bevel pinion are expensive means for motive power transmission. Also, a gear box of high accuracy needs to be provided to reduce backlash between the gear and the pinion, the axes of which orthogonally intersect each other.

To cut the workpiece using the latter machine, the workpiece is supported on the top of the base, a clamping lever is loosened, a holder is swung rightward or leftward to tilt the saw assembly into a desired position, the lever is thereafter tightened to keep the saw assembly in position, and the assembly is then swung down to cut into the workpiece. After cutting the workpiece, the circular saw assembly is moved back to the uppermost location thereof. To cut the workpiece without a tilt, the zero-tilt graduation of a tilt scale provided on the holder is set using an indicator provided on a turntable, to put the holder in position, the clamping lever is then tightened to keep the holder in position, and the saw assembly is thereafter moved down to cut into the workpiece. However, since a tilt scale and the indicator are used to set the circular saw assembly at a zero-tilt angle, the assembly is likely to be inaccurately set at the zero angle due to parallax. Since the heavy circular saw assembly is swung rightward or leftward to be set at a

desired tilt angle, it is difficult to accurately perform angular setting.

## SUMMARY OF THE INVENTION

The present invention was made in order to solve the above-described problems of the conventional desk-top cutting machines.

Accordingly, it is an object of the invention to provide a desk-top cutting machine which includes a bevel saw assembly of a less expensive constitution.

It is another object of the invention to enhance the accuracy of cutting of a workpiece and to make it easy to set the circular saw assembly at a zero-tilt angle.

## BRIEF DESCRIPTION OF THE DRAWINGS

Embodiments of the present invention are hereafter described with reference to the drawings, in which:

FIG. 1 is a cutaway front view of a desk-top cutting machine of the invention;

FIG. 2 is a side view of the machine of FIG. 1;

FIG. 3 is a partial rear view of the invention;

FIG. 4 illustrates the saw in bevel cutting position;

FIG. 5 is a front view of a workpiece illustrating bevel cutting;

FIGS. 6 and 7 illustrate a prior art bevel miter saw;

FIG. 8 is a partially cutaway side view of a second embodiment;

FIG. 9 is a detail of the holder mechanism therefor;

FIG. 10 is a sectional view showing a detent mechanism;

FIG. 11 is a front view of the second embodiment;

FIG. 12 is a partial cutaway front view of a desk-top cutting machine using a gear as a transmission means; and

FIG. 13 is a sectional view of the transmission means of FIG. 12 taken along the line A—A.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

Referring to FIG. 1, a support member 3 for supporting the workpiece 16 is secured to the top of base 1. The turntable 2 is provided in the nearly central portion of the base 1 so that the turntable can be rotated. The holder shaft 4 is disposed at the rear of the turntable 2 so that the axis of the shaft is nearly at the level of the top of the turntable. The holder 6 is supported by the holder shaft 4 so that the holder can be tilted rightward and leftward relative to the turntable 2 about the shaft. The holder 6 has a slender hole 6a (FIG. 3) whose arc center is located at the holder shaft 4. The clamping lever 5 extends through the slender hole 6a. The screw-threaded tip portion of the lever 5 is engaged in tapped holes of the turntable 2. When the lever 5 is loosened, the holder 6 can be tilted within the range defined by the slender hole 6a, about the holder shaft 4. When the lever 5 is tightened, the holder 6 can be kept in a selected position.

The circular saw assembly 8 includes a saw shaft 9, a circular saw 10, a motor 11 for rotating the saw, a transmission belt 13, a cutting handle 14, and a housing 15. The saw assembly 8 is supported by a shaft 7 located at the top of holder 6 so that the assembly can be swung up and down relative to the base 1, about the shaft 7. Motor rotation is transmitted from the motor shaft 12 to the saw 10 through the vertical belt 13 and the saw shaft 9. The housing 15 covers and supports the saw shaft 9 and

5,425,294

| 3 | 4 |

the motor 11. The circular saw 10 is supported by the saw shaft 9.

With the above construction, even if the circular saw assembly 8 is tilted rightward by an angle of 45 degrees as shown in FIG. 1, the end 15a of the housing 15 remains out of contact with the top 1a of the base 1 so that the space between the top of the base and the lower portion of the saw shaft 9 can be utilized to cut the workpiece 16.

To tilt the circular saw assembly 8, the clamping lever 5 is loosened, the holder 6 is tilted to a desired angle, and the lever is thereafter tightened to keep the holder so tilted.

To cut a workpiece 16 as shown in FIG. 5, the circular saw assembly 8 is tilted rightward, the handle 14 is then grasped by hand to swing the assembly down to cut off the workpiece at the right-hand end thereof, the assembly is thereafter tilted leftward, and the workpiece is moved rightward on the base 1 and cut off at its left-hand end.

A transmission means such as a gear 17 may be provided between the saw gear 9 and the motor shaft instead of the transmission belt 13, as shown in FIGS. 12 and 13. The housing 15 may be provided directly over the circular saw 10, as shown in FIG. 4 which is a cut-away front view.

The circular saw assembly is freely tilted right and left with respect to the 0 degree position whereby it is required to set the angle (0 degree) of the right-angle cutting, which is frequently used, with high accuracy.

Referring to FIGS. 8 to 11, a desk-top cutting machine according to a second embodiment will be described. The difference between this embodiment and the preceding one is that a stopper pin 113 for keeping the circular saw assembly 8 from being tilted is fitted in holder 6 so as to be slidable back and forth relative to turntable 2. The turntable has a hole or detent 122 into which the tip portion 113a of the pin can be removably inserted. The hole 122 is located so that the tapered tip portion 113a of the stopper pin 113 can be inserted into the hole when the same assembly is not tilted. Tip portion 113a serves a centering function during insertion to assure accurate alignment between holder 6 and turntable 2.

To tilt the circular saw assembly 8 to cut a workpiece, a clamping lever 5 is loosened, an indicator 104 is set at a desired numerical value to locate the saw assembly at a desired tilt angle, and the lever is thereafter tightened to keep the assembly at this angle. The usual tilt angle of the saw assembly 8 is 45 degrees. The range of the tilt of the assembly 8 is set by adjustment bolts 118 and 119, which cooperate in contact with a stopper 126 projecting from the holder 6.

To cut the workpiece square after cutting a workpiece at a bevel, the assembly is untilted while reading a tilt scale on the holder 6 and the indicator 104, and the stopper pin 113 is thereafter inserted into the hole 122 of the turntable 2 to accurately set the assembly at a zero-tilt angle.

Since the tip portion 113a of the stopper pin 113 is tapered and the hole 122 of the turntable 2 is shaped correspondingly so that it can be inserted into the hole without play, the circular saw assembly 8 can be more accurately set at the zero-tilt angle.

Since the motor shaft in accordance with the present invention is disposed in parallel with the saw shaft of the machine, over the latter shaft, a workpiece can be cut by the machine with the saw assembly thereof tilted

toward the side of the motor. Cutting can thus be performed without flipping the workpiece around. This enhances the efficiency of the cutting work. Since the machine employs a transmission belt, the constitution of the machine is simple and less expensive. With the stopper pin which is fitted in the holder and removably inserted into the turntable to keep the holder at a zero-tilt angle, it is easy to manipulate the machine into a non-tilted position. Since the tip portion of the stopper pin is tapered and the hole of the turntable is shaped correspondingly so that it can be inserted without play, the machine can be more accurately set in the non-tilted position.

What is claimed is:

1. A desk-top cutting machine, comprising:

a base on which a workpiece to be cut is supported, said base including a top surface;

a turntable rotatably disposed in said base and including a top surface;

a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;

a circular saw blade;

a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;

a circular saw assembly having a motor covered by a housing;

a motor shaft of said motor being disposed in parallel with and above said saw shaft;

transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base.

2. A desk-top cutting machine as claimed in claim 1, wherein said transmission means comprises a transmission belt.

3. A desk-top cutting machine as claimed in claim 1, wherein said transmission means comprises a gear.

4. A desk-top cutting machine including a base on which a workpiece to be cut by said machine is supported, comprising:

a turntable rotatably disposed in said base and extending horizontally;

a holder provided at a rear of said base and tiltable in opposite directions about a plane extending vertically with respect to said base;

a circular saw assembly disposed at the upper portion of said holder such that said assembly is swung up and down;

a stopper pin provided in said holder; and

a hole located in said turntable into which said pin is removably inserted, said hole being shaped and located so that said assembly is set only at a zero-tilt angle when said pin is inserted into said hole.

5. A desk-top cutting machine as claimed in claim 4, wherein said stopper pin includes a tapered tip portion and said hole is shaped correspondingly, so that said stopper pin is operative for insertion into said hole without play.

* * * * *

The opinion in support of the decision being entered today was <u>not</u> written for
publication and is <u>not</u> binding precedent of the Board.

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

MAILED

OCT 1 9 2006

US PATENT AND TRADEMARK OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

<u>Ex parte</u> Reissue of U.S. Patent 5,425,294[1]

Appeal No. 2006-2116
Reissue Application No. 08/879,517

Oral Hearing: September 12, 2006

Before McQUADE, GRON, and MEDLEY, <u>Administrative Patent Judges</u>.

GRON, <u>Administrative Patent Judge</u>.

<u>DECISION ON APPEAL</u>

---

[1]    U.S. Patent 5,425,294 issued June 20, 1995, to Shigeharu
Ushiwata and Ryuichi Imamura, from U.S. Application 08/070,799,
filed June 3, 1993.

Appeal No. 2006-2116
Application No. 08/879,517

<u>Background</u>

This is an appeal under 35 U.S.C. § 134 from an examiner's

rejection of Claims 1-3, 26, 27, 37, 48-56 and 58-62 of Reissue

Application 08/879,517, filed June 20, 1997.  We are asked to

review:[2]

(1) a rejection of Claims 1-3, 26, 27, 37, 48-56 and 58-62

under 35 U.S.C. § 103(a) as being unpatentable for obviousness

in view of "Prior Art" Figure 6, "Prior Art" Figure 7, and the

"Description of the Prior Art" at column 1, lines 11-33, in

10    Appellant's own U.S. Patent 5,425,294; and the prior art

disclosures of George W. Johnson (Johnson), U.S. Patent 4,574,670,

issued March 11, 1986; Gotthold Haffner (Haffner), DE 3,640,784,

published March 31, 1988; M. Langworthy (Langworthy), U.S.

1,417,669, issued May 30, 1922; and T. G. Ambrosio, et al.

(Ambrosio), U.S. Patent 3,013,592, issued December 19, 1961;

---

[2]    We are not asked to review the examiner's standing
rejection of Claims 1-3, 26, 27, 37, 48-56 and 58-62 under
35 U.S.C. § 251.  The examiner has stated that an appropriate
supplemental reissue oath/declaration under 37 CFR § 1.175(b)(1)
must be received before this reissue application is allowed
(Examiner's Answer, page 3 (EA 3)) and presumes that any and
all defects in the existing reissue oath/declaration filed under
37 CFR § 1.175(b)(1) will be corrected.

2

Appeal No. 2006-2116
Application No. 08/879,517

    (2) a rejection of Claims 1-3, 26, 27, 37, 48-56 and 58-62

under 35 U.S.C. § 103(a) as being unpatentable for obviousness

in view of the combined teachings of Otto Bergler (Bergler),

U.S. Patent 4,531,441, issued July 30, 1985; Katsuyasu Ito et al.

(Ito), U.S. Patent 5,357,834, which issued October 25, 1994, from

U.S. Application 08/063,289, filed May 18, 1993; Johnson; Haffner;

Langworthy; and Ambrosio; and

    (3) a rejection of Claims 1-3, 26, 27, 37, 48-56 and 58-62

under 35 U.S.C. § 103(a) as being unpatentable for obviousness in

view of the combined teachings of Ito; Johnson; Haffner;

Langworthy; and Ambrosio.[3]

    The patentability of Claims 2, 3, 26, 27, 37, 48-56 and 58-62

under 35 U.S.C. § 103(a) stands or falls with the patentability of

Claim 1.  Appellant states (AB 3):

> For the convenience of the Board, Appellant will argue
> the patentability of independent claim 1.  The other claims
> stand or fall together with claim 1.

---

[3]    The examiner refers to a rejection of Claim 37 under
35 U.S.C. § 103(a) for obviousness in view of the prior art
applied to Claim 1 and "Brickner et al. '902" as a "Non-Issue"
(EA 10).  Since the examiner does not completely identify
"Brickner et al. '902" in his answer and appellant acknowledges
that Claim 37 stands or falls with the patentability of Claim 1,
we shall not consider the patentability of Claim 37 separately.

3

Appeal No. 2006-2116
Application No. 08/879,517

While appellant criticizes the examiner for his "piece meal"
citation and application of the pertinent prior art and his
restatements and modifications of existing rejections under
35 U.S.C. § 103 without reopening prosecution, apparently
appellant does not intend to petition its procedural grievances or
otherwise delay our review of the merits of the examiner's latest
restatement of the rejections of its claims (Reply Brief (RB),
pp. 2-6). Accordingly, we proceed to review the examiner's
rejections of the invention appellant claims, as represented by
Claim 1, under 35 U.S.C. § 103 in view of "applicant's admitted
prior art" (hereafter AAPA) or Ito, and the combined teachings of
Johnson; Haffner; Langworthy; and Ambrosio.

The information disclosed, and issues relating to rejections
on appeal based on information disclosed, by certain prior art
refernces have not been fully analyzed, discussed and/or developed
as a result of the haphazard prosecution and briefing in this
case. For example, it is not clear from this record the extent to
which the examiner continues to rely on the prior art teachings of
Langworthy and Ambrosio. Nor has the examiner expressly denied
appellant's argument that Haffner is nonanalogous art. The
examiner's belated citation and application of Haffner has limited

4

Appeal No. 2006-2116
Application No. 08/879,517

his, and hinders our, analysis of the teachings and pertinence
thereof. Moreover, Bergler's teachings appear to be cumulative at
best of all that the AAPA and Ito disclose. In short, the term
"desk-top cutting machine" has not been interpreted, the full
scope and content of the claimed subject matter has not been
determined, the knowledge and skill in the art has not been
discussed adequately, and the differences between all the prior
art cutting machines and the cutting machines appellant claims
have not been clearly identified. Nevertheless, at appellant's
10    urging, we shall consider whether the applied prior art is
analogous, compare the claimed subject matter to the prior art
teachings, look at the pertinent prior art as a whole, and review
the rejections before us to the extent we are able to do so based
on the record before us.

    We find that persons having ordinary skill in the art would
have considered both Langworthy and Ambrosio to be pertinent to
the subject matter claimed and thus analogous prior art. Both
patents teach motor-driven saws with parallel motor and blade
shafts which enable straight, mitre, bevel and compound cutting.
20    We are not convinced by appellant's arguments that the motor/saw
designs these patents describe are nonanalogous to the desk-top

5

Appeal No. 2006-2116
Application No. 08/879,517


cutting machines appellant claims simply because their sizes and

specific applications differ.  Aside from the want or kind of

respective supports, the motor/saw designs utilized by the cutting

machine appellant claims and those described by the cited prior

art all have a basic parallel motor shaft/blade shaft

configuration for straight, mitre, bevel and compound cutting.

Langworthy explicitly states:

> I have utilized a well known or standard type of electric
> motor 1 with its driving shaft 2 protruding therefrom, and
> the saw 3 is of the disk type, of which various sizes may be
> used to adapt it to different conditions.

(Langworthy, p. 1, l. 71-76);

> The saw may be of various sizes, and the guard is also made
> in various sizes complementary to the saw, and these elements
> may be changed at will, to adapt them for different uses.

(Langworthy, p. 2, l. 49-53); and

> The arm may readily be manipulated to attain cuts at various
> angles and depths for cranial and other cuts, and the
> laterally disposed saw affords an instrument which may be
> manipulated with facility and accuracy in the operations.

(Langworthy, p. 2, l. 69-74).

Representative Claim 1 on appeal reads (AB 38, Claims

Appendix):

6

Appeal No. 2006-2116
Application No. 08/879,517

## Claim 1

1.  A desk-top cutting machine, comprising:

a base on which a workpiece to be cut is supported, said base including a top surface:

a turntable rotatably disposed in said base and including a top surface;

10        a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;

a circular saw blade;

a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;

20        a circular saw assembly having a motor covered by a housing;

a motor shaft of said motor being disposed in parallel with and above said saw shaft;

transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of 30        said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base.

In re Zletz, 893 F.2d 319, 13 USPQ2d 1320 (Fed Cir. 1989),

teaches at 321, 13 USPQ2d at 1322:

7

Appeal No. 2006-2116
Application No. 08/879,517

     During patent examination the pending claims must be interpreted as broadly as their terms reasonably allow. When the applicant states the meaning that the claim terms are intended to have, the claims are examined with that meaning, in order to achieve a complete exploration of the applicant's invention and its relation to the prior art.

We find no explicit definition of the term "desk-top cutting

machine" in appellant's supporting specification. Nevertheless,

10   it is sufficient for purposes of this appeal that we are able to

relate the "desk-top cutting machine[s]" appellant claims to the

cutting machines described by the prior art. Based on our

consideration of appellant's specification and all the other

evidence of record, we conclude that persons having ordinary skill

in the art at the pertinent time reasonably would have understood

that the cutting machines described by Ito and depicted in

acknowledged prior art Figures 6 and 7 of appellant's patent are

"desk-top" cutting machines of the same basic type, size and

utility as the "deck-top cutting machine[s]" appellant claims.

20     Moreover, we find that cutting machines encompassed by

appellant's Claim 1 and those described by Ito, Johnson, Ambrosio

and Japanese Laid-Open Utility Model Publication No. 63-49901/

Japanese Utility Model Application (OPI) No. 49901/88 (commonly

cited as prior art pertaining to the particular problem with which

8

Appeal No. 2006-2116
Application No. 08/879,517


both appellant's patent and Ito are concerned (Ushiwata et al.,

U.S. Patent 5,425,294, col. 1, l. 35-36; Ito et al., U.S. Patent

5,357,834, col. 1, l. 18-19)), all pertain to the particular

problem with which the inventor of the patented claims before us

was concerned.  The scope of the particular problem with which the

inventor of the patented claims before us was concerned is broadly

defined in the specification of appellant's U.S. Patent 5,425,294

at col. 1, l. 22-33, as follows (emphasis added):

> When a workpiece is normally cut by the tilted saw assembly
> . . . the angle of the desired tilt is usually 45 degrees.
> However, the end . . . of a motor housing . . . comes into
> contact with the top of [the] base . . . when the saw
> assembly . . . is tilted rightward by an angle of 20 to
> 30 degrees, as shown in FIG. 7.  For that reason, the
> workpiece cannot be cut at 45 degrees.  Therefore, to cut the
> workpiece, the saw assembly . . . is tilted leftward, the
> workpiece is cut at the left-hand end and then the workpiece
> is flipped around and cut at the right-hand end.  This means
> that the efficiency of the cutting work is very low.
>
> To solve this problem . . . .

    Appellant, Ito, Johnson, Ambrosio and Japanese Laid-Open

Utility Model Publication No. 63-49901/Japanese Utility Model

Application (OPI) No. 49901/88 cited in appellant's patent

specification, all sought solutions to substantially the same

problem, i.e., how to make compound angular cuts, including left

and right 45 degree angular cuts, on a workpiece without flipping

9

Appeal No. 2006-2116
Application No. 08/879,517

the workpiece.  To solve the problem, each of Johnson, Ambrosio
and Langworthy describes a compound angle disk cutting apparatus
comprising "a circular saw assembly having a motor covered by a
housing" wherein the "motor shaft of said motor [is] disposed in
parallel with and above the circular saw shaft" as required for
the cutting machine of appellant's Claim 1.  See Johnson's
Figure 1, the composite of cutting member 19, motor 41, and drive
train 43 with "$\pm 45^0$ capability of the cutting member positioning
mechanism **17**" (Johnson, col. 5, l. 14-15; col. 7, l. 11-12);

10    Ambrosio's Figure 1, the composite of blade 10, blade shaft 31,
motor means 11, motor shaft 32, and pulleys 29 and 30 relating to
saws "for varying the angular position of the saw blade relative
to the work" (Ambrosio, col. 1, l. 8-11); and Langworthy's
Figure 1, the composite of disk-type saw 3, motor 1, and driving
shaft 2 for "many different styles of incisions or cuts, with the
instrument at various angles" (Langworthy, p. 1, l. 26-28).

      We find that each of Ito, Johnson, Ambrosio and Langworthy is
analogous prior art to appellant's claimed invention because each:
(1) comes from the same field of endeavor, and/or (2) reasonably

20    pertains to the particular problem with which the inventor is
involved.  In re Clay, 966 F.2d 656, 659, 23 USPQ2d 1058, 1060

10

Appeal No. 2006-2116
Application No. 08/879,517

(Fed. Cir. 1992); <u>In re Deminski</u>, 796 F.2d 436, 442, 230 USPQ 313,

315 (Fed. Cir. 1986).

Appellant would have us limit the field of endeavor to

smaller "desk-top" cutting machines and limit the problem with

which the applicants are concerned to difficulties encountered

making compound angular cuts using smaller "desk-top" cutting

machines. We find appellant's view of the full scope of prior art

analogous to the claimed invention unreasonably restricted with

regard to the sizes and shapes of composites comprising a saw, a

10    saw motor, a transition means, a base for the workpiece, the situs

of the workpiece, the workpiece itself, and problems related to

their utility for compound angular cutting of a workpiece. In our

view, persons skilled in the art would have considered the problem

to which the claimed invention is directed with less regard for

the sizes and shapes of the particular saw, saw motor, transition

means, base for the workpiece, the location of the workpiece and

the workpiece itself. Rather, we find prior art to be analogous

to the full scope of the invention claimed when it reasonably

pertains to the problem more broadly defined by appellant's own

20    specification, <u>i.e.</u>, how to make compound angular cuts, including

left and right 45 degree angular cuts, on a workpiece without

11

Appeal No. 2006-2116
Application No. 08/879,517

flipping it. We find that Ito, Johnson, Ambrosio, and Langworthy
all describe prior art cutting machines analogous to this broader
problem.

We need not consider whether the cutting machines described
by Bergler and Haffner are analogous to the invention appellant
claims. We find their teachings less pertinent to the claimed
invention than the teachings of Ito, Johnson, Ambrosio and
Langworthy. Moreover, we find the disclosure of acknowledged
prior art Figures 6 and 7 and Ito, combined with the teachings of
10    Johnson, Ambrosio and Langworthy, sufficient to support the
examiner's rejection of the subject matter appellant claims for
obviousness under 35 U.S.C. § 103 without application of, or
reference to, the cumulative teachings of Bergler and/or Haffner.

<u>Discussion</u>

The examiner urges, and Appellant does not deny, that
Figures 6 and 7 in appellant's patent specification (acknowledged
Prior Art), and Figure 2 and the discussion thereof in Ito,
describe every aspect of the "desk-top cutting machine" defined by
appellant's Claim 1 but for limitations (a) and/or (b) below:

20           (a) a motor shaft of said motor being disposed in parallel
             with and above said saw shaft; and

12

Appeal No. 2006-2116
Application No. 08/879,517

    (b) transmission means through which said motor shaft is
connected to said saw shaft so that an axis of said motor
shaft is shifted from an axis of said saw shaft by a distance
which is greater than or equal to the radius of said circular
saw blade, wherein when said holder is tilted in either of
said opposite directions by an angle greater than or equal
to 45 degrees with respect to the zero-tilt angle position,
said housing does not contact said top surface of said base.

10    The motor shaft and saw shaft of the desk-top cutting machine

labeled prior art and depicted in appellant's Figures 6 and 7 are

extensions of the same shaft.  Thus, the motor and saw blade

shafts lie in a single plane.  It would have been apparent to a

person having ordinary skill in the art therefrom that the housing

for the motor driving the motor shaft, depending on the sizes of

the motor and its housing, likely would deny saw blade cuts 45

degrees to either side of zero-tilt unless the workpiece was

turned around.  The housing for the motor driving the motor shaft

would abut the top surface of the workpiece base when the saw

20    blade attempts one of the two 45 degree cuts to either side of

zero-tilt.

    The motor shafts and the distinct saw blade shafts of the

desk-top cutting machines encompassed by appellant's Claim 1 and

described by Ito both were positioned to prevent the housing for

the motor driving the motor shaft from ever abutting the top

13

Appeal No. 2006-2116
Application No. 08/879,517

surface of the workpiece base and denying saw blade cuts 45

degrees to either side of zero-tilt without turning the workpiece

around.  The separate and distinct motor and saw blade shafts of

the desk-top cutting machines defined by appellant's Claim 1 and

described by Ito lie in separate planes.  However, the separate

and distinct motor and saw blade shafts of the desk-top cutting

machines defined by appellant's Claim 1 lie in parallel planes and

are connected by linear "transmission means" (see Figures 1 and 4

of appellant's patent).  The separate and distinct motor and saw

10    blade shafts of Ito's desk-top cutting machines do not lie in

parallel planes.  Ito solved the problem of the motor housing

abutting the top surface of the workpiece base by positioning the

distinct motor and saw blade shafts at angles acutely oblique to

each other, _i.e._, in intersecting planes.  At the points of

intersection, there Ito's separate and distinct shafts are

connected by an angular "transmission means" (see Figures 1 and 4

of appellant's patent).

What would a person having ordinary skill in the art have

learned from the combined teachings of Figures 6 and 7, Johnson,

20    Ambrosio and Langworthy?  What would a person having ordinary

skill in the art have learned from the combined teachings of Ito,

14

Appeal No. 2006-2116
Application No. 08/879,517

Johnson, Ambrosio and Langworthy?  First, we find that persons

having ordinary skill in the art would have recognized from either

the acknowledged prior art Figures 6 and 7 or Ito that the housing

for the motor driving the motor shaft of a conventional miter saw

with one common, linear motor-driving saw blade shaft likely would

deny saw blade cuts 45 degrees to either side of zero-tilt unless

the workpiece was turned around because the housing for the motor

would abut the top surface of the workpiece base.  Second, persons

having ordinary skill in the art would have recognized that Ito's

10   solution to the recognized problem requires a special "bevel gear

39 having a chip angle of 45° and acting as a reduction gear is

fixedly mounted on the spindle 33 at a position within the gear

case 32" (Ito, col. 4, 31-33) and a "spur gear 42a . . .

integrally formed with the motor shaft 42 and . . . positioned

above the bevel gear 39 so as to engage the same" (Ito, col. 4,

l. 40-42).  The inventors of appellant's claimed invention and Ito

both appear to have recognized that, while positioning a motor

shaft of a motor in parallel with a saw blade (perpendicular to

the saw blade shaft) precluded obstruction caused by a motor

20   housing when a mitre saw unit is pivoted (Ito, col. 1, 17-31,

citing Japanese Laid-Open Utility Model Publication No. 63-49901;

15

Appeal No. 2006-2116
Application No. 08/879,517

and Ushiwata et al., U.S. Patent 5,425,294, col. 1, l. 34-49,

citing the same Japanese Utility Model Application (OPI) No.

49901/88), that the solution to the problem at hand was expensive.

The inventor of the invention presently claimed acknowledged

that beveled gears are an "expensive means for motive power

transmission" (Ushiwata et al., U.S. Patent 5,425,294, col. 1,

l. 44-46).  Ito disclosed that, when the motor shaft is positioned

parallel to the saw blade, "the gear train must involve a number

of parts and consequently becomes costly" (Ito, col. 1, l. 29-30).

10        Persons having ordinary skill in the art would have learned

from Johnson that a cutting machine with the driving motor shaft

positioned parallel to the saw blade shaft was capable of, and

could be used for, multiple angle cutting at angles at least

45 degrees to either side of zero-tilt (1) without the driving

motor housing abutting the workpiece base, and (2) without turning

the workpiece around.  See Johnson's composite driving motor 41,

drive train 43, and cutting member 19 (Johnson, col. 5, l. 52-55).

Johnson describes the "$\pm45^{o}$ capability of the cutting member

positioning mechanism 17" (Johnson, col. 5, l. 13-15; col. 7,

20    l. 9-12) associated with Johnson's composite.  Whether or not

persons having ordinary skill in the art would have understood

16

Appeal No. 2006-2116
Application No. 08/879,517

that the $\pm45^o$ angle cutting capability of Johnson's saw blade 19
was enabled by the parallel positioning of the driving motor shaft
of driving motor 41 to the shaft of cutting member 19 or by the
relative size and/or configuration of the driving motor and its
housing, the drive train and its housing, the cutting member and
the workpiece base is immaterial.  What is material is that
persons having ordinary skill in the art would have understood
from Johnson's teaching that the sizes and configuration of his
composite driving motor 41, drive train 43, and cutting member 19

10     impart $\pm45^o$ capability to the cutting member.

       In that light we turn to Langworthy's disclosure.  While
Langworthy appears not to identify a workpiece base for the
workpiece the surgical saw he describes was designed to cut, the
workpiece Langworthy is concerned with is a living body and the
workpiece base for the workpiece the surgical saw he describes was
designed to cut is an operating table.  We conclude that persons
having ordinary skill in the art would have understood that a
surgeon utilizing Langworthy's surgical saw would not have wanted
to turn the living workpiece to make angular cuts to both sides of

20     zero-tilt.  Langworthy instructs (Langworthy, p. 1,
       l. 26-35):

17

Appeal No. 2006-2116
Application No. 08/879,517

By utilization of my invention many different styles of incisions or cuts, with the instrument at various angles, may be made, and the saw manipulated to penetrate to unusual depths.

The invention consists in certain novel combinations and arrangements of parts, involving the driving motor . . . and certain features of construction . . . .

And what were those novel combinations and arrangements of parts

10 involving the driving motor and certain features of construction?  Langworthy preferably "utilized a well known standard type of electric motor 1 with its driving shaft 2 protruding therefrom, and the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions" (Langworthy, p. 1, l. 71-76).  "The saw is operated from the motor and carried at the side of a tubular arm or casing 4" (Langworthy, p. 1, l. 76-78).  As shown in Langworthy's Figures 2 and 3, the motor shaft is disposed in parallel with and above said saw shaft; and the transmission

20 means through which the motor shaft is connected to the saw shaft so that the axis of the motor shaft is shifted from an axis of said saw shaft by a distance which is greater than the radius of said circular saw blade.  It appears that during

18

Appeal No. 2006-2116
Application No. 08/879,517

surgery, when the motor of Langworthy's surgical saw is tilted
in either direction by an angle greater than or equal to
45 degrees with respect to the zero-tilt angle position, the
housing would not contact the top surface of the workpiece base.

   Langworthy teaches that the tubular arm of his surgical saw
has a size and shape convenient for holding in the manner a pen or
a pencil is held in the hand (Langworthy, p. 1, l. 83-86).
However, Langworthy expressly states (Langworthy, p. 2, l. 49-53),
"The saw may be of various sizes, complementary to the saw. . . .
10   and these elements may be changed at will, to adapt them for
different uses." Langworthy adds (Langworthy, p. 2, l. 69-74),
"The arm may readily be manipulated to attain cuts at various
angles and depths for cranial and other cuts, and the laterally
disposed saw affords an instrument which may be manipulated with
facility and accuracy in the operations."

   Ambrosio would have taught persons having ordinary skill in
the art that a tilting table saw capable of cutting a workpiece
$\pm 45^\circ$ from zero tilt without turning the workpiece can be made and
used if (1) the motor shaft is disposed in parallel with the saw
20   shaft, and (2) the transmission means through which the motor
shaft is connected to the saw shaft so that an axis of the motor

19

Appeal No. 2006-2116
Application No. 08/879,517

shaft is shifted from the axis of the saw shaft by a distance
which is greater than the radius of the circular saw blade.
Persons having ordinary skill in the art would have learned
from Ambrosio that when its motor casing is tilted in either
of opposite directions by an angle greater than or equal to
45 degrees with respect to the zero-tilt angle position, the
motor housing does not contact the workpiece base.

        In light of the combined prior art teachings, we find that
persons having ordinary skill in the art would have had the
instruction and the motivation to make and use a desk-top cutting
machine having the design and/or construction claimed.  The
problem would have been apparent to any person having ordinary
skill in the art from the acknowledge prior art devices depicted
in Figure 7 of appellant's supporting specification or Ito's
discussion of the state of the art and problems associated
therewith.  Ito's solution, and the recognized prior art designs
proffered by Japanese Laid-Open Utility Model Publication
No. 63-49901/Japanese Utility Model Application (OPI) No. 49901/88
commonly cited in Ito and appellant's patent specification, rely
on the use of expensive beveled gears.  A less expensive, yet
equally remedial solution to the recognized problem would have

Appeal No. 2006-2116
Application No. 08/879,517

been apparent from the designs and constructions of the cutting

machines described by Johnson, Langworthy and Ambrosio.  Each of

Johnson, Langworthy and Ambrosio reasonably appear to describe a

cutting machine comprising a base including a top surface on which

a workpiece to be cut is supported, a circular saw blade, a

circular saw assembly having a motor covered by a housing, the

motor shaft of the motor disposed in parallel with and above the

saw shaft, and a transmission means through which the motor shaft

is connected to the saw shaft so that an axis of the motor shaft

10    is shifted from an axis of the saw shaft by a distance which is

greater than or equal to the radius of the circular saw blade,

wherein when the circular saw assembly is tilted in either of

opposite directions by an angle greater than or equal to 45

degrees with respect to the zero-tilt angle position, the housing

does not contact the top surface of the base.  Persons having

ordinary skill in the art reasonably would have expected to be

able to inexpensively eliminate the prior art-recognized

requirement to turn the workpiece in order to cut angles ±45

degrees with respect to the zero-tilt angle position using a

20    desk-top cutting machine by applying the design, materials and

construction taught by Johnson, Langworthy and Ambrosio and

21

Appeal No. 2006-2116
Application No. 08/879,517

altering the conventional desk-top cutting machines depicted in
Figures 6 and 7 of appellant's specification and described by Ito
in accordance therewith.

  We have considered all of appellant's evidence and arguments
to the contrary.  We have exercised extreme caution in our studies
of the drawings in Johnson, Langworthy and Ambrosio.  Because we
cannot presume that the prior art figures are drawn to scale, we
focus and rely more on the written descriptions of the subject
matter the prior art describes.  Therefore, we grant substantial

10 weight to Johnson's teaching that the cutting machines therein
described have a $\pm$45 degree cutting capability (Johnson, col. 5,
l. 13-15; col. 7, l. 9-12).  We grant substantial weight to
Langworthy's utilization of well known or standard type electric
motors and disk type saws and instruction that various sizes of
each may be used to adapt the composite to different conditions
(Langworthy, p. 1, l. 71-76).  We find little or no objective
evidence in Johnson, Langworthy or Ambrosio which would lead us to
understand that persons having ordinary skill in the art would not
have understood the materials necessary and/or the modifications

20 required to make and use inexpensive desk-top cutting machines of
the kind appellant claims with reasonable expectation of

22

Appeal No. 2006-2116
Application No. 08/879,517

successfully eliminating a problem well recognized in the art of

desk-top cutting machines.

Accordingly, we affirm the examiner's rejections of:

Claims 1-3, 26, 27, 37, 48-56 and 58-62 under 35 U.S.C.

§ 103(a) as being unpatentable for obviousness in view of "Prior

Art" Figure 6, "Prior Art" Figure 7, and the "Description of the

Prior Art" at column 1, lines 11-33, in Appellant's own U.S.

Patent 5,425,294; and the prior art disclosures of Johnson, U.S.

Patent 4,574,670, issued March 11, 1986; Langworthy, U.S.

10      1,417,669, issued May 30, 1922; and Ambrosio, U.S. Patent

3,013,592, issued December 19, 1961; and

Claims 1-3, 26, 27, 37, 48-56 and 58-62 under 35 U.S.C.

§ 103(a) as being unpatentable for obviousness in view of the

combined teachings of Ito, U.S. Patent 5,357,834, which issued

October 25, 1994, from U.S. Application 08/063,289, filed May 18,

1993, Johnson, Langworthy, and Ambrosio.

We dismiss the rejection of Claims 1-3, 26, 27, 37, 48-56 and

58-62 under 35 U.S.C. § 103(a) as being unpatentable for

obviousness in view of the combined teachings of Bergler, U.S.

20      Patent 4,531,441, issued July 30, 1985, Ito, Johnson, Haffner,

23

Appeal No. 2006-2116
Application No. 08/879,517

Langworthy, and Ambrosio as cumulative of the affirmed rejections,
at best.

<u>Conclusion</u>

Having considered the merits of the examiner's rejection of
Claims 1-3, 26, 27, 37, 48-56 and 58-62 for unpatentability under
35 U.S.C. § 103 in view of the prior art acknowledged in
appellant's own U.S. Patent 5,425,294, Johnson, Langworthy, and
Ambrosio; and all the evidence of record for and against the
rejection, we <u>affirm</u>.

10    Having considered the merits of the examiner's rejection of
Claims 1-3, 26, 27, 37, 48-56 and 58-62 for unpatentability under
35 U.S.C. § 103 in view of the combined prior art teachings of
Ito, Johnson, Langworthy, and Ambrosio; and all the evidence of
record for and against the rejection, we <u>affirm</u>.

20

24

Appeal No. 2006-2116
Application No. 08/879,517

<u>Order</u>

On consideration of all the evidence and arguments of record,
and for the reasons stated hereinabove, it is ORDERED THAT:

the rejection under 35 U.S.C. § 103 of Claims 1-3, 26, 27,
37, 48-56 and 58-62 of Application No. 08/879,517 for Reissue of
U.S. Patent 5,425,294 is <u>affirmed</u>.

No time period for taking any subsequent action in connection
with this appeal may be extended under 37 CFR § 1.136(a).

10                          <u>AFFIRMED</u>


JOHN P. McQUADE                         )
Administrative Patent Judge             )
                                        )
                                        )
                                        )
                                        ) BOARD OF PATENT
20   TEDDY S. GRON                      )    APPEALS
Administrative Patent Judge             )     AND
                                        )  INTERFERENCES
                                        )
                                        )
                                        )
SALLY C. MEDLEY                         )
Administrative Patent Judge             )

25

Appeal No. 2006-2116
Application No. 08/879,517


SUGHRUE MION ZINN MACPEAK & SEAS
2100 PENNSYLVANIA AVENUE NW
Washington, D.C.  20037-33202

26

*The opinion in support of the decision being entered today was* not *written for publication and is* not *binding precedent of the Board.*

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES

---

*Ex parte* SHIGEHARU USHIWATA
and RYUICHI IMAMURA

---

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294
Technology Center 1700

**MAILED**

JUN 2 1 2007

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

---

Decided: June 21, 2007

---

Before TEDDY S. GRON, SALLY G. LANE, and SALLY C. MEDLEY,
*Administrative Patent Judges.*[1]

GRON, *Administrative Patent Judge.*

---

DECISION ON REQUEST FOR REHEARING (37 C.F.R. §41.52(a)(1))

1       We take Appellants' Request For Rehearing Under 37 C.F.R.

2       §1.197(b), filed December 15, 2006, to be a request for rehearing under 37

---

[1]       The Decision On Appeal in Appeal 2006-2116, mailed on October 19,
2006, was decided by Administrative Patent Judges John P. McQuade,
Teddy S. Gron, and Sally C. Medley. Judge McQuade, who now is retired
from service, has been replaced by Judge Sally G. Lane.

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

1  C.F.R. §41.52(a)(1).  The regulation requires Appellants to state with

2  particularity those points the Board of Patent Appeals and Interferences

3  (Board) is thought to have misapprehended and/or overlooked in its original

4  Decision on Appeal, mailed October 19, 2006.  Having considered all the

5  points Appellants state that the Board misapprehended and/or overlooked in

6  its original decision, we deny rehearing of Appeal 2006-2116.

7      DENIED.

8                          DISCUSSION

9      Appellants argue that the Board misapprehended and/or overlooked

10  the alleged fact that the language "±45° capability of the cutting member

11  positioning mechanism 17" at column 5, lines 14-15, and "plus or minus 45°

12  capability of the cutting member positioning mechanism 17" at column 7,

13  lines 11-12, of Johnson (U.S. Patent 4,574,670), refers exclusively to the

14  mitre cutting capability of Johnson's claimed compound angle disk cutting

15  apparatus, not its bevel cutting capability (Request For Rehearing (RR),

16  pp.1-3).  According to Appellants, their claims are directed to a desk-top

17  bevel cutting saw with ±45° cutting capability, not a mitre cutting saw with

18  ±45° cutting capability (RR, pp. 1-2, bridging sentence).  The Board cited

19  Johnson's references to "±45° capability of the cutting member positioning

20  mechanism 17" as defining both the mitre and bevel cutting capability of

21  Johnson's cutting member 19.

22      Johnson's Figure 1 depicts a compound angle disk cutting apparatus

23  which reasonably appears to have both ±45° vertical cutting capability and

24  ±45° horizontal cutting capability because of the vertical and horizontal

25  pivoting capability of cutting member positioning mechanism 17.  Our

2

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

1   decision so found based on Johnson's teaching as a whole, including the

2   configuration of the composite cutting member 19, motor 41, and drive train

3   43 in Johnson's Figure 1, the general statement of "±45° capability of the

4   cutting member positioning mechanism 17" at column 5, lines 14-15, and

5   the general statement of "plus or minus 45° capability of the cutting member

6   positioning mechanism 17" at column 7, lines 11-12.  While Johnson's

7   discussion of Figures 3, 7, and 9 is particularly concerned with the increased

8   angular adjustment capability of cutting member 19 around angle C of the

9   vertical axis, Figure 3 also shows the angular capability of cutting member

10   19 around angle B of the horizontal axis.  The cutting member positioning

11   mechanism 17 depicted in Johnson's Figure 1 provides both the vertical and

12   horizontal pivoting capability Johnson requires for the compound angle disk

13   cutting apparatus claimed.  See also Johnson's teaching of both the vertical

14   pivoting capability for cutting member 19 to a selected angle C and the

15   horizontal pivoting capability for cutting member 19 to a selected angle B in

16   Johnson's Abstract and specification at column 5, lines 49-68.  Accordingly,

17   Appellants have not shown that the Board erred in finding that Johnson's

18   claimed compound angle disk cutting apparatus reasonably appears to have

19   both ±45° mitre cutting capability and ±45° bevel cutting capability.

20   Johnson's Figure 3 reasonably supports our finding.

21       Moreover, it is improper to attack references individually where, as

22   here, the rejection is based upon the teachings of a combination of

23   references. *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097, 231 USPQ 375,

24   380 (Fed. Cir. 1986); *In re Keller*, 642 F.2d 413, 425, 208 USPQ 871, 881

25   (CCPA 1981).  We affirmed the Examiner's final rejections of Claims 1-3,

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

1   26, 27, 37, 48-56, and 58-62 under 35 U.S.C. § 103 as being unpatentable

2   for obviousness in view of either "Prior Art" Figure 6, "Prior Art" Figure 7,

3   and the "Description of the Prior Art" at column 1, lines 11-33, in

4   Applicants' own U.S. Patent 5,425,294, or the teaching of Ito, U.S. Patent

5   5,357,834, combined with the teachings of Johnson (U.S. Patent 4,574,670),

6   Langworthy (U.S. Patent 1,417,669), and Ambrosio (U.S. Patent 3,013,592).

7        With regard to Langworthy and Ambrosio, Appellants continue to

8   argue that neither is analogous art.  However, we said (Decision on Appeal,

9   pp. 5-6, bridging para):

10            We find that persons having ordinary skill in the art would have
11       considered both Langworthy and Ambrosio to be pertinent to the
12       subject matter claimed and thus analogous prior art.  Both patents
13       teach motor-driven saws with parallel motor and blade shafts which
14       enable straight, mitre, bevel and compound cutting.  We are not
15       convinced by appellant's arguments that the motor/saw designs these
16       patents describe are nonanalogous to the desk-top cutting machines
17       appellant claims simply because their sizes and specific applications
18       differ.  Aside from the want or kind of respective supports, the
19       motor/saw designs utilized by the cutting machine appellant claims
20       and those described by the cited prior art all have a basic parallel
21       motor shaft/blade shaft configuration for straight, mitre, bevel and
22       compound cutting.
23
24       Appellants have not pointed to any reversible error in our findings of

25   fact or conclusions of law.  If we erred at all in our original decision, the

26   error lies in the tactful manner by which we affirmed the Examiner's

27   determination that the claimed subject matter would have been obvious to a

28   person having ordinary skill in the art at the pertinent time in light of the

29   noted prior art.  We might have added emphasis.  "The combination of

30   familiar elements according to known methods is likely to be obvious when

4

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

1   it does no more than yield predictable results." *KSR Int'l Co. v. Teleflex Inc.*,

2   127 S.Ct. 1727, 1739, 82 USPQ2d 1385, 1395 (2007).  "[W]hen a patent

3   claims a structure already known in the prior art that is altered by the mere

4   substitution of one element for another known in the field, the combination

5   must do more than yield a predictable result . . . ." *KSR Int'l Co. v. Teleflex*

6   *Inc.*, 127 S.Ct. at 1740 , 82 USPQ2d at 1395.  "If a person of ordinary skill

7   can implement a predictable variation, § 103 likely bars its patentability."

8   *Id.* at 1740, 82 USPQ2d at 1396.  "[I]f a technique has been used to improve

9   one device, and a person or ordinary skill in the art would recognize that it

10  would improve similar devices in the same way, using the technique is

11  obvious unless its actual application is beyond his or her skill." *Id.*

12  "Common sense teaches . . . that familiar items may have obvious uses

13  beyond their primary purposes, and in many cases a person of ordinary skill

14  will be able to fit the teachings of multiple patents together like pieces of a

15  puzzle." *Id.* at 1742, 82 USPQ2d at 1397.  "[T]he results of ordinary

16  innovation are not the subject of exclusive rights under the patent laws.

17  Were it otherwise patents might stifle, rather than promote, the progress of

18  useful arts." *Id.* at 1746, 82 USPQ2d at 1400.  After all, as noted in *KSR*

19  *Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742, 82 USPQ2d 1385, 1397

20  (2007), "A person of ordinary skill is also a person or ordinary creativity, not

21  an automaton."

22

23                          CONCLUSION and ORDER

24       Having considered Appellants' Request For Rehearing, dated

25  December 15, 2006, and all the points that Appellants state that the Board

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

1    misapprehended and/or overlooked in its original decision in Appeal 2006-

2    2116, mailed October 19, 2006, and for the reasons stated hereinabove, we

3    reaffirm the Board's original conclusion that Claims 1-3, 26, 27, 37, 48-56,

4    and 58-62 of Application 08/879,517 for Reissue of U.S. Patent 5,425,294

5    are unpatentable under 35 U.S.C. § 103 in view of the applied prior art.

6         Accordingly, it is ORDERED that Rehearing of Appeal 2006-2116 is

7    DENIED.

8         FURTHER ORDERED that the application is remanded to the

9    examiner for action consistent with the views expressed herein.

10

**REHEARING DENIED; REMANDED**

SD

Appeal 2006-2116
Reissue Application 08/879,517
Patent 5,425,294

By First Class Mail:


Paul Devinsky, Esq.
McDERMOTT, WILL & EMERY LLP.
600 13TH Street, N.W.
Washington, DC  20005-3096
Phone:  (202) 756-8000
Fax:  (202) 756-8087

7

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| HITACH KOKI CO., LTD. | JON W. DUKAS<br>DIRECTOR, U.S. PATENT & TRADEMARK OFFICE |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    99999 Japan
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    United States
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Paul Devinsky<br>Michael Connelly<br>McDermott, Will & Emery<br>600 13th Street, N.W.<br>Washington, D.C. 20005<br>202-756-8000 | Jon W. Dukas, Director<br>c/o General Counsel<br>United States Patent and Trademark Office<br>P.O. Box 15667<br>Arlington, VA 22215<br>571-272-7000 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

**● E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☒ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

35 U.S.C. § 145

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** Reversal of Decision   Check YES only if demanded in complaint   **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)   YES ☐  NO ☒   If yes, please complete related case form.

DATE _n Aug 07_   SIGNATURE OF ATTORNEY OF RECORD _[signature]_   DC Bar No 250373

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    I.       COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.