## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HITACHI KOKI CO., LTD., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| JON W. DUDAS, Director,[1] | ) |
| United States Patent And Trademark Office | ) |
|  | ) |
| Defendant. | ) |
|  | ) |
|  | ) |

Civil Action No. 07-cv-01504 (ESH)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Jon W. Dudas, Under Secretary of Commerce for Intellectual Property and

Director of the United States Patent and Trademark Office ("USPTO"), hereby moves pursuant

to Federal Rule of Civil Procedure 56 for an order granting defendant summary judgment on the

grounds that no genuine issue of material fact exists and defendant is entitled to judgment as a

matter of law.  In support of this motion, defendant files this memorandum of law as well as his

statement of material facts not in dispute.

Respectfully submitted,

s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122

---

[1] The complaint erroneously names the defendant as Jon W. Dukas. The proper spelling of defendant's last name is Dudas, as indicated in the first line of the complaint.

Assistant United States Attorney

_____s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

STEPHEN WALSH
Acting Solicitor
JOSEPH G. PICCOLO
SYDNEY O. JOHNSON, JR.
Associate Solicitors
United States Patent and Trademark Office
Alexandria, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| HITACHI KOKI CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-cv-01504 (ESH) |
| | ) | |
| JON W. DUDAS, Director,[1/] | ) | |
| United States Patent And Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**HIS  MOTION FOR SUMMARY JUDGMENT**

Defendant Jon W. Dudas, Under Secretary of Commerce for Intellectual Property and

Director of the United States Patent and Trademark Office ("USPTO"), hereby moves pursuant

to Federal Rule of Civil Procedure 56 for an order granting defendant summary judgment on the

grounds that no genuine issue of material fact exists and defendant is entitled to judgment as a

matter of law.

As the evidence before the Court establishes, Hitachi Koki Co., Ltd. ("Hitachi")'s

representative claim 1 was not patentable because, in light of the prior art references, the claim

was obvious.  This finding, which was reached by the Board of Patent Appeals and Interferences

(the "Board"), is supported by substantial evidence and should therefore be affirmed by the

Court.

---

[1/]The complaint erroneously names the defendant as Jon W. Dukas. The proper spelling of defendant's last name is Dudas, as indicated in the first line of the complaint.

## I.    PRELIMINARY STATEMENT

This case concerns the denial of a patent regarding a desk-top cutting machine with tiltable saw on the ground that the representative claim was obvious.  A patent may not be afforded to a party if the invention is "obvious" in light of existing references, or prior art.[2] Specifically, 35 U.S.C. section 103 bars the USPTO from issuing a patent if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  This test is commonly referred to as the obviousness test for patentability.

The Supreme Court has recently discussed the standard for obviousness in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007).  There, the Court held that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results. . . . When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp."  *Id.* at 1739, 1742.

 Plaintiff Hitachi Koki Co., Ltd. ("Hitachi") requested a reissue of its patent under 35 U.S.C. § 251, but the USPTO determined Hitachi's claims could not be reissued.  In reaching its conclusion, the USPTO Board of Patent Appeals and Interferences (the "Board") identified

---

[2]  A patent is divided into a number of sections including a drawing and specification (*i.e.*, a written description) section.  At the end of the specification is a set of claims, which establishes the metes and bounds of the patent – the same way in which a lot/plot description defines the boundaries of real property.  The USPTO examines claims in each application to determine whether claims are patentable, or should be rejected for failing to satisfy a condition for patentability such as obviousness under 35 U.S.C. § 103.

several prior art references that bore on the obviousness of claim 1, the claim Hitachi stated was representative of all the claims.  Two references each describe most of the invention, with the remainder of the claim, *i.e.*, a motor offset from the saw blade, being expressly found in the other three prior art references.  Specifically, the Hitachi patent's prior art sections disclose the features of the claimed saw except for the saw and motor shafts being shifted away from each other enough to permit 45° descension of the saw.  The Board found that a prior patent issued to Ito shows a similar saw except for the shifted shafts.

Furthermore, the Board found that the missing feature identified in Hitachi's patent – *i.e.*, the ability to use the saw to make cuts at $\pm$ 45 degrees – is disclosed in the following additional prior art references:  Johnson; Langworthy; and Ambrosio.  Specifically, Johnson discloses a saw blade set away from its motor by a belt permitting 45° or greater cuts, without obstruction.  Langworthy also shows the cutting capability of a saw, when displaced from its motor, to allow for cutting at various angles.  Ambrosio similarly discloses a motor, belt, saw blade combination for varying the angle of cutting relative to the work table.  All of these secondary references show the mechanical position of the motor relative to the blade and, when there is displacement, larger angles for cutting are achievable.

In sum, the problem identified by Hitachi – i.e., the need to permit angular cuts $\pm$ 45 degrees without turning the saw – was in essence solved by the prior art references.  Hitachi's drawings of the prior art and Ito show claim 1, except for displacement of the motor enough from the blade to permit varied cutting, something that in fact is shown by the three other references.  These references also demonstrate the benefits of achieving larger angle cutting.  Thus, in view of the prior art, the USPTO properly established a *prima facie* case of obviousness because it is

3

apparent that persons having ordinary skill in the art would have understood the materials and

modifications that would be required to make and use inexpensive desk-top cutting machines,

similar to Hitachi's, capable of making angular cuts at $\pm$ 45 degrees.

The decision of the Board should be affirmed. Because this Court reviews USPTO

findings of fact under the Administrative Procedure Act's ("APA") substantial evidence standard

of review, the burden is on Hitachi to show that a finding is not supported by substantial

evidence. In this case, however, the voluminous findings leading to the Board's obviousness

finding are all supported by substantial evidence and, thus, the record supports summary

judgment in favor of the USPTO Director.

## II.  FACTUAL BACKGROUND

**A.      Procedures Regarding Reissue Applications.**

Pursuant to 35 U.S.C. § 251 a patentee may surrender his or her patent if a defect is

found. The application for reissue of a patent shall constitute an offer to surrender that patent,

and the surrender shall take effect upon reissue of the patent. 35 U.S.C. § 251. Until a reissue

application is granted or denied, the patent shall remain in effect. 37 C.F.R. § 1.178(a). An

application for reissue must contain the entire specification, including the claims, and the

drawings, of the patent. 37 C.F.R. § 1.173(a). A reissue application will be examined in the

same manner as a newly submitted application and will be subject to all of the requirements of

the rules related to newly submitted applications. 37 C.F.R. § 1.176(a).

When the USPTO receives a patent application, it is assigned to a patent examiner for

examination of the application and claims. 35 U.S.C. § 131. Thus, a patent owner's filing of a

reissue application places the claims in examination before a USPTO examiner the same as

though the claims were being submitted in the first instance.  As with a newly submitted patent application, the examiner considers whether the application satisfies the conditions for patentability.  35 U.S.C. § 101 *et seq.*  One of the conditions is that the claims in the application must not be obvious under 35 U.S.C. § 103.  If the examiner determines that a legal requirement has not been satisfied, he or she issues a "rejection" setting forth the pertinent grounds. 35 U.S.C. § 132; 37 C.F.R. § 1.104.  In response to a rejection, the applicant may (i) amend the rejected claim and/or (ii) argue against the rejection.  37 C.F.R. § 1.111.  A second or subsequent rejection by the examiner may be considered a "final rejection."  37 C.F.R. § 1.113.

An applicant may appeal a final rejection to the USPTO Board of Patent Appeals and Interferences.  35 U.S.C. § 134.  On appeal, the Board can affirm, reverse or vacate the examiner's decision.  35 U.S.C. § 134.  If the Board affirms the examiner's rejection of the application, the applicant may then either appeal to the U.S. Court of Appeals for the Federal Circuit under 35 U.S.C. § 141 or bring a civil action in the U.S. District Court for the District of Columbia under 35 U.S.C. § 145.

**B.    Hitachi's Reissue Application.**

On June 20, 1995, the USPTO issued U.S. Patent Number 5,425,294 to Hitachi ("Hitachi patent").  Exhibit ("Ex.") 1 at 1.[3/]  This patent disclosed a desk-top cutting machine with a tiltable saw.  On June 20, 1997, Hitachi filed a reissue application under 35 U.S.C. § 251 of the Hitachi patent, resulting in claims 1-3, 26, 27, 37, 48-56 and 58-62 being part of that application. Ex. 2 (Board's Decision on Appeal) at 2.

---

[3/]Pursuant to LCvR 7(n), an appendix containing the parties' exhibits will be filed with the Court within ten days following the final memorandum concerning defendant's motion. LCvR 7(n).

5

Claim one reads as follows:

A desk-top cutting machine, comprising:

a base on which a workpiece to be cut is supported, said base including a top surface;

a turntable rotatably disposed in said base and including a top surface;

a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;

a circular saw blade;

a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;

a circular saw assembly having a motor covered by a housing;

a motor shaft of said motor being disposed in parallel with and above said saw shaft;

transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base.

Ex. 1, col. 4, lines 15-41.[4]

Hitachi's patent discloses a prior art cutting machine. Ex. 1, Sheet 3, Figures 6 and 7; col. 1, lines 11-33. Hitachi patent's prior art sections reveal all of claim 1 except that the saw shaft and the motor shaft are spaced apart in parallel planes. Ex. 1, Sheet 3, Figures 6 and 7; col. 1, lines 11-33. In addition, the Hitachi patent's prior art sections disclose that the saw shaft and the motor shaft lie in a single plane. Ex. 1, Sheet 3, Figures 6 and 7; col. 1, lines 11-33.

_____

[4]References to "col." are to the column in the patent under which material appears. "Lines" refers to the lines of text being referred to, which can be determined by reference to the line numbers appearing in the center column on the pages.

Hitachi relied on claim 1 as representative of all of its reissue application claims. Ex. 2, at 3 (quoting Hitachi's statement: "For the convenience of the Board, Appellant will argue the patentability of independent claim 1. The other claims stand or fall together with claim 1."). *See also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . . ."). The Board of Patent Appeals and Interferences (the "Board") affirmed the examiner's rejection of Hitachi's representative claim 1 finding that the claim was unpatentable because it was obvious in light of prior art. *Id.* at 23-24. *See also* Ex. 3 (Board's Decision on Request for Rehearing), at 2-4.

**C.    The Board's Decision Affirming the Denial of Hitachi's Reissue Application.**

**1.    Prior Art Considered by the Board.**

The Board identified several prior art references[5] that led to its conclusion that Hitachi's claim 1 was obvious. Ex. 2, at 23-24.

**(a)    The Ito Patent**

Prior art U.S. Patent 5,357,834 issued to Ito et al. ("Ito") is identical to Hitachi's claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes. Ex. 4, Figure 2; col. 1, lines 10-22. Specifically, Ito discloses the saw shaft and the motor shaft lie in separate planes. *Id.* Figure 2; col. 4, lines 10-53. Notably, Ito addressed the problem faced by Hitachi, *i.e.,* to use the saw to cut at a 45° angle, by discussing that the motor shaft is positioned parallel to the saw blade and the gear train must involve a number of parts and consequently becomes costly. *Id.* at col. 1, lines 23-30. Ito's solution to the problem was to use beveled gears.

---

[5]In addition to the identified prior art references, the Board considered Hitachi's prior patent as relevant prior art, which was admitted by Hitachi. Ex. 2, at 4.

*Id.* Figure 2, col. 4.

### (b)    The Johnson Patent

On March 11, 1986, U.S. Patent 4,574,670 was issued to George W. Johnson ("Johnson") and discloses a cutting machine. Ex. 5. The Johnson patent discloses a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade. Ex. 5, Figure 1; col. 5, lines 49-59. The Johnson patent contains the capability for ±45° positioning of the cutting member positioning mechanism 17. Ex. 5 at col. 5, lines 13-15; col. 7, lines 9-12. Thus Johnson states that an additional axis of rotation "permits smaller or larger angles of cut in addition to the plus or minus 45° capability of the cutting member positioning mechanism." *Id.* col. 7, lines 9-12. *See also* Ex. 5, Figure 1.

### (c)    The Langworthy Patent

On May 30, 1922, U.S. Patent 1,417,669 was issued to Mitchell Langworthy ("Langworthy"). Ex. 6 (United States Patent No. 1,417,669). This patent discloses a surgical saw cutting machine. *Id.* col.1, line 10. Langworthy presents a surgical saw "by means of which cranial and other incisions or cuts may be made with accuracy and precision . . . ." *Id.* col. 1, lines 10-14. Langworthy utilized a "well known or standard type of electric motor 1 . . . and the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." Ex. 6 at col. 2, lines 74-76. The Langworthy patent discloses that "[t]he arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations." *Id.* col. 4, lines 69-74. Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.* Langworthy's patent provides that "[t]he saw may

8

be of various sizes, and the guard is also made in various sizes complementary to the saw, and these elements may be changed at will, to adapt them for different uses." *Id.* at col. 3, lines 49-53.

            **(d)**      **The Ambrosio Patent**

On December 19, 1961, U.S. Patent 3,013,592 was issued to Ambrosio et al. ("Ambrosio"). Ex. 7 (United States Patent No. 3,013,592). The patent discloses a cutting machine, specifically a tilting table saw with a "new and improved means for varying the angular position of the saw blade relative to the work supportable table. *Id.* at col. 1, lines 8-11. The Ambrosio patent discloses that the motor shaft is parallel to the saw shaft. *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2, line 63. The Ambrosio patent discloses that the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2, line 63. Ambrosio's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2, line 63.

     **2.**      **The Board Concludes that Representative Claim 1 is Obvious.**

The Board issued a final agency action adverse to Hitachi regarding Hitachi's re-issue application. Ex. 2. Based upon Hitachi's statement to the Board, the Board limited its review to Hitachi's claim 1. Ex. 2, at 3 ("For the convenience of the Board, Appellant will argue the patentability of independent claim 1. The other claims stand or fall together with claim 1." ); *see also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . . ."").

The Board found the Hitachi's patent discloses a prior art cutting machine. Ex. 2, at 12-13. The Board found the Hitachi patent's prior art sections show all of claim 1 except for the

saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-13.  Furthermore, the Board found the Hitachi patent's prior art sections show that the saw shaft and the motor shaft "lie in a single plane."  *Id.* at 13.

The Board found that the prior relevant art demonstrated that Hitachi's representative claim 1 was obvious under 35 U.S.C. § 103.  Specifically, the Board determined that Ito, which was prior relevant art, shows all of claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-14.  The Board found Ito shows that the saw shaft and the motor shaft "lie in separate planes[,]" and do not lie in "parallel planes[,]" and that Ito's saw shaft and motor shaft are "in intersecting planes."  *Id.* at 14.  The Board found Ito addressed the problem faced by Hitachi, *i.e.,* to use the saw to cut beyond 20 degrees, by discussing that the motor shaft should be positioned parallel to the saw blade and "'the gear train must involve a number of parts and consequently becomes costly.'  (Ito, col. 1, lines 29-30)."  Ex. 2, at 15-16. The Board found Ito's solution to the problem was "the use of expensive beveled gears."  *Id.* at 20.

The Board found that the Johnson patent is relevant prior art.  *Id.* at 8-12.  The Board found that the Johnson patent discloses "'±45° capability of the cutting member positioning mechanism 17' (Johnson, col. 5, lines 13-15; col. 7, lines 9-12)."  *Id.* at 16.  The Board found that "persons having ordinary skill in the art would have understood from Johnson's teaching that the sizes and configuration of his composite driving motor 41, drive train 43, and cutting member 19 impart ±45° capability to the cutting member."  *Id.* at 17.

The Board found that the Langworthy patent is relevant prior art.  *Id.* at 5-12.  The Board found Langworthy has as a workpiece "a living body."  *Id.* at 17.  The Board found Langworthy

has as a workpiece base "an operating table." *Id.* at 17.  The Board found that "persons having ordinary skill in the art would have understood that a surgeon utilizing Langworthy's surgical saw would not have wanted to turn the living workpiece to make angular cuts to both sides of zero-tilt[,]" which was a problem faced by the Hitachi patent. *Id.* at 17.  The Board noted that

> Langworthy instructs:
>
> 'By utilization of my invention many different styles of incisions or cuts, with the instrument at various angles, may be made, and the saw manipulated to penetrate to unusual depths.
>
> The invention consists in certain novel combinations and arrangements of parts, involving the driving motor . . . and certain features of construction . . . .'

*Id.* at 17-18 (quoting Langworthy, at 1, lines 26-35).

The Board noted that Langworthy states that "the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." *Id.* at 18 (quoting Langworthy, at 1, lines 71-76).  The Board found Langworthy's Figures 2 and 3 show the motor shaft is parallel to the saw shaft. *Id.* at 18.  The Board found Langworthy's Figures 2 and 3 show the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.* at 18.  The Board found Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.* at 19.  The Board noted that "Langworthy contributed the following: 'The arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations.'" Id. at 19 (quoting Langworthy, at 2, lines 69-74).

The Board determined that Ambrosio is relevant prior art.  Ex. 2, at 5-12.  The Board concluded that Ambrosio discloses that the motor shaft is parallel to the saw shaft. *Id.* at 19.

11

The Board found Ambrosio discloses that the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade.  *Id.* at 19-20.  The Board found Ambrosio's saw may be tilted in either direction by an angle greater than or equal to 45 degrees.  *Id.* at 20.  The Board found Johnson, Langworthy and Ambrosio each describe a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade.  *Id.* at 21.

The Board held that in view of the prior art shown in Hitachi's accompanying specification and drawings, as well as the patents of Ito, Johnson, Langworthy, and Ambrosio, Hitachi's representative claim 1 was obvious under 35 U.S.C. § 103.  *Id.* at 23-24.

### 3.    The Board's Denial of Hitachi's Request for a Rehearing.

After the Board held claim 1 unpatentable, Hitachi requested rehearing, wherein it presented specific arguments to the Board.  Ex. 8 (Request for Rehearing Under 37 C.F.R. 1.197(b)).  In its request for rehearing, Hitachi contended that the Johnson, Langworthy, and Ambrosio patents should not have been considered relevant prior art in assessing the patentability of claim 1 because:

(1)    The pertinent passages of Johnson are directed to mitre cutting, not bevel cutting, as encompassed by claim 1 (Ex. 8 at 1-3);

(2)    Langworthy is in the surgery field and therefore is not analogous art (Ex. 8 at 3-4); and

(3)    Ambrosio is larger than a desktop cutting machine and therefore is not analogous art (Ex. 8 at 4).

The Board denied Hitachi's request for rehearing.  Ex. 3, at 2.  In doing so, the Board addressed Johnson and found that "based on Johnson's teaching as a whole . . ." the Johnson

12

patent's claimed compound angle disk cutting apparatus reasonably appears to have both $\pm$ mitre

cutting capability and $\pm$ bevel cutting capability.  Johnson's Figure 3 reasonably supports our

finding."  Ex. 3, at 3.  In its decision denying rehearing, the Board also considered and rejected

Hitachi's arguments that Langworthy and Ambrosio were not analogous art.  *Id.* at 4.

Specifically, the Board rejected Hitachi's notion that because Langworthy and Ambrosio are not

of the same size or used for precisely the same reasons that they are not analogous art.  Rather,

the Board concluded that "'the motor/saw designs utilized by the cutting machine appellant

claims and those described by the cited prior art all have a basic parallel motor shaft/blade shaft

configuration, for straight, mtire, bevel and compound cutting.'"  *Id.* at 4 (quoting Board's

Decision on Appeal, at 5-6).  The Board also found that Hitachi's attack was improper because it

was directed to "references individually" whereas the Board's rejection of Hitachi's patent was

"based upon the teachings of a combination of references."  *Id.*

### III.    ARGUMENT

**A.    Standard of Review.**

**1.    Summary Judgment In A Civil Action Under 35 U.S.C. § 145**.

Summary judgment pursuant to Fed. R. Civ. P. 56(c) is appropriate when the record

shows that there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986).  In determining whether a genuine issue of material fact exists, the

trier of fact must view all the facts, and the reasonable inferences to be drawn from them, in a

light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.  If the evidence

13

favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. In order to withstand summary judgment, the non-moving party is not at liberty to rest upon mere allegations or denials but must come forth with evidence establishing a material issue of fact for trial. *Id.* at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of *material* fact. *Id.* at 247-48. If the submitted evidence is of such a character that it would not permit a reasonable fact-finder to find in favor of the non-moving party, summary judgment is appropriate. *Id.* at 251.

With respect to the USPTO administrative record, there can be no genuine issue as to what it contains. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *R.R. Donnelley & Sons Co. v. Dickinson, USPTO Director*, 123 F. Supp. 2d 456, 458 (N.D. Ill. 2000). Because this case presently involves only the USPTO record, it stands as an appeal of agency action under the standards of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq. See Mazzari v. Rogan*, 323 F.3d 1000, 1004 (Fed. Cir. 2003) (holding that the USPTO is an agency subject to the APA, and therefore "a reviewing court must apply the APA's court/agency review standards").[6/] Accordingly, the Court may only set aside a factual finding which the plaintiff shows is "unsupported by substantial evidence." 5 U.S.C. § 706(2)(E); *Mazzari*, 323 F.3d at 1005. Substantial evidence "is something less than the weight of the evidence but more than a mere scintilla of evidence." *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). It "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

---

[6/] The U.S. Court of Appeals for the Federal Circuit has exclusive jurisdiction over any appeal that may be sought in this case. 28 U.S.C. § 1295(a)(1) and (4).

*Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).  "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).  "If the evidence in record will support several reasonable but contradictory conclusions," the Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one conclusion over another plausible alternative."  *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

Review by the Court is generally limited to the evidence that was presented to the Board during the administrative proceedings.  5 U.S.C. § 706.  If the parties present additional evidence to the Court, which on review under 35 U.S.C. § 145 may be done only in limited circumstances, the Court makes "*de novo* factual findings" regarding the newly presented evidence.  *Mazzari*, 323 F.3d at 1005.  But the Court must accept the Board's ultimate decision as controlling unless Hitachi presents sufficient argument and evidence to overcome the deferential "substantial evidence" standard applied to the Board's findings.  *Mazzari*, 323 F.3d at 1005.  If certain new evidence is permitted, the USPTO record is still the "evidentiary nucleus" of this case.  *Fregeau v. Mossinghoff*, 776 F.2d 1034, 1042 (Fed. Cir. 1985).  Hitachi is not permitted to "start over to prosecute its application before the district court unfettered by what happened" below.  *Id.* at 1038.  Rather, "the applicant has the laboring oar to establish error by the board." *Id.*[7]

**2.     Obviousness.**

"The ultimate determination of whether an invention would have been obvious is a legal

---

[7]Notably, to the extent that Hitachi would seek to introduce any experts before this Court, it would be statutorily obligated to pay for any experts designated by defendant.  35 U.S.C. § 145.

conclusion based on underlying findings of fact." *In re Kahn*, 441 F.3d 977, 985 (Fed. Cir.

2006). For example, what a particular prior art reference discloses is a factual inquiry.

*Para-Ordnance Mfg., Inc. v. SGS Imp. Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995). *Accord*

*In re Berg*, 320 F.3d 1310, 1315 (Fed. Cir. 2003) ("As persons of scientific competence in the

fields in which they work, examiners and administrative patent judges on the Board are

responsible for making findings, informed by their scientific knowledge, as to the meaning of

prior art references to persons of ordinary skill in the art and the motivation those references

would provide to such persons"). "Determining whether the claimed invention would have been

obvious to a person of ordinary skill requires the finder of fact (a) to review the scope and

content of the prior art, (b) to ascertain the level of ordinary skill in the art, and (c) to identify the

differences between the prior art and the claimed invention." *Markman v. Lehman,* 987 F. Supp.

25, 29 (D.D.C. 1997), *aff'd,* 178 F.3d 1306 (Fed. Cir. 1998). "The identification of analogous

prior art is a factual question." *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004). However,

"[t]he ultimate determination of obviousness is a legal determination." *KSR Int'l Co. v. Telefax,*

*Inc.*, 127 S. Ct. 1727, 1745 (2007). As explained by the Court:

> In determining whether the subject matter of a patent claim is obvious,
> neither the particular motivation nor the avowed purpose of the patentee
> controls. What matters is the objective reach of the claim. If the claim
> extends to what is obvious, it is invalid under § 103. One of the ways in
> which a patent's subject matter can be proved obvious is by noting that
> there existed at the time of invention a known problem for which there
> was an obvious solution encompassed by the patent's claims.

*Id.* at 1741-42.

As shown below, the Board's findings are supported by substantial evidence and the

USPTO Director is entitled to judgment as a matter of law. Specifically, the Board properly

16

determined that Hitachi's representative claim 1 was obvious in light of the identified prior art.

**B.    Substantial Evidence Supports the Board's Finding that Hitachi's Representative Claim 1[8]/ Would Have Been Obvious In View Of Hitachi's Admitted Prior Art Or Ito In Combination With Johnson, Langworthy Or Ambrosio.**

A new invention may not be patented if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art[9]/ to which said subject matter pertains." 35 U.S.C. § 103. As the Supreme Court has stated, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR*, 127 S.Ct. at 1739. And, "[w]hen there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options within his or her technical grasp." *Id.* at 1742. In supporting a determination of obviousness, the

_____

[8]/ In its brief to the Board, Hitachi stated:

> For the convenience of the Board, Appellant will argue the patentability of independent claim 1. The other claims stand or fall together with claim 1.

Ex. 2, at 3. In view of Hitachi's brief and argument, the Board addressed only claim 1. *Id.*; *see also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . . ."). In Hitachi's Request for Rehearing to the Board, Hitachi maintained addressing only claim 1. Ex. 8. Based on Hitachi's Request for Rehearing, the Board subsequently addressed only claim 1. Ex. 3. Thus, because Hitachi separately argued only claim 1 to the Board, that claim is representative for all of its claims. *See, e.g.*, *In re Dance*, 160 F.3d 1339, 1340 n.2 (Fed. Cir. 1998) (requiring an appellant to separately argue claims for multiple claims to be addressed). Accordingly, defendant's arguments are directed solely to representative claim 1.

[9]/"A 'person of ordinary skill in the art' is a 'hypothetical person who is presumed to know the relevant prior art." *Markman*, 987 F. Supp. at 36 (quoting *In re GPAC, Inc.*, 57 F.3d 1573, 1579 (Fed. Cir. 1995)).

17

USPTO should "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.* at 1741. *Accord Kahn*, 441 F.3d at 988.



As the Board found (Ex. 2, at 12-13), Hitachi's admissions on the prior art show claim 1, except for the motor shifted from the blade to permit 45° descension of the blade. See Ex. 1, Figure 7 (displayed above). Specifically, Hitachi's Figure 7 entitled "PRIOR ART" shows all of claim 1 except a distance between the saw shaft 9 and motor shaft 12, which would permit the motor to tilt 45° to the right without hitting the table 1. Ex. 1, Figure 7. This area of the prior art revealed that for tiltable-saws, the saw shaft 9 and the motor shaft 12 are in parallel with each other, and that this arrangement created a significant problem, as identified by Hitachi:

18

Description of the Prior Art

FIGS. 6 and 7 show a conventional desk-top cutting machine in which a saw shaft 9 supporting a saw 10, and the shaft 12 of a motor 11 are connected to each other through toothed engagement to transmit the motive power of the motor to the saw.  Since the saw shaft 9 and the motor shaft 12 are disposed in parallel with each other, the motor 11 projects sideward from a circular saw assembly 8.

To tilt the circular saw assembly 8, a clamping lever 5 is loosened, a holder 6 is tilted, and the lever is thereafter tightened to keep the holder at a desired tilt angle. When a workpiece is normally cut by the tilted saw assembly 8, the angle of the desired tilt is usually 45 degrees.  However, *the end 15a of a motor housing 15 comes into contact with the top of base 1 when the saw assembly 8 is tilted rightward by an angle of 20 to 30 degrees, as shown in FIG. 7."*

Ex. 1, at col. 1, lines 10-27 (emphasis added).  Accordingly, the problem in this art was the motor hitting the table when the saw is tilted 20-30 degrees.

As the Board found (Ex. 2, at 12-14), Ito provided a solution to the problem by using an angle between the saw shaft and motor shaft.  Ito, Ex. 4, Figure 2 (displayed below):

19



FIG. 2

That is, Ito discloses using an angle between motor shaft 42 and saw shaft 33 to avoid the

problem of hitting item 6, when dropping the saw down for more-angled cutting. *See also* Ito,

Ex. 4 at col. 1, lines 10-22.  Specifically Ito provides:

> Description of the Prior Art
>
> In a conventional miter saw having a miter saw unit pivotable to
> incline a saw blade relative to a base:  there has been a possibility
> that a cutting operation cannot be properly performed since a motor
> housing formed on the miter saw unit may abut on a work to be cut
> when the miter saw unit is inclined.  To solve this problem,
> Japanese Laid-Open Utility Model Publication No. 63-49901
> proposes to *position a motor shaft* of a motor *in parallel with a*

20

> *saw blade so as to preclude obstruction caused by a motor housing*
> *when a miter saw unit is pivoted.*

(Emphasis added).

Thus, the Hitachi patent's prior art sections and Ito show a saw blade shaft with a motor shaft and the problem of the motor's housing hitting the work table, when the user tilts the saw past 20 degrees. Ex. 2 at 12-14. Such evidence is directly relevant to the question of obviousness. *See KSR*, 127 S.Ct. at 1742 ("to solve a problem . . . a person of ordinary skill has good reason to pursue the known options within his or her technical grasp"); *Kahn*, 441 F.3d at 988 ("the problem examined is . . . the general problem that confronted the inventor before the invention was made").

As to the missing feature of displacing the motor from the saw to permit greater angles of cutting, the Board found (Ex. 2, at 16-19) that three additional references (Johnson, Langworthy, and Ambrosio) each disclose that feature. Notably, Langworthy states:

> By the utilization of my invention many different styles of
> incisions or cuts, *with the instrument at various angles*, may be
> made, and the saw manipulated to penetrate to unusual depths.

Ex. 6 at 1, lines 26-30 (emphasis added). Langworthy also states:

> *The arm may readily be manipulated to attain cuts at various*
> *angles* and depths for cranial and other cuts, and the laterally
> disposed saw affords an instrument which may be manipulated
> with facility and accuracy in the operations.

Ex. 6 at 2, lines 69-74 (emphasis added).

Specifically, Johnson (as shown below in Figure 1) expressly discloses "±45° capability

21



of the cutting member positioning mechanism 17." Ex. 5 at col. 5, lines 13-15, col. 7, lines 9-12.

Specifically, Johnson's Figure 1 shows saw blade 19 displaced from motor shaft 41 by drive train

43. The shaft of saw blade 19 is parallel to "carry motor 41," which is displaced from the saw

shaft a distance more than the radius of the saw. Ex. 5 at col. 5, lines 49-59.

22



Similarly, Langworthy, displayed above, shows the motor shaft 16 displaced from, and parallel to, the saw blade shaft at 22. Langworthy makes it clear that parallel shafts separated by a distance greater than the radius of the saw blade made "various angles" for cutting achievable. Ex. 6 at 1, lines 26-30, at 2, lines 69-74.

Finally, Ambrosio discloses "a tilting table saw having new and improved means for *varying the angular position of the saw blade* relative to the work-supportable table." Ex. 7 at col. 1, lines 8-11 (emphasis added). Also, Ambrosio discloses that the motor shaft is parallel to the saw shaft, shifted from the saw shaft by a distance greater than the radius of the saw blade, which may then be tilted in either direction by an angle greater than or equal to 45 degrees.

23

Ambrosio, Ex. 7, Figure 1.  As seen below, motor means 11 is parallel to the shaft of saw blade

10, separated by a distance greater than the radius of the saw blade.  Ex. 7 at col. 1, line 70 - col.

2, line 63.



FIG. 1

 As with Johnson and Langworthy, Ambrosio displays an "improved means for varying the

angular position of the saw blade relative to the work-supportable table."  Ex. 7 at col. 1, lines 9-

24

11.

Thus, these additional references teach the benefits of having larger angle cutting and *all* of them do so by having the motor shaft laterally displaced from the saw shaft.   In addition, these *three* teachings on displacement of the motor show more than substantial evidence to modify Hitachi and Ito's prior art saw by the distance-displacements expressly shown in the other references to achieve the above-discussed clear benefits of having larger angle-cutting possibilities and no hitting of the workpiece table when the user is seeking to cut at larger angles. *See KSR*, 127 S.Ct. at 1742 ("[a] person of ordinary skill is also a person of ordinary creativity, not an automaton"); *In re Sovish*, 769 F.2d 738, 742-43 (Fed. Cir. 1985) (when combining prior art teachings for obviousness skill is presumed, not something less); *Berg*, 320 F.3d at 1315 (USPTO examiners and administrative patent judges are "persons of scientific competence in the fields in which they work . . . informed by their scientific knowledge, as to the meaning of prior art references to persons of ordinary skill in the art").

For the convenience of the Court, the below chart shows each claim limitation and where it is described in the prior art:

| Claim 1 | Prior Art Citations |
|---|---|
| A desk-top cutting machine, comprising: | Hitachi Figure 7, col. 1, lines 10-27<br>Ito Figure 2, col. 1, lines 10-17 |
| a base on which a workpiece to be cut is supported, said base including a top surface | Hitachi Figure 7, item 1<br>Ito Figure 2, item 2 |
| a turntable rotatably disposed in said base and including a top surface | Hitachi Figure 7, item 2<br>Ito Figure 2, item 5 |
| a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position | Hitachi Figure 7, item 4<br>Ito Figure 2, item 8 |
| a circular saw blade | Hitachi Figure 7, item 10<br>Ito Figure 2, item 36 |
| a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft | Hitachi Figure 7, item 9<br>Ito Figure 2 |
| a circular saw assembly having a motor covered by a housing | Hitachi Figure 7, items 11 and 15<br>Ito Figure 2 |
| a motor shaft of said motor being disposed in parallel with and above said saw shaft | Hitachi Figure 7, item 12<br>Ito, col. 1, lines 17-22 |
| transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base | Johnson Figure 1<br>Johnson, col. 5, lines 13-15, 49-59<br>Johnson, col. 7, lines 9-12<br>Langworthy, Figure 1<br>Langworthy, col. 1, lines 1-30<br>Langworthy, col. 2, lines 74-76<br>Langworthy, col. 3, lines 49-53<br>Langworthy, col. 4, lines 69-74<br>Ambrosio, Figures 1 and 2<br>Ambrosio, col. 1, line 70 - col. 2, line 63 |

As demonstrated in the above-referenced chart, each of the claimed limitations is described in the combination of Hitachi's admitted prior art, Ito, Johnson, Langworthy, and Ambrosio. As the Board expressly stated in its decision denying Hitachi's request for rehearing:

> The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results.' *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1739, 82 USPQ2d 1385, 1395 (2007). '[W]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result . . . .' *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. at 1740, 82 USPQ2d at 1395. 'If a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability.' *Id.* at 1740, 82 USPQ2d at 1396. '[I]f a technique has been used to improve one device, and a person or ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill.' *Id.* 'Common sense teaches . . . that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.' *Id.* at 1742, 82 USPQ2d at 1397. '[T]he results of ordinary innovation are not the subject of exclusive rights under the patent laws. Were it otherwise patents might stifle, rather than promote, the progress of useful arts.' *Id.* at 1746, 82 USPQ2d at 1400. After all, as noted in *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727, 1742, 82 USPQ2d 1385, 1397 (2007), 'A person of ordinary skill is also a person or ordinary creativity, not an automaton.'"

Ex. 3, at 4-5. Thus, the Board correctly held that claim 1 would have been unpatentable under 35 U.S.C. § 103 for obviousness in view of the foregoing prior art references.

The Supreme Court's decision in *KSR Int'l Co.* supports the Board's conclusion in this case. *KSR Int'l Co.* involved automobile pedal and sensor technology. 127 S. Ct. at 1736. KSR developed an adjustable mechanical pedal for the Ford motor company and obtained a patent for the design. *Id.* Subsequently KSR was chosen by General Motors Corporation to supply adjustable pedal systems for Chevrolet and GMC light trucks that used engines with computer

27

controlled throttles. *Id.* To make its previously patented design compatible with the Chevrolet

and GMC light trucks, KSR merely took its prior design "and added a modular sensor." *Id.* One

of KSR's rivals, Teleflex, obtained a patent of an adjustable electronic pedal assembly containing

an electronic pedal position sensor attached to the support member of the pedal assembly. *Id.* at

1737. Upon learning of KSR's design for GMC, Telefax sent a letter warning KSR that its

proposal would violate Telefax's patent. *Id.* KSR refused to enter into a royalty arrangement

with Telefax, so Telefax sued for patent infringement arguing that KSR's pedal infringed on

Telefax's patent. The district court granted KSR's motion for summary judgment, finding that

Telefax's patent was obvious. *Id.* at 1738. The Federal Circuit reversed. *Id.* The Supreme

Court, in reversing the Federal Circuit, concluded that, in light of the relevant prior art,

"attaching the sensor where both KSR and [the Telefax patent] put it would have been obvious to

a person of ordinary skill." *Id.* at 1744. The Court held that summary judgment in favor of KSR

was appropriate, despite the presence of a conclusory expert affidavit that had been submitted

addressing the issue of obviousness. "The ultimate judgment of obviousness . . .[,]" the Court

held, "is a legal determination." *Id.* at 1745. And, "[w]here, as here, the content of the prior art,

the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute,

and the obviousness of the claim is apparent in light of these factors, summary judgment in

appropriate." *Id.*

As in *KSR Int'l Co.*, here, Hitachi's representative claim 1 was obvious in light of the

teachings of the relevant prior art. The Board here found that the relevant prior art

> all sought solutions to substantially the same problem, *i.e.*, how to
> make compound angular cuts, including left and right 45 degree angular
> cuts, on a workpiece without flipping the workpiece. To solve the

28

> problem, each of Johnson, Ambrosio, and Langworthy describes
> a compound angle disk cutting apparatus comprising 'a circular
> saw assembly having a motor [is] disposed in parallel with and
> above the circular saw shaft' as required for the cutting machine
> of [Hitachi's] claim 1.

Ex. 2, at 9-10.

Because the Board's findings concerning the obviousness of claim 1 are supported by substantial

evidence and these supported-findings lead to the correct legal conclusion of obviousness, the

USPTO Director is entitled to judgment as a matter of law.

**C.    Substantial Evidence Supports the Board's Findings Ito, Johnson, Langworthy and
Ambrosio are Relevant Prior Art.**

In denying Hitachi's request for rehearing, the Board explicitly addressed Hitachi's

argument that the prior art references were improper.  Contrary to Hitachi's position asserted

before the USPTO, the prior art references identified by the USPTO are proper prior art

references in regard to claim 1.

When considering the question of obviousness, decision-makers commonly use printed

publications showing technology that was known and existed prior to the time that the patent was

applied for, with such publications generally referred to as "prior art" or "prior art references."

*Markman*, 987 F. Supp. at 29.  Specifically, as to what is permissible prior art for patent cases,

the Federal Circuit has held:

> Two separate tests define the scope of analogous prior art:
> (1) whether the art is from the same field of endeavor, regardless
> of the problem addressed and, (2) if the reference is not within
> the field of the inventor's endeavor, whether the reference still
> is reasonably pertinent to the particular problem with which the
> inventor is involved.

*Bigio*, 381 F.3d at 1325 (citing *In re Deminski*, 796 F.2d 436, 442 (Fed. Cir. 1986); *In re Wood*,

599 F.2d 1032, 1036 (CCPA 1979)).  Here, the Board found that, because all the references relate

to saw-cutting, they are either from the same field of endeavor or reasonably pertinent to the

problem of saw-cutting.  Ex. 2, at 10-12.

    The relevancy of the prior art references becomes readily apparent when looking at claim

1.  Claim 1 is in the saw-cutting field.  Specifically, the claim is directed to a cutting base, with

turntable and holder, a motor with specific placement, and "a circular saw blade."  Ex. 1, col. 4,

lines 15-41.  The relevant field for claim 1 therefore encompasses "a circular saw blade" cut.

*See, e.g.*, *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998) ("the name of the game is the

claim").  This field is the same as the field for Johnson, Langworthy, Ambrosio, and Ito.  *See* Ex.

4 (Ito patent entitled "Miter Saw"); Ex. 5 (Johnson patent entitled "Multiple Angle Cutting

Apparatus); Ex. 6 (Langworthy patent entitled "Surgical Saw"); Ex. 7 (Ambrosio patent entitled

"Tilting Table Saw").  Specifically as it as it concerns the prior art references as found by the

Board, the Johnson patent concerns the field of saw-cutting.  *See, e.g.*, Ex. 5 at 1 (prominently

discussing cutting member 19).  The Langworthy patent contains a circular saw for cutting.  Ex. 6

(showing and discussing saw 3 throughout).  The Ambrosio patent is concerned with a circular

saw 10.  Ex. 7.  And Ito shows numerous embodiments for "saw blades" and the machinery

associated with them.  Ex. 4.  Because the references all relate to circular saws, the central part of

claim 1, every patent in this case is from that same field and thus the USPTO properly

determined that these references were analogous prior art.

    Even assuming the prior art references were not in the same field as Hitachi, it is clear

that the references were "reasonably pertinent to the particular problem with which [Hitachi] is

involved." *Bigio*, 381 F.3d at 1325 (citations omitted). Hitachi was concerned with saw-cutting

and how to prevent the motor from hitting the work base, or work table, in order to increase the

possible angles of cut. *See* Ex. 1, at col. 1, lines 24-33:

> the end 15a of a motor housing 15 comes into contact with the top of
> base 1 when the saw assembly 8 is tilted rightward by an angle of 20 to 30
> degrees, as shown in FIG. 7. For that reason, the workpiece cannot be cut
> at 45 degrees. Therefore, to cut the workpiece, the saw assembly 8 is tilted
> leftward, the workpiece is cut at the left-hand end and then the workpiece is
> flipped around and cut at the right-hand end. This means that the efficiency
> of the cutting work is very low.

The prior art references identified by the Board each pertain to having flexibility when

determining the angle of cut. Specifically, Johnson discloses "±45° capability of the cutting

member positioning mechanism 17." Ex. 5 at col. 5, lines 13-15; col. 7, lines 9-12. Langworthy

is concerned with "many different styles of incisions or cuts, with the instrument at various

angles." Ex. 6 at col. 1, lines 26-28. Ambrosio's saw reveals that it may be tilted "for varying

the angular position of the saw blade relative to the work-supportable table." Ex. 7 at col. 1,

lines 8-11. And, although Ito did not expressly solve the problem faced by Hitachi, like the other

prior art references, Ito concerns saw blade cutting, which is especially pertinent to the problem

of moving a saw blade. Ex. 4. Thus, even if this Court does not conclude that the prior art

references are from the same field of endeavor, it is apparent that the references identified by the

Board were all "reasonably pertinent" to the problem faced by Hitachi, *i.e.*, permitting the saw to

make angular cuts at 45°.

## CONCLUSION

For the reasons set forth above, the USPTO Director respectfully requests this Court to enter summary judgment in his favor.

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

  /s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT

Of Counsel:

STEPHEN WALSH
Acting Solicitor
JOSEPH G. PICCOLO
SYDNEY O. JOHNSON, JR.
Associate Solicitors
United States Patent and Trademark Office
Alexandria, Virginia

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HITACHI KOKI CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-cv-01504 (ESH) |
| ) | |
| JON W. DUDAS, Director,[1] ) | |
| United States Patent & Trademark Office ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to LCvR 56.1 and 7(h), Defendant Jon W. Dudas, Under Secretary of

Commerce for Intellectual Property and Director of the United States Patent and Trademark

Office ("USPTO"), respectfully submits this statement of material facts as to which there is no

genuine issue in support of his Motion for Summary Judgment.

**A.      Hitachi's Patent Application**

1.      On June 20, 1995, the USPTO issued U.S. Patent Number 5,425,294 to Hitachi

("Hitachi patent").  Exhibit ("Ex.") 1 at 1.[2]  This patent disclosed a desk-top cutting machine

with a tiltable saw.  *Id.*

2.      On June 20, 1997, Hitachi filed a reissue application under 35 U.S.C. § 251 of the

Hitachi patent, resulting in claims 1-3, 26, 27, 37, 48-56 and 58-62 being part of that application.

---

[1] The complaint erroneously names the defendant as Jon W. Dukas. The proper spelling of defendant's last name is Dudas, as indicated in the first line of the complaint.

[2] Pursuant to LCvR 7(n), an appendix containing the parties' exhibits will be filed with the Court within ten days following the final memorandum concerning defendant's motion. LCvR 7(n).

Ex. 2 (Board's Decision on Appeal) at 2.

      3.     Claim one reads as follows:

A desk-top cutting machine, comprising:

a base on which a workpiece to be cut is supported, said base including a top surface;

a turntable rotatably disposed in said base and including a top surface;

a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;

a circular saw blade;

a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;

a circular saw assembly having a motor covered by a housing;

a motor shaft of said motor being disposed in parallel with and above said saw shaft;

transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base.

Ex. 1, col. 4, lines 15-41.[3/]

      4.     Hitachi's patent discloses a prior art cutting machine.  Ex. 1, Figures 6 and 7; col. 1, lines 11-33.

      5.     The Hitachi patent's prior art sections disclose all of claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.*

---

      [3/]References to "col." are to the column in the patent under which material appears. "Lines" refers to the lines of text being referred to, which can be determined by reference to the line numbers appearing in the center column on the pages.

6.      The Hitachi patent's prior art sections disclose that the saw shaft and the motor shaft lie in a single plane.  *Id.*

7.      Hitachi relied on claim 1 as representative of all of its reissue application claims. Ex. 2, at 3 (quoting Hitachi's statement:  "For the convenience of the Board, Appellant will argue the patentability of independent claim 1.  The other claims stand or fall together with claim 1."). *See also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . . .").

8.      The Board of Patent Appeals and Interferences (the "Board") affirmed the examiner's rejection of Hitachi's representative claim 1 finding that Hitachi's representative claim 1 was unpatentable because it was obvious in light of the prior art.  *Id.* at 23-24.  *See also* Ex. 3 (Board's Decision on Request for Rehearing), at 2-4.

**B.      Prior Art References Considered by the Board**

9.      In denying Hitachi's reissue patent application the Board identified several prior art references which led to the conclusion that Hitachi's claim 1 was obvious.  Ex. 2, at 23-24.

**The Ito Patent**

10.      Prior art U.S. Patent 5,357,834 issued to Ito et al. ("Ito") on October 25, 1994 is identical to Hitachi's claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  Ex. 4 (United States Patent No. 5,357,834),  Figure 2; col. 1, lines 10-22.

11.      Ito discloses the saw shaft and the motor shaft lie in separate planes.  *Id.*, Figure 2; col. 4, lines 10-53.

12.      Ito addressed the problem faced by Hitachi, *i.e.*, to use the saw to cut at a 45° angle, by discussing that the motor shaft is positioned parallel to the saw blade and the gear train

3

must involve a number of parts and consequently becomes costly. *Id.* at col. 1, lines 23-30.

13.     Ito's solution to the problem was to use beveled gears. *Id.* Figure 2, col. 4, lines 10-53.

### The Johnson Patent

14.     On March 11, 1986, U.S. Patent 4,574,670 was issued to George W. Johnson ("Johnson") and discloses a cutting machine. Ex. 5 (United States Patent No. 4,574,670).

15.     The Johnson patent discloses a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade. Ex. 5, Figure 1; col. 5, lines 49-59.

16.     The Johnson patent contains the capability for $\pm 45°$ positioning of the cutting member positioning mechanism 17. Ex. 5 at col. 5, lines 13-15; col. 7, lines 9-12. Thus Johnson states that an additional axis of rotation "permits smaller or larger angles of cut in addition to the plus or minus $45°$ capability of the cutting member positioning mechanism." *Id.* col. 7, lines 9-12. *See also* Ex. 5, Figure 1.

### The Langworthy Patent

17.     On May 30, 1922, U.S. Patent 1,417,669 was issued to Mitchell Langworthy ("Langworthy"). Ex. 6 (United States Patent No. 1,417,669). This patent discloses a surgical saw cutting machine. *Id.* col.1, line 10.

18.     Langworthy presents a surgical saw "by means of which cranial and other incisions or cuts may be made with accuracy and precision . . . ." *Id.* col. 1, lines 10-14.

19.     Langworthy utilized a "well known or standard type of electric motor 1 . . . and the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." Ex. 6 at col. 2, lines 74-76.

20.    Langworthy's Figure 1 shows the motor shaft 16 is parallel to the saw shaft 22. Ex. 6, Figure 1.

21.    Langworthy's Figure 1 shows the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.*

22.    The Langworthy patent discloses that "[t]he arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations." *Id.* col. 4, lines 69-74.

23.    Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.*

24.    Langworthy's patent teaches that "[t]he saw may be of various sizes, and the guard is also made in various sizes complementary to the saw, and these elements may be changed at will, to adapt them for different uses." *Id.* at col. 3, lines 49-53.

**The Ambrosio Patent**

25.    On December 19, 1961, U.S. Patent 3,013,592 was issued to Ambrosio et al. ("Ambrosio"). Ex. 7 (United States Patent No. 3,013,592). The patent discloses a cutting machine, specifically a tilting table saw with a "new and improved means for varying the angular position of the saw blade relative to the work supportable table. *Id.* at col. 1, lines 8-11.

26.    The Ambrosio patent discloses that the motor shaft is parallel to the saw shaft. *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2, line 63.

27.    The Ambrosio patent discloses that the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2,

5

line 63.

28.    Ambrosio's saw may be tilted in either direction by an angle greater than or equal to 45 degrees.  *Id.*, Figures 1 and 2; col. 1, line 70 - col. 2, line 63.

**C.    The Board's Decision Denying Hitachi's Re-Issue Patent Application for Obviousness**

29.    The Board issued a final agency action adverse to Hitachi regarding Hitachi's re-issue application.  Ex. 2.

30.    Based upon Hitachi's statement to the Board, the Board limited its review to Hitachi's claim 1.  Ex. 2, at 3 ("For the convenience of the Board, Appellant will argue the patentability of independent claim 1.  The other claims stand or fall together with claim 1." ).  *See also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . . .").

31.    The Board found the Hitachi's patent discloses a prior art cutting machine.  *Id.* at 12-13.

32.    The Board found the Hitachi patent's prior art sections show all of claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-13.

33.    The Board found the Hitachi patent's prior art sections show that the saw shaft and the motor shaft "lie in a single plane."  *Id.* at 13.

34.    The Board found Ito is relevant prior art.  *Id.* at 8-12.

35.    The Board found Ito shows all of Hitachi's claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-14.

36.    The Board found Ito shows that the saw shaft and the motor shaft "lie in separate

planes[,]" and do not lie in "parallel planes." *Id.* at 14.

37.    The Board found Ito's saw shaft and motor shaft are "in intersecting planes." *Id.*
at 14.

38.    The Board found Ito addressed the problem faced by Hitachi, *i.e.*, to use the saw
to cut at a 45° angle, by discussing that the motor shaft should be positioned parallel to the saw
blade and "'the gear train must involve a number of parts and consequently becomes costly' (Ito,
col. 1, lines 29-30)." *Id.* at 15-16.  The Board found Ito's solution to the problem was "the use of
expensive beveled gears." *Id.* at 20.

39.    The Board found that the Johnson patent is relevant prior art.  *Id.* at 8-12.

40.    The Board found that the Johnson patent discloses "'±45° capability of the cutting
member positioning mechanism 17.' (Johnson, col. 5, lines 13-15; col. 7, lines 9-12)." *Id.* at 16.

41.    The Board found that "persons having ordinary skill in the art would have
understood from Johnson's teaching that the sizes and configuration of his composite driving
motor 41, drive train 43, and cutting member 19 impart ±45° capability to the cutting member."
*Id.* at 17.

42.    The Board found that the Langworthy patent is relevant prior art.  *Id.* at 5-12.

43.    The Board found Langworthy has as a workpiece "a living body." *Id.* at 17.

44.    The Board found Langworthy has as a workpiece base "an operating table." *Id.* at
17.

45.    The Board found that "persons having ordinary skill in the art would have
understood that a surgeon utilizing Langworthy's surgical saw would not have wanted to turn the
living workpiece to make angular cuts to both sides of zero-tilt." *Id.* at 17.

7

46.    The Board noted that

Langworthy instructs:

'By utilization of my invention many different styles of incisions or cuts, with the instrument at various angles, may be made, and the saw manipulated to penetrate to unusual depths.

The invention consists in certain novel combinations and arrangements of parts, involving the driving motor . . . and certain features of construction . . . .'

Id. at 17-18 (quoting Langworthy, at 1, lines 26-35).

47.    The Board noted that Langworthy states that "the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." *Id.* at 18 (quoting Langworthy, at 1, lines 71-76).

48.    The Board found Langworthy's Figures 2 and 3 show the motor shaft is parallel to the saw shaft. *Id.* at 18.

49.    The Board found Langworthy's Figures 2 and 3 show the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.* at 18.

50.    The Board found Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.* at 19.

51.    The Board noted that "Langworthy contributed the following: 'The arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations.'" *Id.* at 19 (quoting Langworthy, at 2, l. 69-74).

52.    The Board found Ambrosio is relevant prior art. Ex. 2, at 5-12.

53.    The Board found Ambrosio discloses that the motor shaft is parallel to the saw

shaft. *Id.* at 19.

54.    The Board found Ambrosio discloses that the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.* at 19-20.

55.    The Board found Ambrosio's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.* at 20.

56.    The Board found Johnson, Langworthy and Ambrosio each describe a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade. *Id.* at 21.

57.    The Board held that in view of the prior art shown in Hitachi's accompanying specification and drawings, as well as the patents of Johnson, Langworthy, and Ambrosio, Hitachi's claim 1 would have been obvious under 35 U.S.C. § 103 because "[p]ersons having ordinary skill in the art reasonably would have expected to be able to inexpensively eliminate the prior art-recognized requirement to turn the workpiece in order to cut angles $\pm$ 45 degrees with respect to the zero-tilt angle position using a desk-top cutting machine by applying the design, materials, and construction taught by Johnson, Langworthy, and Ambrosio and altering the conventional desk-top cutting machines depicted in Figures 6 and 7 of appellant's specification and described by Ito in accordance therewith." *Id.* at 21-22.

**D.    The Board's Decision Denying Hitachi's Request for Rehearing**

58.    After the Board held claim 1 unpatentable, Hitachi requested rehearing, wherein it presented specific arguments to the Board. Ex. 8 (Request for Rehearing Under 37 C.F.R. 1.197(b)).

59.    In its request for rehearing, Hitachi contended that the Johnson, Langworthy, and

Ambrosio patents should not have been considered relevant prior art in assessing the patentability of claim 1 because:

>    (1)    The pertinent passages of Johnson are directed to mitre cutting, not bevel cutting, as encompassed by claim 1 (Ex. 8 at 1-3);
>
>    (2)    Langworthy is in the surgery field and therefore is not analogous art (Ex. 8 at 3-4); and
>
>    (3)    Ambrosio is larger than a desktop cutting machine and therefore is not analogous art (Ex. 8 at 4).

60.    The Board denied Hitachi's request for rehearing.  Ex. 3, at 2.

61.    In denying Hitachi's request for rehearing, the Board addressed Johnson and found that "based on Johnson's teaching as a whole . . ." the Johnson patent's claimed compound angle disk cutting apparatus reasonably appears to have both $\pm$ mitre cutting capability and $\pm$ bevel cutting capability.  Johnson's Figure 3 reasonably supports our finding."  Ex. 3 (Board's Decision on Request for Rehearing), at 3.

62.    The Board also found that Hitachi's attack was improper because it was directed to "references individually" whereas the Board's rejection of Hitachi's patent was "based upon the teachings of a combination of references."  *Id.*

63.    In its decision denying rehearing, the Board also considered and rejected Hitachi's arguments that Langworthy and Ambrosio were not analogous art.  *Id.* at 4.

64.    Specifically, the Board rejected Hitachi's notion that because Langworthy and Ambrosio are not of the same size or used for precisely the same reasons that they are not analogous art.  Rather, the Board concluded that "'the motor/saw designs utilized by the cutting

machine appellant claims and those described by the cited prior art all have a basic parallel motor

shaft/blade shaft configuration, for straight, mtire, bevel and compound cutting.'" *Id.* at 4

(quoting Board's Decision on Appeal, at 5-6).


Respectfully submitted,

_____ /s/ Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____ /s/ Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


_____ /s/ Michelle N. Johnson_____
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139

COUNSEL FOR DEFENDANT



Of Counsel:

STEPHEN WALSH
Acting Solicitor
JOSEPH G. PICCOLO
SYDNEY O. JOHNSON, JR.
Associate Solicitors
United States Patent and Trademark Office
Alexandria, Virginia

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HITACHI KOKI CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-cv-01504 (ESH) |
| | ) | |
| JON W. DUDAS, Director,[1/] | ) | |
| United States Patent And Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## [PROPOSED] ORDER

This matter having come before the Court on Defendant's Motion for Summary

Judgment, Plaintiff's Response in Opposition, if any, and Defendant's Reply, if any, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.  And it is

further

**ORDERED** that judgment is granted in favor of defendant.

**SO ORDERED** on this _____ day of _____, 200___.


_____
ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE


_____

[1/]The complaint erroneously names the defendant as Jon W. Dukas. The proper spelling of defendant's last name is Dudas, as indicated in the first line of the complaint.