# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| HITACHI KOKI CO., LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-cv-01504 (ESH) |
| | ) | |
| JON W. DUDAS, Director, | ) | |
| United States Patent & Trademark Office | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### PLAINTIFF'S STATEMENT OF DISPUTED AND
### NONDISPUTED MATERIAL FACTS

Pursuant to LCvR 56.1 and 7(h), Plaintiff Hitachi Koki Co., Ltd. ("HKK") respectfully

submits this response to Defendant Jon W. Dudas, Under Secretary of Commerce for Intellectual

Property and Director of the United States Patent and Trademark Office ("USPTO"), Statement of

Material Facts Not In Dispute.

## A.      Hitachi's Patent Application

**Plaintiff's Material Fact No. 1:** On June 20, 1995, the USPTO issued U.S. Patent

Number 5,425,294 to Hitachi ('Hitachi Patent"). Exhibit ("Ex.") 1 at 1. This patent discloses a

desk-top cutting machine with a tiltable saw. Id.

**HKK's Response:** Disputed in part. It is disputed, as being a gross and misleading

oversimplification that this patent merely discloses a desk-top cutting machine with a tiltable saw.

**Plaintiff's Material Fact No. 2:** On June 20, 1997, Hitachi filed a reissue application

under 35 U.S.C. § 251 of the Hitachi patent, resulting in claims 1-3, 26, 27, 37, 48-56 and 58-62

being part of that application.

       HKK's Response:  Agreed.

**Plaintiff's Material Fact No. 3:**  Claim one reads as follows:

A desk-top cutting machine, comprising:

a base on which a workpiece to be cut is supported, said base including a top surface;

a turntable rotatably disposed in said base and including a top surface;

a holder supported by said turntable for tilting transversely in opposite directions about a zero-tilt angle position;

a circular saw blade;

a saw shaft located above said holder for supporting said saw so that said saw is swung up and down relative to said base, about a pivot shaft;

a circular saw assembly having a motor covered by a housing;

a motor shaft of said motor being disposed in parallel with and above said saw shaft;

transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base.

       HKK's Response:  Agreed to the extent "claim one" is referring to claim 1 of the

reissue application cited in No. 2 above.

**Plaintiff's Material Fact No. 4:**  Hitachi's patent discloses a prior art cutting machine.

Ex. 1, Figures 6 and 7; col. 1:11-33.

       HKK's Response:  Agreed.

**Plaintiff's Material Fact No. 5:** Hitachi patent's prior art sections disclose all of claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.

HKK's Response: Disputed. It is unclear what Defendant is referring to as "Hitachi patent's prior art sections." Further, claim 1 of the pending '517 application does not contain any reference to "planes." In addition, the prior art device disclosed in Ex. 1, Figures 6 and 7; and in col. 1:11-33 does not have "a motor shaft of said motor being disposed in parallel with and above said saw shaft" or a "transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base."

**Plaintiff's Material Fact No. 6:** The Hitachi patent's prior art sections disclose that the saw shaft and the motor shaft lie in a single plane.

HKK's Response: Disputed. It is unclear what "plane" is referred to here. Moreover, even a cursory review of Figure 7 shows the saw shaft and motor shaft are not axially aligned.

**Plaintiff's Material Fact No. 7:** Hitachi relied on claim 1 as representative of all of its reissue application claims. Ex. 2, at 3 (quoting Hitachi's statement: "For the convenience of the Board, Appellant will argue the patentability of independent claim 1. The other claims stand or fall together with claim 1."). *See also id.* at 4 ("Accordingly, we proceed to review the examiner's rejections of the invention appellant claims, as represented by Claim 1, under 35

3

U.S.C. § 103 . . . .").

        <u>HKK's Response</u>:  Disputed in part.  The quotes provided are correct but out of context.  The use of claim 1 as a representative claim was a position taken only before the Board and only for reasons of convenience in that forum.

        **Plaintiff's Material Fact No. 8:**  The Board of Patent Appeals and Interferences (the "Board") affirmed the examiner's rejection of Hitachi's representative claim 1 finding that Hitachi's representative claim 1 was unpatentable because it was obvious in light of the prior art. *Id.* at 23-24. *See also* Ex. 3 (Board's Decision on Request for Rehearing), at 2-4.

        <u>HKK's Response</u>:  Disputed in part.  The Board affirmed certain rejections, reversed certain rejections that were a part of the final rejection and instituted new grounds of rejection that were not part of the final rejection.  Ex. 2 at 23-24.

**B.**    **<u>Prior Art References Considered by the Board</u>**

        **Plaintiff's Material Fact No. 9:**  In denying Hitachi's reissue patent application the Board identified several prior art references which led to the conclusion that Hitachi's claim 1 was obvious.  Ex. 2, at 23-24.

        <u>HKK's Response</u>:  Disputed.  The proposed fact appears to state that the mere identification of prior art references "led to the conclusion that Hitachi's claim 1 was obvious." This is incomplete and inaccurate.  Answering further, the decision of the Board speaks for itself in terms of the prior art references relied on by the Board.

**The Ito Patent**

**Plaintiff's Material Fact No. 10:**  Prior art U.S. Patent 5,357,834 issued to Ito et al. ("Ito") on October 25, 1994 is identical to Hitachi's claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes. Ex. 4 (United States Patent No. 5,357,834), Figure 2; col. 1:10-22.

HKK's Response:  Disputed.  Ito does not have "a motor shaft of said motor being disposed in parallel with and above said saw shaft" or a "transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base."

**Plaintiff's Material Fact No. 11:**  Ito discloses the saw shaft and the motor shaft lie in separate planes. *Id,* Figure 2; col. 4:10-53.

HKK's Response:  Disputed.  Defendant's repeated use of "planes" is confusing as this concept is not found in the pending claims.  For example, the saw shaft and motor shaft of Ito are in the same "plane" if the plane is perpendicular to the work surface and the saw blade.

**Plaintiff's Material Fact No. 12:**  Ito addressed the problem faced by Hitachi, *i.e.,* to use the saw to cut at a 45° angle, by discussing that the motor shaft is positioned parallel to the saw blade and the gear train must involve a number of parts and consequently becomes costly. *Id.* at

col. 1:23-30.

HKK's Response: Disputed in part. The problem faced by Hitachi was not "to use the saw to cut at a 45° angle." The problem faced by HKK was to create a desktop miter saw capable of ±45° bevel cuts. Further, Defendant has failed to recognize that Ito is discussing the foreign equivalent of Ushiwata's '517 application that was filed in Japan by HKK which is prior art to Ito. Further, it is incorrect to state that Ito "addressed the problem" by "discussing" the present inventor's, Ushiwata's own prior work.

**Plaintiff's Material Fact No. 13:** Ito's solution to the problem was to use beveled gears. *Id.* Figure 2, col. 4:10-53.

HKK's Response: Disputed to the extent that "the problem" referred to in Material Fact No. 12 above is not a fair statement of the problem faced by the inventor of the '294 patent. It is agreed that Ito's solution to the problem of creating a desktop miter saw capable of ±45° bevel cuts was to use a bevel gear.

**The Johnson Patent**

**Plaintiff's Material Fact No. 14:** On March 11, 1986, U.S. Patent 4,574,670 was issued to George W. Johnson ("Johnson") and discloses a cutting machine. Ex. 5 (United States Patent No. 4,574,670).

HKK's Response: Agreed.

**Plaintiff's Material Fact No. 15:**  The Johnson patent discloses a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade. Ex. 5, Figure 1; col. 5:49-59.

HKK's Response:  Disputed.  Answering further, the Johnson patent depicts a motor and saw blade and some housing for each but does not depict the shafts or disclose any arrangement. nor is there any reason for Johnson to do so as that has no impact in terms of the miter saw depicted.  Answering further, the motor housing in Johnson, as depicted, is disposed outside of the saw blade.

**Plaintiff's Material Fact No. 16:**  The Johnson patent contains the capability for ±45° positioning of the cutting member positioning mechanism 17. Ex. 5 at col. 5:13-15; col. 7:9-12. Thus Johnson states that an additional axis of rotation "permits smaller or larger angles of cut in addition to the plus or minus 45° capability of the cutting member positioning mechanism." *Id.* col. 7:9-12. *See also* Ex. 5, Figure 1.

HKK's Response:  Disputed to the extent the "positioning" referred to is intended to indicate bevel positioning.  Agreed to the extent "positioning" is intended to refer to only miter positioning.  Johnson is not capable of making ±45° bevel cuts as the motor and motor casing will strike the base prior to the saw blade reaching a 45° angle in one of the two directions.

**The Langworthy Patent**

**Plaintiff's Material Fact No. 17:**  On May 30, 1922, U.S. Patent 1,417,669 was issued to Mitchell Langworthy ("Langworthy"). Ex. 6 (United States Patent No. 1,417,669). This patent

discloses a surgical saw cutting machine. *Id.* col. 1:10.

    <u>HKK's Response</u>:  Agreed.

**<u>Plaintiff's Material Fact No. 18:</u>**  Langworthy presents a surgical saw "by means of which cranial and other incisions or cuts may be made with accuracy and precision . . . ." *Id.* col. 1:10-14.

    <u>HKK's Response</u>:  Disputed to the extent that this fact is intended to mean that a device constructed according to Langworthy's disclosure would be capable making cranial and other incisions or cuts with accuracy and precision.  This is nothing more than an untested claim of the inventor.

**<u>Plaintiff's Material Fact No. 19:</u>**  Langworthy utilized a "well known or standard type of electric motor 1 . . . and the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." Ex. 6 at col. 2:74-76.

    <u>HKK's Response</u>:  Disputed to the extent it is unkown what (or if) Langworthy himself "utilized" a certain motor.  It is agreed that the quoted statement above is from the Langworthy patent.

**<u>Plaintiff's Material Fact No. 20:</u>**  Langworthy's Figure 1 shows the motor shaft 16 is parallel to the saw shaft 22. Ex. 6, Figure 1.

    <u>HKK's Response</u>:  Disputed.  Langworthy's figure 1 does not define precise proportions of the elements and, therefore, facts should not be drawn from it.  *Hockerson-Halberstadt*, 222 F.3d at 956 ("patent drawings do not define the precise proportions of the

elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." (citing *In re Wright*, 569 F.2d at 1127))

**Plaintiff's Material Fact No. 21:**  Langworthy's Figure 1 shows the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade.  *Id.*

HKK's Response:  Disputed.  Langworthy's figure 1 does not define precise proportions of the elements and, therefore, facts should not be drawn from it.  *Hockerson-Halberstadt*, 222 F.3d at 956 ("patent drawings do not define the precise proportions of the elements and may not be relied on to show particular sizes if the specification is completely silent on the issue." (citing *In re Wright*, 569 F.2d at 1127))

**Plaintiff's Material Fact No. 22:**  The Langworthy patent discloses that "[t]he arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations." *Id.* col. 4:69-74.

HKK's Response:  Agreed to the extent the above quote is accurate.

**Plaintiff's Material Fact No. 23:**  Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees.  *Id.*

HKK's Response:  Disputed.  Defendant fails to state what "either direction" is or how such a determination could be made with the hand held device shown in Langworthy that has no pivot points to define miter beveling motions.  Further, this conclusion is based on Langworthy's figure 1 which does not define precise proportions of the elements and, therefore, facts should not be drawn from it.  *Hockerson-Halberstadt*, 222 F.3d at 956 ("patent drawings

do not define the precise proportions of the elements and may not be relied on to show particular

sizes if the specification is completely silent on the issue." (citing *In re Wright*, 569 F.2d at

1127))

**Plaintiff's Material Fact No. 24:**  Langworthy's patent teaches that "[t]he saw may be

of various sizes, and the guard is also made in various sizes complementary to the saw, and

these elements may be changed at will, to adapt them for different uses." *Id.* at col. 3:49-53.

HKK's Response:  Agreed to the extent the above quote is accurate.

**The Ambrosio Patent**

**Plaintiff's Material Fact No. 25:**  On December 19, 1961, U.S. Patent 3,013,592 was

issued to Ambrosio et al. ("Ambrosio").  Ex. 7 (United States Patent No. 3,013,592).  The patent

discloses a cutting machine, specifically a tilting table saw with a "new and improved means for

varying the angular position of the saw blade relative to the work supportable table.  *Id.* at col.

1:8-11.

HKK's Response:  Agreed to the extent the above quote is accurate.

**Plaintiff's Material Fact No. 26:**  The Ambrosio patent discloses that the motor shaft is

parallel to the saw shaft. *Id.*, Figures 1 and 2; col. 1:70 - col. 2:63.

HKK's Response:  Disputed.  Ambrosio's Figures 1 and 2 do not define precise

proportions of the elements and, therefore, facts should not be drawn from it.  *Hockerson-*

*Halberstadt*, 222 F.3d at 956 ("patent drawings do not define the precise proportions of the

elements and may not be relied on to show particular sizes if the specification is completely

silent on the issue." (citing *In re Wright*, 569 F.2d at 1127)). Further, the cited portion of the

Ambrosio specification says nothing about the motor shaft being paralles to the saw shaft.

**Plaintiff's Material Fact No. 27:**  The Ambrosio patent discloses that the motor shaft is

shifted from the saw shaft by a distance greater than the radius of the saw blade.  *Id.*, Figures 1

and 2; col. 1:70 - col. 2:63.

HKK's Response:  Disputed.  Ambrosio's Figures 1 and 2 do not define precise

proportions of the elements and, therefore, facts should not be drawn from it.  *Hockerson-*

*Halberstadt*, 222 F.3d at 956 ("patent drawings do not define the precise proportions of the

elements and may not be relied on to show particular sizes if the specification is completely silent

on the issue." (citing *In re Wright*, 569 F.2d at 1127))  Further, the cited portion of the Ambrosio

specification says nothing about the motor shaft being shifted away from the saw shaft by a

distance greater than the radius of the saw blade.  Answering further, in Figure 1, the under-table

motor housing, as depicted, is disposed far outside of the edge of the saw blade and beneath the

complex blade hinge mechanism of the table (not desktop) saw.

**Plaintiff's Material Fact No. 28:**  Ambrosio's saw may be tilted in either direction by an

angle greater than or equal to 45 degrees.  *Id.*, Figures 1 and 2; col. 1:70 - col. 2:63.

HKK's Response:  Disputed.  First, it is unclear what "either direction" means.  Second,

Ambrosio's Figures 1 and 2 do not define precise proportions of the elements and, therefore, facts

should not be drawn from it.  *Hockerson-Halberstadt*, 222 F.3d at 956 ("patent drawings do not

define the precise proportions of the elements and may not be relied on to show particular sizes if

the specification is completely silent on the issue." (citing *In re Wright*, 569 F.2d at 1127)).

Second, even if one were to attempt to determine the angles of operation from Ambrosio, it is

apparent that ±45° bevel cuts are not possible. Figure 3 of Ambrosio depicts the saw blade tilted

by the movement of lever 76. Lever 76 operates through a series of linkages, including linkages

51, 71, 72, and pivot points including pivot points 49, 53, 55, and 74. Pivot points 53 and 54 are

designed to be mounted to the surface 2, which is necessarily within the radius of the blade. The

linkages, however, prevent ±45° bevel cuts in both directions. Moreover, angle iron 17 in

combination with the linkages and pivot points cause the blade, when tilted, to also shift left and

right. As such, even if the drawings had precise proportions, the Ambrosio saw is clearly

incapable of making ±45° bevel miter cuts.

C.    **The Board's Decision Denying Hitachi's Re-Issue Patent Application for Obviousness**

**Plaintiff's Material Fact No. 29:** The Board issued a final agency action adverse to

Hitachi regarding Hitachi's reissue application.   Ex. 2.

HKK's Response:  Disputed to the extent that "adverse" is not contained in the

Board decision and to extent that "final agency action" is not defined by Defendant. Answering

further, the appropriate standard of review is subject to 35 U.S.C. § 145.

**Plaintiff's Material Fact No. 30:** Based upon Hitachi's statement to the Board, the

Board limited its review to Hitachi's claim 1.  Ex. 2, at 3 ("For the convenience of the Board,

Appellant will argue the patentability of independent claim 1.  The other claims stand or fall

together with claim 1." ). *See also id.* at 4 ("Accordingly, we proceed to review the examiner's

rejections of the invention appellant claims, as represented by Claim 1, under 35 U.S.C. § 103 . . .
.").

  HKK's Response:  Disputed to the extent that this "fact" is characterizing a written Board decision that need not be characterized as it is available to the Court as an exhibit.

**Plaintiff's Material Fact No. 31:**  The Board found the Hitachi's patent discloses a prior art cutting machine.  *Id.* at 12-13.

  HKK's Response:  Disputed.  The Board did not find anticipation under 35 U.S.C. 102.  Answering further, Figures 6 and 7 of the Hitachi patent do depict a prior art cutting machine.

**Plaintiff's Material Fact No. 32:**  The Board found the Hitachi patent's prior art sections show all of claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-13.

  HKK's Response:  Disputed.  The Board found that the prior art device disclosed in Ex. 1, Figures 6 and 7; col. 1:11-33 does not have "a motor shaft of said motor being disposed in parallel with and above said saw shaft" or a "transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base."

**Plaintiff's Material Fact No. 33:**  The Board found the Hitachi patent's prior art sections show that the saw shaft and the motor shaft "lie in a single plane."  *Id.* at 13.

HKK's Response:  Agreed to the extent "lie in a single plane" is found in the text of the Board decision.  Disputed to the extent this intended to indicate whether or not elements of the pending claims were met by the disclosure in Ex. 1, Figures 6 and 7; col. 1:11-33.

**Plaintiff's Material Fact No. 34:**  The Board found Ito is relevant prior art.  *Id.* at 8-12.

HKK's Response:  Agreed.

**Plaintiff's Material Fact No. 35:**  The Board found Ito shows all of Hitachi's claim 1 except for the saw shaft and the motor shaft being spaced apart in parallel planes.  *Id.* at 12-14.

HKK's Response:  Disputed.  The Board found that Ito does not have "a motor shaft of said motor being disposed in parallel with and above said saw shaft" or a "transmission means through which said motor shaft is connected to said saw shaft so that an axis of said motor shaft is shifted from an axis of said saw shaft by a distance which is greater than or equal to the radius of said circular saw blade, wherein when said holder is tilted in either of said opposite directions by an angle greater than or equal to 45 degrees with respect to the zero-tilt angle position, said housing does not contact said top surface of said base."

**Plaintiff's Material Fact No. 36:**  The Board found Ito shows that the saw shaft and the motor shaft "lie in separate planes[,]" and do not lie in "parallel planes." *Id.* at 14.

HKK's Response:  Agreed to the extent the above quotes are found in the Board decision.  Disputed to the extent that this fact is intended to indicate that the Board found that Ito met disclosed or failed to disclose the elements of the pending claims of the `517 patent.

**Plaintiff's Material Fact No. 37:**  The Board found Ito's saw shaft and motor shaft are "in intersecting planes." *Id.* at 14.

HKK's Response:  Agreed to the extent the above quotes are found in the Board decision.  Disputed to the extent that this fact is intended to indicate that the Board found that Ito met disclosed or failed to disclose the elements of the pending claims of the `517 patent.

**Plaintiff's Material Fact No. 38:**  The Board found Ito addressed the problem faced by Hitachi, *i.e.,* to use the saw to cut at a 45° angle, by discussing that the motor shaft should be positioned parallel to the saw blade and "'the gear train must involve a number of parts and consequently becomes costly' (Ito, col. 1:29-30)." *Id.* at 15-16. The Board found Ito's solution to the problem was "the use of expensive beveled gears." *Id.* at 20.

HKK's Response:  Disputed to the extent this proposed material fact is intended to indicate the actual problem faced by Hitachi.  The problem faced by Hitachi was not "to use the saw to cut at a 45° angle."  The problem faced by HKK was to create a desktop miter saw capable of ±45° bevel cuts.  Further, it is incorrect to state that Ito "addressed the problem" the prior work of the present inventor, by "discussing" the prior work of the present inventor, Ushiwata.

**Plaintiff's Material Fact No. 39:**  The Board found that the Johnson patent is relevant prior art. *Id.* at 8-12.

15

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 40:**  The Board found that the Johnson patent discloses "'±45° capability of the cutting member positioning mechanism 17.' (Johnson, col. 5:13-15; col. 7:9-12)." *Id.* at 16.

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous to the extent this intended to refer to bevel cuts, as Johnson is incapable of making ±45° bevel cuts.

**Plaintiff's Material Fact No. 41:**  The Board found that "persons having ordinary skill in the art would have understood from Johnson's teaching that the sizes and configuration of his composite driving motor 41, drive train 43, and cutting member 19 impart ±45° capability to the cutting member." *Id.* at 17.

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous to the extent this intended to refer to bevel cuts, as Johnson is incapable of making ±45° bevel cuts.

**Plaintiff's Material Fact No. 42:**  The Board found that the Langworthy patent is relevant prior art. *Id.* at 5-12.

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 43:**  The Board found Langworthy has as a workpiece "a living body." *Id.* at 17.

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 44:**  The Board found Langworthy has as a workpiece base "an operating table." *Id.* at 17.

HKK's Response:  Agreed to the extent that this is the finding of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 45:**  The Board found that "persons having ordinary skill in the art would have understood that a surgeon utilizing Langworthy's surgical saw would not have wanted to turn the living workpiece to make angular cuts to both sides of zero-tilt." *Id.* at 17.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 46:**  The Board noted that Langworthy instructs:

> 'By utilization of my invention many different styles of incisions or cuts, with the instrument at various angles, may be made, and the saw manipulated to penetrate to unusual depths.
>
> The invention consists in certain novel combinations and arrangements of parts, involving the driving motor . . . and certain features of construction . . . .'

Id. at 17-18 (quoting Langworthy, at 1:26-35).

HKK's Response: Agreed to the extent that this is a quote from the Board, which in turn is quoting Langworthy.

**Plaintiff's Material Fact No. 47:** The Board noted that Langworthy states that "the saw 3 is of the disk type, of which various sizes may be used to adapt it to different conditions." *Id.* at 18 (quoting Langworthy, at 1:71-76).

HKK's Response: Agreed to the extent that this is a quote from the Board, which in turn is quoting Langworthy.

**Plaintiff's Material Fact No. 48:** The Board found Langworthy's Figures 2 and 3 show the motor shaft is parallel to the saw shaft. *Id.* at 18.

HKK's Response: Agreed to the extent that this a statement of the Board, even though it is a legally improper conclusion.

**Plaintiff's Material Fact No. 49:** The Board found Langworthy's Figures 2 and 3 show the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade. *Id.* at 18.

HKK's Response: Agreed to the extent that this a statement of the Board, even though it is a legally improper conclusion.

**Plaintiff's Material Fact No. 50:** The Board found Langworthy's saw may be tilted in either direction by an angle greater than or equal to 45 degrees. *Id.* at 19.

HKK's Response: Agreed to the extent that this a statement of the Board, even

though it is erroneous and a legally improper conclusion.

**Plaintiff's Material Fact No. 51:**  The Board noted that "Langworthy contributed the following: 'The arm may readily be manipulated to attain cuts at various angles and depths for cranial and other cuts, and the laterally disposed saw affords an instrument which may be manipulated with facility and accuracy in the operations.'"  *Id.* at 19 (quoting Langworthy, at 2, l. 69-74).

HKK's Response:  Agreed to the extent that this is a quote from the Board, which in turn is quoting Langworthy.

**Plaintiff's Material Fact No. 52:**  The Board found Ambrosio is relevant prior art.   Ex. 2, at 5-12.

HKK's Response:  Agreed to the extent that this is a statement of the Board, even though it is erroneous.

**Plaintiff's Material Fact No. 53:**  The Board found Ambrosio discloses that the motor shaft is parallel to the saw shaft.  *Id.* at 19.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is erroneous and a legally improper conclusion.

**Plaintiff's Material Fact No. 54:**  The Board found Ambrosio discloses that the motor shaft is shifted from the saw shaft by a distance greater than the radius of the saw blade.  *Id.* at 19-20.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is a legally improper conclusion.

**Plaintiff's Material Fact No. 55:**  The Board found Ambrosio's saw may be tilted in either direction by an angle greater than or equal to 45 degrees.  *Id.* at 20.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is erroneous and a legally improper conclusion.

**Plaintiff's Material Fact No. 56:**  The Board found Johnson, Langworthy and Ambrosio each describe a motor shaft in parallel to the saw shaft, shifted by a distance greater than the radius of the saw blade.  *Id.* at 21.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is erroneous and a legally improper conclusion.

**Plaintiff's Material Fact No. 57:**  The Board held that in view of the prior art shown in Hitachi's accompanying specification and drawings, as well as the patents of Johnson, Langworthy, and Ambrosio, Hitachi's claim 1 would have been obvious under 35 U.S.C. § 103 because "[p]ersons having ordinary skill in the art reasonably would have expected to be able to inexpensively eliminate the prior art-recognized requirement to turn the workpiece in order to cut angles $\pm$ 45 degrees with respect to the zero-tilt angle position using a desk-top cutting machine by applying the design, materials, and construction taught by Johnson, Langworthy, and Ambrosio and altering the conventional desk-top cutting machines depicted in Figures 6 and 7 of appellant's specification and described by Ito in accordance therewith."  *Id.* at 21-22.

HKK's Response:  Agreed to the extent that this a statement of the Board, even though it is erroneous and a legally improper conclusion.

## D.    The Board's Decision Denying Hitachi's Request for Rehearing

**Plaintiff's Material Fact No. 58:**  After the Board held claim 1 unpatentable, Hitachi requested rehearing, wherein it presented specific arguments to the Board.   Ex. 8 (Request for Rehearing Under 37 C.F.R. 1.197(b)).

HKK's Response:  Agreed.

**Plaintiff's Material Fact No. 59:**  In its request for rehearing, Hitachi contended that the Johnson, Langworthy, and Ambrosio patents should not have been considered relevant prior art in assessing the patentability of claim 1 because:

(1)    The pertinent passages of Johnson are directed to mitre cutting, not bevel cutting, as encompassed by claim 1 (Ex. 8 at 1-3);

(2)    Langworthy is in the surgery field and therefore is not analogous art (Ex. 8 at 3-4); and

(3)    Ambrosio is larger than a desktop cutting machine and therefore is not analogous art (Ex. 8 at 4).

HKK's Response:  Disputed to the extent that these are gross oversimplifications of the arguments presented to the Board in a paper that is presented as an exhibit to this Court.  Further disputed as the arguments presented in Ex. 8 were not done to show "relevancy."

**Plaintiff's Material Fact No. 60:**  The Board denied Hitachi's request for rehearing.  Ex. 3, at 2.

HKK's Response:  Agreed.

**Plaintiff's Material Fact No. 61:**  In denying Hitachi's request for rehearing, the Board addressed Johnson and found that "based on Johnson's teaching as a whole . . ." the Johnson patent's claimed compound angle disk cutting apparatus reasonably appears to have both $\pm$ mitre cutting capability and $\pm$ bevel cutting capability.  Johnson's Figure 3 reasonably supports our finding."  Ex. 3 (Board's Decision on Request for Rehearing), at 3.

HKK's Response:  Agreed to the extent that the Board made clear that the entire basis for their incorrect conclusions regarding Johnson is based on an anlysis of Figure 3 which is devoid of any proportions or scale.

**Plaintiff's Material Fact No. 62:**  The Board also found that Hitachi's attack was improper because it was directed to "references individually" whereas the Board's rejection of Hitachi's patent was "based upon the teachings of a combination of references."  *Id.*

HKK's Response:  Agreed to the extent that this correctly states the Board's legally improper reasoning.

**Plaintiff's Material Fact No. 63:**  In its decision denying rehearing, the Board also considered and rejected Hitachi's arguments that Langworthy and Ambrosio were not analogous art.  *Id.* at 4.

HKK's Response:  Disputed to the extent that it is unclear to what extent any

22

arguments presented were "considered" by the Board as the request for rehearing was denied.

**Plaintiff's Material Fact No. 64:**  Specifically, the Board rejected Hitachi's notion that because Langworthy and Ambrosio are not of the same size or used for precisely the same reasons that they are not analogous art.   Rather, the Board concluded that "'the motor/saw designs utilized by the cutting machine appellant claims and those described by the cited prior art all have a basic parallel motor shaft/blade shaft configuration, for straight, mtire, bevel and compound cutting.'"  *Id.* at 4 (quoting Board's Decision on Appeal, at 5-6).

HKK's Response:  Agreed to the extent that this correctly states the Board's legally improper reasoning and factual errors regarding the cited references.

Dated: February 8, 2008

Respectfully Submitted,

Paul Devinsky (D.C. Bar No. 250373)
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000

*Attorneys for Plaintiff*
*Hitachi Koki Co., Ltd.*

WDC99 1525078-1.033065.0025

23