**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| HITACHI KOKI CO., LTD., Plaintiff, v. JON W. DUDAS, Director, United States Patent and Trademark Office, Defendant. | ) | Case No. 07-CV-01504 (ESH) |

**SUPPLEMENTAL SUBMISSION OF JOINT APPENDIX**

Pursuant to Local Rule 7(n) of the Civil Rules of this Court, Plaintiff Hitachi Koki Co., Inc. and Defendant the Patent and Trademark Office (collectively, "the parties") hereby submit the enclosed Supplement to the Joint Appendix. As required by the Rule, the Joint Appendix contains the portions of the administrative record cited to or relied upon by the parties in their cross motions for summary judgment in the above-captioned matter. Please also find enclosed, an updated chart outlining a description of the document and the party citing each exhibit.

Dated: May 15, 2008

Respectfully Submitted,

/s/ Paul Devinsky
Paul Devinsky  (D.C. Bar No. 250373)
Michael Connelly (D.C. Bar No. 495872)
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Telephone:  202.756.8000

*Attorneys for Plaintiff*
*Hitachi Koki Co., Ltd.*

/s/ Michelle N. Johnson
Michelle N. Johnson (D.C. Bar No. 491910)
Assistant United States Attorney
Civil Division
555 4th Street  NW- Room E4212
Washington, DC 20530
Telephone: 202.514.7139
*Attorneys for Defendant*
*United States Patent and Trademark Office*

**CERTIFICATE OF SERVICE**

I, Paul Devinsky, hereby certify that a true and correct copy of the foregoing was served on May 15, 2008 on the service list established for this proceeding pursuant to Local Civil Rule 5.4.

/s/ Paul Devinsky______________________
Paul Devinsky

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HITACHI KOKI CO., LTD.,

Plaintiff,

v.

JON W. DUDAS, Director, United States Patent and Trademark Office,

Defendant.

Case No. 07-CV-01504 (ESH)

**JOINT APPENDIX INDEX**

| Exhibit | Description | Party Citing | Page(s) |
|---|---|---|---|
| | | | |
| 1 | United States Patent No. 5,425,294 | Hitachi Ex. 1, Dudas Ex. 1 | JA000001-JA000009 |
| 2 | Decision on Appeal by The Board of Patent Appeals and Interferences, dated October 19, 2006 | Hitachi Ex. B, Dudas Ex. 2 | JA000010-JA000011 |
| 3 | Decision on Request for Rehearing (37 C.F.R. §41.52(a)(1) by The Board of Patent Appeals and Interferences, dated June 21, 2007 | Hitachi Ex. 3, Dudas Ex. 3 | JA000036-JA000042 |
| 4 | USPTO Office Action, dated February 9, 2005, regarding final rejection | Hitachi Ex.9, Dudas Ex. 9 | JA000043-JA000055 |
| 5 | In re Application of Ushiwata, Shigeharu, Reply Brief for Customer No. 20277, dated September 7, 2005 | Hitachi Ex. 2 | JA000056-JA000086 |
| 6 | USPTO Memorandum, Subject: Supreme Court decision on KSR Int'l. Co., v. Teleflex, Inc., dated May 3, 2007 | Hitachi Ex. E | JA000087-JA000089 |

| | | | |
|---|---|---|---|
| 7 | United States Patent No. 5,357,834 | Hitachi Ex.4, Dudas Ex. 4 | JA000090-JA000105 |
| 8 | United States Patent No. 4,574,670 | Hitachi Ex. 5, Dudas Ex. 5 | JA000106-JA000125 |
| 9 | United States Patent No. 1,417,669 | Hitachi Ex. 6, Dudas Ex. 6 | JA000126-JA000129 |
| 10 | United States Patent No. 3,013,592 | Hitachi Ex. 7, Dudas Ex. 7 | JA000130-JA000136 |
| 11 | Declaration of Paul Hatch, dated February 2, 2008 | Hitachi Ex. A | JA000137-JA000163 |
| 12 | Declaration of Gary Katz, dated January 19, 2008 | Hitachi Ex. B | JA000164-JA000202 |
| 13 | Declaration of Shigeharu Ushiwata, dated January 29, 2008 | Hitachi Ex. C | JA000203-JA000229 |
| 14 | Declaration of Benjie Hopkins, dated January 25, 2008 | Hitachi Ex. D | JA000230-JA000277 |
| 15 | Request for Rehearing Under 37 C.F.R. 1.197(b), dated December 15, 2006 | Dudas Ex. 8 | JA000278-JA000315 |
| 16 | Examiner's Answer Brief, dated June 16, 2005 | Dudas Ex. 10 | JA000316-JA000348 |

Date: May 15, 2008

/s/ Michael Connelly____________________
Michael Connelly – D.C. Bar No. 495872
Paul Devinsky – D.C. Bar No. 250373
McDermott Will & Emery LLP
Attorneys for Hitachi Koki Co., Ltd.
600 Thirteenth Street, N.W.
Washington, D.C. 20005-3096
202.756.8369
202.756.8087 (Facsimile)
COUNSEL FOR PLAINTIFF

/s/ Michelle N. Johnson__________________
Michelle N. Johnson (D.C. Bar No. 491910)
Assistant United States Attorney
Civil Division
555 4th Street NW- Room E4212
Washington, DC 20530
Telephone: 202.514.7139
COUNSEL FOR DEFENDANT





Docket No.: 33065-025

PATENT

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES**

| | | |
|---|---|---|
| In re Application of | : | Customer Number: 20277 |
| USHIWATA, SHIGEHARU | : | Confirmation Number: 9629 |
| Application No.: 08/879,517 | : | Tech Center Art Unit: 3724 |
| Filed: June 20, 1997 | : | Examiner: Kenneth E. Peterson |

For: DESK-TOP CUTTING MACHINE WITH TILTABLE SAW

**REQUEST FOR REHEARING UNDER 37 C.F.R. 1.197(b)**

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

In response to the Decision of the Board of Patent Appeals and Interferences mailed November 16, 1999, Applicants hereby request a rehearing before the Board of Patent Appeals and Interferences in accordance with 37 C.F.R. §1.197(b).

In its decision the Board asserted that "Johnson describes the '±45° capability of the cutting member positioning mechanism 17'" (Decision at 16, citing Johnson at col. 5:13-15 and col. 7:9-12). Based on this cited passage, the Board determined that "persons having ordinary skill in the art would have understood from Johnson's teaching that the sizes and configuration of his composite driving motor 41, drive train 43 and cutting member 19 impart ±45° capability to the cutting member." (Decision at 17). The Board, in this passage, is discussing the ability to make ±45° bevel cuts. However, Appellants respectfully submit that the Board has misapprehended or overlooked the fact that the cited passage from Johnson is discussing mitre

cuts and it is not discussing the ability to perform bevel cuts.

The context of the quoted passage is that Figs. 3, 7 and 9 of Johnson shows the addition of an additional angle "Z" of movement:

> "FIG. 3 illustrates yet another embodiment of the present invention wherein 10 axes or degrees of relative motion are afforded by the apparatus 11. The tenth degree of relative motion, in addition to the nine discussed above, is angle Z' which affords the rotation of cut piece handling mechanism 15 about an axis perpendicular to angles A and B, angle Z' having a center of rotation that extends vertically through the point of cut 21. Angle Z' adds or subtracts to or from the angle C and provides increased angular adjustments of the cutting member 19 on the cut piece. This permits smaller or larger angles in addition to the ±45° capability of the cutting member positioning mechanism 17."

Johnson at col. 5:3-15.

> Referring to FIGS. 7 and 9, an alternative embodiment of the cut piece handling mechanism 15 is illustrated which provides an additional axis of rotation about the vertical axis of rotation of angle C, this additional axis of rotation, which forms angle Z, passing through point of cut 21. The additional axis of rotation permits smaller or larger angles of cut in addition to the plus or minus 45° capability of the cutting member positioning mechanism 17.

Johnson at col. 7:4-12.

The "±45° capability" referred to in Johnson is to the angle C which, as shown in Figs. 2 and 3, is the mitre cut capability of the saw. According to Johnson, angle C` "represents the axis of rotation of the cut piece handling mechanism 15 about a vertical center line of , the angle C` facilitating end swapping of the cut piece so that either end thereof can be presented to the cutting member 19." Johnson at col. 4:46-51[1]. Therefore, Johnson is rotatable about a vertical axis that allows it to make mitre cuts of ±45° - this has no connection to its ability (or rather, inability) to make bevel cuts. Angle Z is shown in figs. 2 and 3 of Johnson to also be a vertical axis. Appellant's claim 1 is directed to the ability to make bevel cuts of ±45° - something Johnson is not capable of as shown in Appellant's Appeals brief. Brief at 11-24.

In discussing Langworthy, the Board appears to concede that Langworthy never specifically discloses the ability to make ±45° bevel cuts (indeed, the concept of a pivotable tilting mechanism to organize a "bevel cut" has little meaning in connection with the handheld device of Langworthy). (Decision at 6). The only reference in the Langworthy specification relating to cuts is that the device can "attain cuts at various angles and depths." (Langworthy at col. 2:69-74). The Board concludes that "persons having ordinary skill in the art would have understood that a surgeon utilizing Langworthy's surgical saw would not have wanted to turn the living workpiece to make angular cuts to both sides of the zero-tilt." (Decision at 17). Appellants respectfully submit that the Board has misapprehended or overlooked the fact that one of ordinary skill in the art of desk-top cutting machines would not have the requisite to knowledge to understand what a surgeon does or does not want. This merely highlights the fact

[1] Appellant notes that this passage demonstrates that Johnson requires the workpiece to be flipped to make the necessary cuts. If the workpiece did not need to be flipped, there would be no need to fabricate the handling mechanism 15 such that "either end [of the workpiece] can be presented to the cutting member 19." Johnson at col. 4:46-51.

that Langworthy is not analogous as it now requires a carpenter/surgeon to divine its teachings. The 1922 vintage surgical saw of Langworthy has no pivotal movements except those provided by the surgeon. Langworthy has nothing to do with, or any similarity to, a desk-top cutting machine.

Finally, as to Ambrosio, Appellants respectfully submit that the Board has misapprehended or overlooked (i) the sheer size of the Ambrosio invention and (ii) controlling legal precedent supplied to the Board which would preclude characterizing as analogous prior art. The Board acknowledges that the claims at issue are directed to "desktop cutting machine" yet appears to ignore this reference to size in favor of the commonality of Ambrosio having a motor and saw. The Federal Circuit has rejected this approach as flawed. See, *Wang Laboratories, Inc. v. Toshiba Corp.*, 993 F.2d 858, 26 USPQ 2d 1767 (Fed. Cir. 1993) ("The [prior] art is not in the same field of endeavor as the claimed subject matter merely because it relates to [computer] memories." … "[T]here is substantial evidence on the record to support a finding that the [prior] art is not reasonably pertinent "because" size was not a consideration in the [prior art] and the patented invention is designed to provide compact computer memory.").

Accordingly, Applicant respectfully requests that the Board reconsider its decision.

To the extent necessary, a petition for an extension of time under 37 C.F.R. 1.136 is hereby made. Please charge any shortage in fees due in connection with the filing of this paper, including extension of time fees, to Deposit Account 500417 and please credit any excess fees to such deposit account.

Respectfully submitted,
McDERMOTT WILL & EMERY LLP

Paul Devinsky
Registration No. 28,553

600 13th Street, N.W.
Washington, DC 20005-3096
Phone: 202.756.8000
Facsimile: 202.756.8087

**Please recognize our Customer No. 20277 as our correspondence address.**

**Date: December 15, 2006**
WDC99 1324793-1.033065.0025



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 08/879,517 | 06/20/1997 | SHIGEHARU USHIWATA | Q-45698 | 9629 |

7590 06/20/2005

SUGHRUE MION ZINN MACPEAK & SEAS
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 200373202

| EXAMINER | |
|---|---|
| PETERSON, KENNETH E | |
| ART UNIT | PAPER NUMBER |
| 3724 | |

DATE MAILED: 06/20/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**BEFORE THE BOARD OF PATENT APPEALS AND INTERFERENCES**

MAILED

JUN 17 2005

Group 3700

Application Number: 08/879,517
Filing Date: June 20, 1997
Appellant(s): USHIWATA ET AL.

Paul Devinsky
For Appellant

**EXAMINER'S ANSWER**

This is in response to the appeal brief filed 11 April 05.

***(1) Real Party in Interest***

A statement identifying the real party in interest is contained in the brief.

***(2) Related Appeals and Interferences***

A statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief.

***(3) Status of Claims***

The statement of the status of the claims contained in the brief is correct.

***(4) Status of Amendments After Final***

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

***(5) Summary of the Claimed Subject Matter***

The summary of invention contained in the brief is correct.

***(6) Grounds of Rejection to be Reviewed by Appeal***

The appellant's statement of the issues in the brief is correct.

***(7) Claims Appealed***

The copy of the appealed claims contained in the Appendix to the brief is correct.

***(8) Prior Art of Record***

| | | |
|---|---|---|
| 1,417,669 | Langworthy | May 1922 |
| 3,013,592 | Ambrosio et al. | Dec 1961 |
| 4,531,441 | Bergler | Jul 1985 |
| 4,574,670 | Johnson | Mar 1986 |
| 5,357,834 | Ito et al. | Oct 1994 |
| DE3,640,784 | Haffner* | Mar 1988 |

Appellant's admitted prior art, figures 6 and 7, lines 11-33 of column 1.

* Translation from German included. The pertinent embodiment is that of figures 2 and 3. The entire sawing structure (5,15,14,9,13b) pivots about the axis K as

seen in figure 2. The motor axis is parallel to the blade axis and spaced radially beyond the blade. As seen in figure 3, the entire sawing structure can pivot more than 45 degrees to either side to produce a variety of miter cuts.

***(9) Grounds of Rejection***

The following ground(s) of rejection are applicable to the appealed claims:

**Issue I - Claim rejections - Oath**

In accordance with 37 CFR 1.175(b)(1), a supplemental reissue oath/declaration under 37 CFR 1.175(b)(1) must be received before this reissue application can be allowed.

Claims 1-3,26,27,37,48-56 and 58-62 are rejected as being based upon a defective declaration under 35 U.S.C. 251. See 37 CFR 1.175. Receipt of an appropriate supplemental oath/declaration under 37 CFR 1.175(b)(1) will overcome this rejection under 35 U.S.C. 251. An example of acceptable language to be used in the supplemental oath/declaration is as follows:

> "Every error in the patent which was corrected in the present reissue application, and is not covered by a prior oath/declaration submitted in this application, arose without any deceptive intention on the part of the Appellant."

**Issue II - Claim rejections – 35 USC 103**

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a).

Appellant's admitted prior art is shown in figures 6 and 7 and described on lines 11-33 of column 1 of Appellant's patent. The admitted prior art shows a miter saw with

most of the recited limitations including a turntable (2), a clamp (5), a transmission (fig 7), a saw blade (10), a motor shaft (12), a first shaft (4), and second shaft (7). The admitted prior art blade tilts out of the vertical plane at least by 45 degrees to the left side, as discussed on line 23 of column 1, but on the right side, it can tilt only 20-30 degrees, as seen in figure 7 and discussed on line 26 of column 1.

Appellant further admits, in column 1, that the *desire* to pivot 45° either way is an old and well known desire that has been filled by different machines.

Given that pivoting 45° either way is known to be desirable, one of ordinary skill would look to similar sawing machines to see how this might be accomplished.

The art area of highly angleable saws that move toward the workpiece to make a cut contains numerous examples of motors that are placed radially beyond the blade and parallel to the blade shaft. An example is Johnson '670, the ultimate sawing machine for angling adjustability. Johnson is very much concerned with giving the maximum amount of pivotability to all of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor directly over, and radially beyond the saw blade enables the blade to tilt in either direction. As seen by the almost 180 degree arc of rack 49, Johnson can tilt significantly more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the first time in support of the Examiner's taking of Official Notice). In the embodiment of figures 2 and 3, Haffner shows an oscillating miter saw that has the motor shaft radially beyond, and parallel to, the blade shaft. The skinny transmission (figure 6) enables the blade to pivot 45 degrees in either direction, as seen in figure 3.

There are many other examples of prior art that employ motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669 and Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Appellant's admitted prior art by placing the motor shaft radially beyond the saw blade and parallel to the saw blade shaft, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill the old and well known desire to pivot 45°, or more, to both the left and the right. Any change in the size or shape of the motor or transmission necessary to meet the suggested goal of pivoting 45 degrees either way would be well within the capabilities of one of ordinary skill.

Appellant's admitted prior art is a belt, but Appellant will readily admit that replacing a belt transmission with a gear transmission is well known and would have been obvious to one of ordinary skill, since they are well known equivalents. For example, see Langworthy.

**Issue III - Claim rejections – 35 USC 103**

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a) as being unpatentable.

Bergler shows a miter saw with most of the recited limitations including a clamp (33), a transmission (15), a saw blade (11) and a motor shaft (16) mounted generally

above the saw blade. Bergler's blade tilts out of the vertical plane at least by 45

degrees to one side, as best seen in figure 2, by pivoting about a first shaft (33) that is

*substantially* at the level of said top surface of said base. Bergler also shows a clamp

(rotation of wings on shaft 33) for clamping the saw blade at an angle of up to 45

degrees. Bergler's circular saw assembly oscillates into the workpiece about a second

shaft (17).

On lines 45-57 of column 3, Bergler states that it would be desirable to make the

blade pivot the other way as well, if provision could be made for parts not running into

each other. Given such a suggestion, one of ordinary skill would look to similar sawing

machines to see how this might be accomplished.   The art area of highly angleable

saws that move toward the workpiece to make a cut contains numerous examples of

motors that are placed radially beyond the blade and parallel to the blade shaft.   An

example is Johnson '670, the ultimate sawing machine for angling adjustability.

Johnson is very much concerned with giving the maximum amount of pivotability to all

of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor

directly over, and radially beyond the saw blade enables the blade to tilt in either

direction. As seen by the almost 180 degree arc of rack 49, Johnson can tilt

significantly more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the

first time I support of the Examiner's taking of Official Notice). Haffner clearly shows in

figure 2 how placing the motor shaft radially beyond, and parallel to, the blade shaft

enables the blade to pivot 45 degrees in either direction. Haffner in particular teaches the trick of using a skinny transmission to avoid contact with the work support area.

There are many other examples of prior art that employ the motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669, Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Bergler by reconfiguring his motor and transmission size and shape, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill Bergler's desire for multi-directional pivoting. Of course, Bergler's slot in guide 19 would logically be extended to permit the additional pivoting, since Bergler himself suggested the additional pivoting. Other obvious modifications could be made to Bergler to allow better 45° tilting, such as spacing the two pivots (6,6) further apart so that the tilted saw did not hit the side frame (2) with the whole saw table is flipped over.

Bergler's transmission is a belt, but Appellant will readily admit that replacing a belt transmission with a gear transmission is well known and would have been obvious to one of ordinary skill, since they are well known equivalents, as seen in Langworthy.

If it is interpreted that Bergler's first shaft (33) is not "*substantially at a level of said top surface of said base*", then the following rejection applies. Bergler's first shaft (33) guides the pivot bearing (18) in an arcuate path to tilt the saw blade. However, Bergler's first shaft (33) is not at the central axis of said arcuate path, but instead is slightly above the base and partakes in the arcuate movement. However, much more

prevalent in the art is the type of first shaft shown by Ito (17), which is at the exact same level of the top surface of said base. It would have been obvious to one of ordinary skill in the art to have modified Bergler by replacing his first shaft pivot system with Ito's first shaft pivot system, since they are art recognized equivalents known for the same purpose as per MPEP 2144.06, and in order to simplify construction (two aligned holes, as opposed to a hole and an arcuate slot).

**Issue IV - Claim rejections – 35 USC 103**

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a) as being unpatentable.

Ito '834 shows a miter saw with most of the recited limitations including a first shaft (17), a clamp (knob at end of first shaft), a second shaft (30), a transmission (39), a saw blade (36) and a motor shaft (42) mounted generally above the saw blade. Ito's blade tilts 45 degrees to both sides, as best seen in figure 2.

In column 1, Ito discusses the desirability of pivoting both ways without having the sawing apparatus running into other parts of the machine. Ito solves this problem one way (by angling the motor shaft), but given such a suggestion, one of ordinary skill would look to similar sawing machines to see how this might be accomplished. The art area of highly angleable saws that move toward the workpiece to make a cut contains numerous examples of motors that are placed radially beyond the blade and parallel to the blade shaft. An example is Johnson '670 , the ultimate sawing machine for adjustability. Johnson is very much concerned with giving the maximum amount of

pivotability to all of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor directly over, and radially beyond the saw blade enables the blade to tilt more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the first time I support of the Examiner's taking of Official Notice). Haffner clearly shows in figure 2 how placing the motor shaft radially beyond, and parallel to, the blade shaft enables the blade to pivot 45 degrees in either direction. Haffner also teaches the key trick of employing a skinny transmission (figures, 3,6).

There are many other examples of prior art that employ the motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669 and Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Ito by using a small motor directly over, and radially beyond the saw blade, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill Ito's desire for multi-directional pivoting. It is deemed that Ito's motor shaft angling and Johnson's motor shaft positioning are equivalents known for the same purpose, and therefore it would have been obvious to replace one with another as per MPEP 2144.06.

In regards to claims 2 and 3, the motor shaft could be belted or geared to the saw blade shaft, as taught by Langworthy's figures 2 and 3. It would have been obvious to one of ordinary skill in the art to have either belted or geared the motor shaft and saw

blade shaft, as taught by Langworthy, since these are art recognized equivalents known for the same purpose.

**Non-Issue - Claim rejections – 35 USC 103**

Claim 37 is rejected under 35 U.S.C. 103(a) as being unpatentable any of the above rejections, and further in view of Brickner et al.'902.

If it is interpreted that the teachings of the above rejections are not sufficient to modify the base references to tilt both left and right to an angle *greater* than 45°, then Examiner introduces Brickner '902, who teaches that mitering angles should extend to 47° (lines 31 and 32, column 2). This is done to give the operator an opportunity to compensate for any slight warpage of the workpiece or machine. For example, if one was making a mitered-corner picture frame, and the wood was slightly warped, one might be only able to cut a 44° angle with his 45° miter saw, thus yielding a picture frame that had gaps at its joints.

It would have been obvious to one of ordinary skill in the art to have further modified any of the above rejections by making it pivot 47° either way, since a 47° miter saw could compensate for warpage better than a 45° miter saw could.

***(10) Response to Argument***

Appellant has stated that all claims stand or fall with claim 1, so the Examiner has responded to these arguments as if claim 1 were the only claim. If, for some

reason, the board chooses to consider arguments for other claims, the case should be remanded to the Examiner so that he can address those claims in his response.

**Non-issue – Finality**

Appellant's argument that the finality of the rejection is improper is noted. Since Appellant has elected to proceed instead of challenging this point, the argument is moot.

**Issue I - Claim rejections – Oath**

Appellant has not challenged this rejection, and so it is assumed that it will stand.

**Issue II - Claim rejections – 35 USC 103 employing admitted prior art**

Appellant states that Examiner is relying on the Japanese Application 49901/88. This is incorrect. As pointed out previously, Examiner is not relying of the Japanese '901 Application, but is instead relying on the admitted prior art from lines 11-33 of column 1 of Appellant's patent, accompanied by Appellant's acknowledgement in column 1 that it is an old and well known desire to have a miter saw pivot 45 degrees in both directions.

Appellant argues that it was improper for the Examiner to take Official Notice. This is interpreted to be a challenge, and Examiner has accordingly provided references to back up his taking of Official Notice. Johnson, Ambrosio and Langworthy were already exampled in the rejection. The German patent to Haffner is now (for the 1st time) also

exampled in the rejection in further support of the taking of Official Notice. The reason the Examiner took Official Notice is because so many references showed this feature. However, since Appellant has challenged this taking of Official Notice, Examiner has removed it and the Board need only considered the four references (Johnson, Ambrosio, Langworthy and Haffner) to determine obviousness. Since Langworthy and Ambrosio were brought in mainly for the dependent claims (not independently contested here), the board may choose to ignore Langworthy and Ambrosio.

Appellant argues that none of the secondary references are the same type of miter saw as is the base reference (Appellant's admitted prior art). The *in re Oetiker* test for analogous arts *states*

*"In order to rely on a reference as a basis for rejection of an applicant's invention, the reference must either be in the field of applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the inventor was concerned."*

In this case, all of the art is both from Appellant's field of endeavor (advancing circular saw miter cutting) and also are directed to the problem with which the inventor was concerned (pivoting the saw 45º to make miter cuts).

Appellant argues that Johnson's miter saw is not from the same field as the admitted prior art, because the admitted prior art is compact and fits on a desk top. Nonetheless, Johnson, Haffner and the admitted prior art are similar enough in style and intent that they logically would have commanded themselves to an inventor's attention in considering his problem.

Truthfully, there are some differences. Johnson's cutting motion is linear, whereas the admitted prior art's cutting motion is oscillating. Haffner's saw is an inverted compound miter saw. However, the purpose and effect of the devices are quite similar to Appellant's, namely to move a circular saw blade into a workpiece to make a variety of miter cuts. One of ordinary skill in the art would quickly recognize that the Admitted prior art, Johnson and Haffner are all from the same field of endeavor and all are designed explicitly for making a large variety of miter cuts using an advancing circular saw blade. So while there are some differences, they are similar enough that the teachings of one are obvious to apply to another.

Appellant argues that there is no motivation to combine. However, Appellant himself has stated that the motivation to angle up to 45° both ways is an old and well known desire. Furthermore, Ito expresses this motivation quite clearly. Given this desire, one of ordinary skill would assay the known motor-blade relationships and try the motor and transmission configuration shown by at least Johnson and Haffner, and easily achieve the claimed invention.

Appellant argues that there is no motivation to make the motor or transmission smaller. Appellant also points out that none of the prior art mention changing the motor or transmission size. Examiner notes that this step may not even be necessary, since the motors and transmissions of Johnson and Haffner appear to need no resizing to pivot 45 degrees either way. Appellant is reminded that that references need not be bodily incorporated into one another, but instead should be analyzed for what they suggest to one another. In this case, Johnson, Haffner, Langworthy or Ambrosio

suggest putting a motor in the claimed position, but it is the aforementioned old and well known desire to angle to 45° both ways that would motivate one of ordinary skill to conduct the routine engineering of properly sizing the various parts to achieve that which is desired.

Appellant argues that the "desire" to pivot 45° both ways in a miter saw comes from Appellant's own specification and therefore is an improper motivation to combine the prior art. On the contrary, this desire was known for years (as admitted in column 1) and also shown by Ito '834.

Appellant argues that even if the admitted prior art is modified as suggested by the Examiner, it still would not pivot 45 degrees to either side without contacting the workpiece support surface. Examiner responds by noting that Haffner, in particular, shows pivoting 45 degrees to either side, and Haffner has clearly made a skinny transmission and positioned his motor so that they do not contact anything during said pivoting.

Appellant argues that Johnson cannot pivot 45 degrees to both sides, at least not in situations where he is cutting on the side of the workpiece that is opposite the blade transmission, as seen in Appellant's page 23. It is noted that Appellant's drawing may be somewhat exaggerated and Examiner also notes that the test, as claimed, is NOT whether the transmission would hit the workpiece, but whether the transmission would hit the workpiece support surface. Even Appellant's own transmission would hit the top surface of an overly thick workpiece. Examiner also notes that Johnson's track 49, which spans almost 180 degrees, clearly shows that the saw blade is capable of

pivoting 45 degrees (and then some) to either side. Examiner Acknowledges that this ability is contingent upon certain workpiece and workpiece support configurations, but *the same goes for Appellant's device*. Examiner further points out that Haffner clearly shows pivoting 45 degrees either way while using a motor shaft that is parallel to the blade shaft and radially beyond the blade.

Appellant argues against the analogousness of the Ambrosio and Langworthy patents. However, these patents were only mentioned to cover some features of the dependent claims. Since Appellant has stated that all claims stand or fall with claim 1, there is not much point arguing about Langworthy or Ambrosio.

**Issue II - Claim rejections – 35 USC 103 employing Bergler**

Bergler is quite similar to Appellant's admitted prior art, except the motor shaft is radially beyond the blade. The key paragraph in Bergler (line 45-57, column 3) is as follows;

*"As FIG. 2 indicates, saw assembly 9 can be pivoted to one side through an angle β of 45° motor 16 and 16a assuming a position 16a'. In the embodiment, pivoting in the other direction is prevented by the fact that pivot bearing 18 is equipped with a corresponding stop extension 34. Of course, it would also be possible in the opposite direction if provision were made for driving housing 15 and other parts of saw assembly 9 not to pivot so far outward that they would prevent rotation of base plate 1, round table 10 and saw assembly 9 through 180° between miter and table saw positions about axis 6' of bearing pins 6."*

Bergler is clearly referring to pivoting the saw about a horizontal axis to make miter cuts, as seen in figure 2. The terms "other direction" and "opposite direction", being part of inter-linked sentences, both mean the same thing and are referring to angling in the negative $\beta$ direction, but only if the suggested structural changes are made.

When Bergler says *"it would also be possible in the opposite direction"*, the term "*it*" is referring back to "pivoting 45°" from earlier in the paragraph. This leaves one of ordinary skill with the task of modifying Bergler's "*driving housing 15 and other parts of saw assembly"* to achieve the stated goal of pivoting 45° in the opposite direction.

This suggested modification is within the skill of one of ordinary skill in the art and could be accomplished in three steps as follows;

1) Bergler mentions that the stop 34 would stop pivoting in the opposite direction (line 48-51, column 3). As seen in figure 2, it would be simple to reposition this stop 45° further to the left, since Bergler himself suggests pivoting 45° further to the left.

2) Bergler suggests modifying the drive housing (line 52, column 3) so that it doesn't hit anything. This could be done by making it smaller, as seen in Johnson, and/or making the transmission skinnier and the motor further away, as seen in Haffner.

3) Bergler suggests modifying "*other parts of the saw assembly*" so that Bergler would retain his ability to flip upside down and convert into a table saw. This suggested modification has numerous possible solutions, such as making the whole table wider by spacing the two pivots (6,6) further apart so that the tilted saw did not hit the side frame (2) when the whole saw table is flipped over.

Please see the Examiner's responses to the previous rejection for addressing issues such as the analogousness of the secondary references.

Even if it is interpreted that Bergler does not teach pivoting a full 45° to either side, Examiner notes that such is a well known desire, as shown by Ito, and one of ordinary skill would thusly have been motivated to make Bergler pivot 45° to either side.

The only other unique issue in the Bergler rejection is whether the horizontal pivot shaft (33) is at the claimed position vertically. However, this argument (pages 32-35 of Appellant's brief) is not germane to claim 1 since argued claim 1 does not claim this position vertically.

**Issue III - Claim rejections – 35 USC 103 employing Ito**

Appellant argues that there is no suggestion to modify Ito's angled motor shaft with a parallel motor shaft of the prior art (most notably Johnson and Haffner).

In this case, it is obvious to substitute one motor configuration for another, since they are both art recognized equivalents known for the same purpose. For example, Both Ito's and Haffner's motor and transmission configurations were clearly designed to enable miter cuts of up to 45 degrees and larger in either direction. This is a similar situation to the last example set forth in MPEP 2144.06, quoted herebelow;

*The mere fact that phthalocyanine and selenium function as equivalent photoconductors in the claimed environment was not sufficient to establish that one would have been obvious over the other. However, there was evidence that both phthalocyanine and selenium were known photoconductors in the art of*

*electrophotography. "This, in our view, presents strong evidence of obviousness in substituting one for the other in an electrophotographic environment as a photoconductor." 209 USPQ at 759.).*

To paraphrase the above, in this case, Ito, Johnson and Haffner are evidence that both motor configurations were known in the art of mitering circular saws. This, in the Examiner's view, presents strong evidence of obviousness in substituting one for the other in any mitering circular saw.

Please see the Examiner's responses to the previous rejection for addressing issues such as the analogousness of the secondary references.

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

KENNETH E. PETERSON
PRIMARY EXAMINER

kp
16 June 05

Conferees

Allan N. Shoap (SPE 3724)

Derris Banks (SPE 3725)

SUGHRUE MION ZINN MACPEAK & SEAS
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037-3202

PTO 05-3984 German Patent No. 36 40 784 C1

# MITER-BOX SAW

Georg Haffner

UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. MAY 2005
TRANSLATED BY THE MCELROY TRANSLATION COMPANY

FEDERAL REPUBLIC OF GERMANY
GERMAN PATENT OFFICE
PATENT NO. 36 40 784 C1

| | |
|---|---|
| Int. Cl.[4]: | B 23 D 45/14<br>B 27 B 27/06 |
| Filing No.: | P 36 40 784.4-14 |
| Filing Date: | November 28, 1986 |
| Date Granted: | March 31, 1988 |

# MITER-BOX SAW

[Gehrungssäge]

| | |
|---|---|
| Inventor: | Georg Haffner |
| Grantee: | Gotthold Haffner GmbH & Co. |

| | |
|---|---|
| Publications Considered for Evaluation of Patentability: | DE 24 12 822 C3<br>DE 28 11 615 A1<br>DE brochure "Double miter-box saw DGS 164," Gotthold Haffner GmbH + Co., Maschinenfabrik [factory], 7136 Ötisheim |

Opposition can be raised within 3 months after publication of the granting

Claims

1. Miter-box saw with an angular workpiece support, which has a horizontal support surface and a vertical contact surface and which is arranged on a pivoting frame, which can be tilted and fixed about a tilting axis running in the plane of the horizontal support surface and in the plane of the saw blade for setting the miter angle, and with a carrier arm, which carries the saw aggregate unit and which is mounted so that it can move in the plane of the saw blade for generating a feeding movement under the action of a feed motor in the pivoting frame, such that the axis of the saw blade moves in a region underneath the horizontal support surface and a segment of the saw blade passes through gaps in the support and contact surfaces, characterized

in that between the carrier arm (8, 8', 8") and the pivoting frame (5) there is a pillow block (14, 14', 14"), which can be adjusted relative to the pivoting frame perpendicular to the axis (A) of the saw blade and by means of which the axis (A) of the saw blade can also be brought optionally into a region behind the vertical contact surface (3).

2. Miter-box saw according to Claim 1, characterized in that the pillow block (14, 14') can be moved on a horizontal guide (15), which runs underneath the horizontal support surface (2) and parallel to the tilting axis (K) and which is connected to the pivoting frame (5).

3. Miter-box saw according to Claim 2, characterized in that the feed motor (17) engages the pillow block (14, 14').

4. Miter-box saw according to Claim 2 or 3, characterized in that the carrier arm (8) can pivot on the pillow block (14) about a pivot axis (12) running horizontal and parallel to the axis (A) of the saw blade and can be fixed by means of a fixing device (16) in each of its two end positions, so that the axis (A) of the saw blade comes to lie selectively underneath the horizontal plane running through the horizontal support surface (2) or behind the vertical plane going through the vertical contact surface (3).

5. Miter-box saw according to Claim 2 or 3, characterized in that the pillow block (14') carries a vertical guide (20), which runs parallel to the vertical contact surface (3) and parallel to the plane (S-S) of the saw blade and on which a sled (21) connected rigidly to the carrier arm (8') can be moved vertically.

6. Miter-box saw according to Claim 5, characterized in that the sled (21) can be fixed in its upper and its lower end position by means of a fixing device (22, 22a).

7. Miter-box saw according to Claim 5 and 6, characterized in that an adjusting cylinder (22) is provided for moving and fixing the sled (21).

8. Miter-box saw according to Claim 1, characterized in that the pillow block (14") can be moved on a vertical guide (23), which runs parallel to the vertical contact surface (3) and parallel to the plane (S-S) of the saw blade and which is connected to the pivoting frame (5) and can be fixed by means of a fixing device (24) in two end positions, that the carrier arm (8") can pivot on the pillow block (14") about a pivot axis (25) running parallel to the axis (A) of the saw blade, and that the feed motor (26) engages the carrier arm (8").

9. Miter-box saw according to Claim 8, characterized in that an adjusting cylinder (24) is provided for moving and fixing the pillow block (14").

10. Miter-box saw according to at least one of Claims 1-9, characterized in that the saw-blade shaft (11) is mounted on one free end (8a) of a double-armed carrier arm (8), that the drive motor (9) is arranged on the other free end (8b) of the carrier arm (8), and drives the saw-blade shaft (11) by means of an endless belt (10), and that the pivot axis (12) is provided

between two free ends (8a, 8b) approximately in the common center of gravity of the carrier arm (8), the saw blade (13), and the drive motor (9).

11. Miter-box saw according to Claim 10, characterized in that one free end (8a) of the carrier arm (8) is embodied as a fork (27a, 27b), on whose two legs (27a, 27b) the saw-blade shaft is mounted, wherein the saw blade (13) is arranged between two fork legs (27a, 27b).

The invention relates to a miter-box saw with an angular workpiece support, which has a horizontal support surface and a vertical contact surface and which is arranged on a pivoting frame, which can be tilted and fixed about a pivot axis running in the plane of the horizontal support surface and in the plane of the saw blade for setting the miter angle, and with a carrier arm, which carries the saw aggregate unit and which is mounted so that it can move in the plane of the saw blade for generating a feeding movement under the effect of a feed motor in the pivoting frame, so that the saw-blade axis moves in a region underneath the horizontal support surface and a segment of the saw blade passes through gaps in the support and contact surfaces from below.

In a known miter-box saw of this type (DE 28 11 615 A1), the carrier arm can pivot up and down about a horizontal axis running parallel to the saw-blade axis. In the rest position, the free end of the carrier arm carrying the saw blade is located in the lowered position, so that the saw blade does not extend upwards above the support surface. To perform a miter cut, a workpiece, which can be composed of wood, plastic, or aluminum, is laid on the support surface and brought backwards into contact on the contact surface. When the miter cut is performed, the carrier arm is moved upwards from below, whereby the saw blade passes from below through the breaks in the support and contact surfaces. With such a known miter-box saw, flat, wide workpieces can be sawed.

Another miter-box saw for the same purpose is known, in which the carrier arm of the saw blade is guided so that it can move on a guide of the pivot arm, which extends parallel to the horizontal contact surface and which extends in the plane of the saw blade. Tall, narrow workpieces cannot be mitered with these two known types of miter-box saws, because the saw blade does not extend far enough above the horizontal support surface in the vertical direction.

Therefore, there are also miter-box saws (DE 24 12 822 C3), in which the carrier arm can pivot on the pivoting frame about an axis running horizontal and parallel to the saw axis and extends essentially vertically upwards from this pivot axis. In this way, the saw-blade axis lies behind the vertical contact surface. By means of the feed motor, the carrier arm can be pivoted forwards from its rest position, whereby the saw blade passes forward from behind through a gap in the vertical contact surface and the horizontal support surface. With this known miter-box saw, however, flat and wide workpieces cannot be sawed, because the saw blade does not extend far enough past the vertical contact surface.

In another known miter-box saw, which is also designed for sawing tall, narrow workpieces (brochure for double miter-box saw DGS 184, Gotthold Haffner GmbH + Co., Maschinenfabrik [factory], 7136 Ötisheim), the carrier arm is guided so that it can move on a guide running parallel to the support surface and in the direction of the plane of the saw blade. In this way, in each position of the saw, the saw-blade axis is arranged behind the vertical contact surface, and the saw blade passes from behind through the gaps in the contact and support surfaces.

The present invention is based on the problem of creating a miter-box saw of the type mentioned above, with which selectively both flat, wide workpieces and also tall, narrow workpieces can be mitered.

This is achieved according to the invention in that between the carrier arm and the pivoting frame, there is a pillow block, which can be moved relative to the pivoting frame perpendicular to the saw-blade axis and by means of which the saw-blade axis can also be brought selectively into a region behind the vertical contact surface.

With this miter-box saw according to the invention, both flat and wide workpieces and also tall and narrow workpieces can be mitered. For sawing flat and wide workpieces, the carrier arm can be brought into its lower position, in which the saw-blade axis moves into a region underneath the horizontal support surface. For sawing the workpiece, the saw blade projects with a segment above the horizontal support surface, wherein the core of the saw blade segment coincides with the horizontal support surface. For sawing tall and narrow workpieces, the carrier arm is bought into a position in which the saw-blade axis is located behind the vertical contact surface by adjusting the pillow block. By moving the saw blade forward, a segment of the saw blade then projects forward past the vertical contact surface, wherein the core of the segment runs vertically and coincides with the vertical contact surface.

Advantageous configurations of the invention are characterized in the subordinate claims.

The invention is explained in more detail in the following with reference to several embodiments shown in the drawing. Shown are:

Figure 1, a first embodiment of the miter-box saw in a position for cutting flat, wide workpieces,

Figure 2, a position of this miter-box saw for cutting tall, narrow workpieces.

Figure 3, an end view in the direction III of Figure 2,

Figure 4, a second embodiment,

Figure 5, a third embodiment,

Figure 6, details of an advantageous mounting of the saw-blade shaft,

Figure 7, a perspective view of the possible miter cuts.

The miter-box saws shown in various embodiments each have an angular workpiece support, which comprises a horizontal support surface 2 and a vertical contact surface 3. The workpiece support 1 is arranged stationary on a frame 4. This frame can move on a machine bed in the longitudinal direction of the workpieces to be sawed, i.e., perpendicular to the plane of the drawing according to Figure 1. In the frame 4, a pivoting frame 5 can pivot about a tilting axis K running in the plane of the horizontal support surface 2 and in the plane S-S of the saw blade for setting the miter angle α (Figure 3) and can be fixed by means of the hand lever 6. The saw blade 13 is mounted on one free end 8a of a carrier arm 8, wherein this carrier 8 is embodied as a double-armed lever. On the other free end of the carrier arm 8, the drive motor 9 is fixed, which drives the saw-blade shaft 11 by means of an endless belt 10 (Figure 6). The carrier arm 8 can pivot about a pivot axis 12 running horizontal and parallel to the saw-blade axis A, wherein this pivot axis 12 is arranged approximately at the same center of gravity of the carrier arm 8, saw blade 13, and drive motor 9. The pivot axis 12 is arranged in a pillow block 14, which, on its side, is guided so that it can move in the direction B on a horizontal guide 15 running underneath the horizontal support surface 2 and parallel to the tilting axis K. The guide 15 is connected to the pivoting frame 5. Furthermore, a fixing device 16 is provided, with which the carrier arm 8 can be fixed in one of its two end positions, such that the saw-blade axis A comes to lie selectively underneath the horizontal plane running through the horizontal support surface 2, as shown in Figure 1, or behind the vertical plane passing through the vertical contact surface 3, as shown in Figure 2.

Furthermore, a feed motor 17, which can be embodied as a cylinder, is connected to the pivoting frame 5. The feed motor 17 engages the pillow block 14 via the piston rod 17a.

In Figure 7, the two variants of miter cuts possible with the saws according to the invention are shown. If a miter cut is performed on a flat, wide workpiece W1, then this workpiece is laid with its wide side on the horizontal support surface and brought into contact with its narrow side on the vertical contact surface 3. In contrast, if a tall, narrow workpiece W2 is to be mitered, then this workpiece is set with its narrow side on the horizontal support surface 2 and brought into contact with its wide side on the vertical contact surface 3. The basis for this different arrangement is that only one segment 13a or 13b of the saw blade 13 can pass through the gaps 18, 19 in the support surface 2 or the contact surface 3.

Now, if a flat, wide workpiece W1 is to be mitered, then the free end 8a of the carrier arm 8 according to Figure 1 is pivoted downwards and the carrier arm 8 on the pillow block 14 is blocked by means of the fixing device 16. In the original position, the saw blade 13 is then located in the dashed, rear end position. The workpiece W1 is laid with its wide side on the support surface 2 and brought into contact on the contact surface 3. The feed motor 17 then pushes the pillow block 14 to the left, wherein the segment 13a of the saw blade 13 passes

through the slits 18, 19 and in this way, the desired miter cut is performed on the workpiece W1. The saw-blade axis A is here moved essentially in a region underneath the horizontal support surface 2.

For sawing a miter cut on a tall and narrow workpiece W2, first the pillow block 14 is moved into its right end position, and then, after loosening the fixing device 16, the free end 8a of the carrier arm 8 is pivoted upwards. In this position, the carrier arm 8 is again blocked by means of the fixing device 16 relative to the pillow block 14. The saw blade 13 then assumes the position shown with dash-dot lines in Figure 2, and the workpiece W2 can be set with its narrow side on the support surface 2 and can be brought into contact with its wide side on the contact surface 3. For performing the miter cut, then the pillow block 14 is pushed to the left by means of the feeding device 17 on the horizontal guide 15, wherein a segment 13b of the saw blade 13 projects forward past the contact surface 3. The saw-blade axis A here moves into a region behind the vertical contact surface 3.

In the embodiment shown in Figures 1 and 2, the feeding movement of the saw blade 13 is realized by moving the pillow block 14 along the horizontal guide 15 through the feed motor 17. It would also be conceivable, as shown with dash-dot lines in Figure 1, to arranged a feed motor 17' between the pillow block 14 and the carrier arm 8. In this case, then the feeding movement of the saw blade 13 is realized by pivoting the carrier arm 8 relative to the pillow block 14, similar to how it is described in even more detail with reference to Figure 5. The feed motor 17 would then be used only as an adjusting device in order to move and fix the pillow block for performing miter cuts on flat, wide workpieces W1 into its left end position or for performing miter cuts on tall, narrow workpieces W2 into its right end position.

With the miter-box saw, not only can flat and wide workpieces W1 or tall and narrow workpieces W2 be sawed selectively, but, for example, angular workpieces W3, as shown with dash-dot lines in Figure 1, can also be sawed. In this case, a part of the miter cut is performed with the carrier arm positioned according to Figure 1 and the other part of the miter cut is performed with the carrier arm positioned according to Figure 2.

For performing such cuts, the embodiment shown in Figure 4 is especially suited.

In the embodiment shown in Figure 4, parts with the same function are designated also with the same reference symbols, as they have been used in Figures 1 and 2. The above description of these parts applies accordingly. In the embodiment shown in Figure 4, the pillow block 14 carries a vertical guide 20, which runs parallel to the vertical contact surface 3 and parallel to the plane S-S of the saw blade. (The plane of the saw blade is the plane of the drawing in this case.) A sled 21, which is connected rigidly to the carrier arm 8', can move on the vertical guide 20. An adjusting cylinder 22, whose piston rod 22a engages the sled 21, is provided as an adjusting and fixing device for the sled 21. For performing miter cuts on flat and wide

workpieces W1, the sled 21 is lowered into its lower end position shown completely in Figure 4 and blocked there by means of the adjusting cylinder 22. By moving the pillow block 14' by means of the feed motor 17 to the left, the saw cut is performed, wherein the saw-blade axis A moves in a region of the horizontal plane passing through the support surface 2. In contrast, if tall and narrow workpieces W2 are to be sawed, then the sled 21 is moved by means of the adjusting cylinder 22 into its upper end position and blocked there. By moving the pillow block 14' to the left, the saw cut is then performed, wherein the saw-blade axis moves in a region behind the vertical contact surface 3.

Also in the embodiment shown in Figure 5, parts with the same function are again designated with the same reference symbols, as those that were used in Figures 1 and 2. In the pivoting frame 5, a vertical guide 23 is provided, which runs parallel to the vertical contact surface 3 and parallel to the plane of the saw blade (plane of the drawing). The pillow block 14" is guided so that it can move vertically on this vertical guide 23 and can be fixed in its two end positions. For moving and fixing the pillow block 14", for example, an adjusting cylinder 24 can be provided. The carrier arm 8", on whose free end the saw blade 13 is mounted, is mounted on the pillow block 14" so that it can pivot about an axis 25 running horizontally and parallel to the saw-blade axis A. Furthermore, the feed motor 26 engages the carrier arm 8". For cutting flat and wide workpieces W1, the pillow block 14", as shown in Figure 5, is brought into its lower end position and held there by means of the adjusting cylinder 24. For performing the saw cut, the carrier arm 8" is pivoted forwards by means of the feed motor 26, wherein the segment 13a of the saw blade 13 passes through the breaks in the support surface 2 and the contact surface 3. If tall and narrow workpieces W2 are to be cut, then the pillow block 14" is moved and locked in its upper end position by means of the adjusting cylinder 24. For performing the saw cut, the carrier arm 8" is pivoted to the left by means of the feed motor 26, wherein the segment 13b of the saw blade projects forwards past the contact surface 3.

The cutting region of the miter-box saw is dependent on the height of the segment 13a, 13b of the saw blade 13. For equal-sized saw-blade diameters, this height depends on how large the bearing arrangement is on the free end of the carrier arm. In addition, when tilted about the tilting axis K, the overhang of the bearing arrangement on the saw-blade axis in the axial direction plays a role. So that even small miter angles α of approximately 30° can be cut with sufficient cutting height, and thus so that the saw aggregate unit can be pivoted in two direction by means of the pivoting frame 5, the configuration shown in Figure 6 is advantageous. Here, the free end 8a of the carrier arm 8 is embodied as a fork. The saw-blade shaft 11 is here mounted on the two legs 27a and 27b, and the saw blade 13 engages between the two legs 27a and 27b. The saw-blade shaft 11 comprises the two parts 11a and 11b, wherein the part 11a is mounted on the leg 27a so that it cannot move in the axial direction. The part 11b is mounted in the leg 27b so

that it can move in the axial direction, so that after loosening and removing the retaining screw 28, the part 11b can be moved upwards according to Figure 6 so far that it is possible to replace the saw blade 13.





9

Fig.2
W2
3
8a
13
13b
1
III
2
A
B
K
K
4
16
12
6
8
5
9
15
14
17a
17

JA000311



10

Fig.3
S
13
3
A
K
α
α
2
4
15
5
S'
15
6

JA000312



11

Fig.4
3
W2
1
W1
K
2
13
20
22
K
22a
4
5
15
A
8'
14'
21
17

JA000313

12

Fig.5
3
W2
W1
13b
1
13a
2
13
K
K
A
4
5
24
23
25
14"
8"
26
Fig.6
28
11
A
10
27a
11a
13
8
8a
27b
11b

JA000314

13

Fig.7
W2
3
13
19
W1
2
18
13

JA000315



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 08/879,517 | 06/20/1997 | SHIGEHARU USHIWATA | Q-45698 | 9629 |

7590 06/20/2005

SUGHRUE MION ZINN MACPEAK & SEAS
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 200373202

| EXAMINER | |
|---|---|
| PETERSON, KENNETH E | |
| ART UNIT | PAPER NUMBER |
| 3724 | |

DATE MAILED: 06/20/2005

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES**

Application Number: 08/879,517
Filing Date: June 20, 1997
Appellant(s): USHIWATA ET AL.

MAILED
JUN 17 2005
Group 3700

Paul Devinsky
For Appellant

**EXAMINER'S ANSWER**

This is in response to the appeal brief filed 11 April 05.

***(1) Real Party in Interest***

A statement identifying the real party in interest is contained in the brief.

***(2) Related Appeals and Interferences***

A statement identifying the related appeals and interferences which will directly affect or be directly affected by or have a bearing on the decision in the pending appeal is contained in the brief.

***(3) Status of Claims***

The statement of the status of the claims contained in the brief is correct.

***(4) Status of Amendments After Final***

The appellant's statement of the status of amendments after final rejection contained in the brief is correct.

***(5) Summary of the Claimed Subject Matter***

The summary of invention contained in the brief is correct.

***(6) Grounds of Rejection to be Reviewed by Appeal***

The appellant's statement of the issues in the brief is correct.

***(7) Claims Appealed***

The copy of the appealed claims contained in the Appendix to the brief is correct.

***(8) Prior Art of Record***

| | | |
|---|---|---|
| 1,417,669 | Langworthy | May 1922 |
| 3,013,592 | Ambrosio et al. | Dec 1961 |
| 4,531,441 | Bergler | Jul 1985 |
| 4,574,670 | Johnson | Mar 1986 |
| 5,357,834 | Ito et al. | Oct 1994 |
| DE3,640,784 | Haffner* | Mar 1988 |

Appellant's admitted prior art, figures 6 and 7, lines 11-33 of column 1.

* Translation from German included. The pertinent embodiment is that of figures 2 and 3. The entire sawing structure (5,15,14,9,13b) pivots about the axis K as

seen in figure 2. The motor axis is parallel to the blade axis and spaced radially beyond the blade. As seen in figure 3, the entire sawing structure can pivot more than 45 degrees to either side to produce a variety of miter cuts.

## (9) *Grounds of Rejection*

The following ground(s) of rejection are applicable to the appealed claims:

### Issue I - Claim rejections - Oath

In accordance with 37 CFR 1.175(b)(1), a supplemental reissue oath/declaration under 37 CFR 1.175(b)(1) must be received before this reissue application can be allowed.

Claims 1-3,26,27,37,48-56 and 58-62 are rejected as being based upon a defective declaration under 35 U.S.C. 251. See 37 CFR 1.175. Receipt of an appropriate supplemental oath/declaration under 37 CFR 1.175(b)(1) will overcome this rejection under 35 U.S.C. 251. An example of acceptable language to be used in the supplemental oath/declaration is as follows:

> "Every error in the patent which was corrected in the present reissue application, and is not covered by a prior oath/declaration submitted in this application, arose without any deceptive intention on the part of the Appellant."

### Issue II - Claim rejections – 35 USC 103

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a).

Appellant's admitted prior art is shown in figures 6 and 7 and described on lines 11-33 of column 1 of Appellant's patent. The admitted prior art shows a miter saw with

most of the recited limitations including a turntable (2), a clamp (5), a transmission (fig 7), a saw blade (10), a motor shaft (12), a first shaft (4), and second shaft (7). The admitted prior art blade tilts out of the vertical plane at least by 45 degrees to the left side, as discussed on line 23 of column 1, but on the right side, it can tilt only 20-30 degrees, as seen in figure 7 and discussed on line 26 of column 1.

Appellant further admits, in column 1, that the *desire* to pivot 45° either way is an old and well known desire that has been filled by different machines.

Given that pivoting 45° either way is known to be desirable, one of ordinary skill would look to similar sawing machines to see how this might be accomplished.

The art area of highly angleable saws that move toward the workpiece to make a cut contains numerous examples of motors that are placed radially beyond the blade and parallel to the blade shaft. An example is Johnson '670, the ultimate sawing machine for angling adjustability. Johnson is very much concerned with giving the maximum amount of pivotability to all of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor directly over, and radially beyond the saw blade enables the blade to tilt in either direction. As seen by the almost 180 degree arc of rack 49, Johnson can tilt significantly more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the first time in support of the Examiner's taking of Official Notice). In the embodiment of figures 2 and 3, Haffner shows an oscillating miter saw that has the motor shaft radially beyond, and parallel to, the blade shaft. The skinny transmission (figure 6) enables the blade to pivot 45 degrees in either direction, as seen in figure 3.

There are many other examples of prior art that employ motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669 and Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Appellant's admitted prior art by placing the motor shaft radially beyond the saw blade and parallel to the saw blade shaft, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill the old and well known desire to pivot 45°, or more, to both the left and the right. Any change in the size or shape of the motor or transmission necessary to meet the suggested goal of pivoting 45 degrees either way would be well within the capabilities of one of ordinary skill.

Appellant's admitted prior art is a belt, but Appellant will readily admit that replacing a belt transmission with a gear transmission is well known and would have been obvious to one of ordinary skill, since they are well known equivalents. For example, see Langworthy.

**Issue III - Claim rejections – 35 USC 103**

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a) as being unpatentable.

Bergler shows a miter saw with most of the recited limitations including a clamp (33), a transmission (15), a saw blade (11) and a motor shaft (16) mounted generally

above the saw blade. Bergler's blade tilts out of the vertical plane at least by 45

degrees to one side, as best seen in figure 2, by pivoting about a first shaft (33) that is

*substantially* at the level of said top surface of said base. Bergler also shows a clamp

(rotation of wings on shaft 33) for clamping the saw blade at an angle of up to 45

degrees. Bergler's circular saw assembly oscillates into the workpiece about a second

shaft (17).

On lines 45-57 of column 3, Bergler states that it would be desirable to make the

blade pivot the other way as well, if provision could be made for parts not running into

each other. Given such a suggestion, one of ordinary skill would look to similar sawing

machines to see how this might be accomplished. The art area of highly angleable

saws that move toward the workpiece to make a cut contains numerous examples of

motors that are placed radially beyond the blade and parallel to the blade shaft. An

example is Johnson '670, the ultimate sawing machine for angling adjustability.

Johnson is very much concerned with giving the maximum amount of pivotability to all

of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor

directly over, and radially beyond the saw blade enables the blade to tilt in either

direction. As seen by the almost 180 degree arc of rack 49, Johnson can tilt

significantly more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the

first time I support of the Examiner's taking of Official Notice). Haffner clearly shows in

figure 2 how placing the motor shaft radially beyond, and parallel to, the blade shaft

enables the blade to pivot 45 degrees in either direction. Haffner in particular teaches the trick of using a skinny transmission to avoid contact with the work support area.

There are many other examples of prior art that employ the motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669, Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Bergler by reconfiguring his motor and transmission size and shape, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill Bergler's desire for multi-directional pivoting. Of course, Bergler's slot in guide 19 would logically be extended to permit the additional pivoting, since Bergler himself suggested the additional pivoting. Other obvious modifications could be made to Bergler to allow better 45° tilting, such as spacing the two pivots (6,6) further apart so that the tilted saw did not hit the side frame (2) with the whole saw table is flipped over.

Bergler's transmission is a belt, but Appellant will readily admit that replacing a belt transmission with a gear transmission is well known and would have been obvious to one of ordinary skill, since they are well known equivalents, as seen in Langworthy.

If it is interpreted that Bergler's first shaft (33) is not "*substantially at a level of said top surface of said base*", then the following rejection applies. Bergler's first shaft (33) guides the pivot bearing (18) in an arcuate path to tilt the saw blade. However, Bergler's first shaft (33) is not at the central axis of said arcuate path, but instead is slightly above the base and partakes in the arcuate movement. However, much more

prevalent in the art is the type of first shaft shown by Ito (17), which is at the exact same level of the top surface of said base. It would have been obvious to one of ordinary skill in the art to have modified Bergler by replacing his first shaft pivot system with Ito's first shaft pivot system, since they are art recognized equivalents known for the same purpose as per MPEP 2144.06, and in order to simplify construction (two aligned holes, as opposed to a hole and an arcuate slot).

**Issue IV - Claim rejections – 35 USC 103**

Claims 1-3,26,27,37,48-56,58-62 are rejected under 35 U.S.C. 103(a) as being unpatentable.

Ito '834 shows a miter saw with most of the recited limitations including a first shaft (17), a clamp (knob at end of first shaft), a second shaft (30), a transmission (39), a saw blade (36) and a motor shaft (42) mounted generally above the saw blade. Ito's blade tilts 45 degrees to both sides, as best seen in figure 2.

In column 1, Ito discusses the desirability of pivoting both ways without having the sawing apparatus running into other parts of the machine. Ito solves this problem one way (by angling the motor shaft), but given such a suggestion, one of ordinary skill would look to similar sawing machines to see how this might be accomplished. The art area of highly angleable saws that move toward the workpiece to make a cut contains numerous examples of motors that are placed radially beyond the blade and parallel to the blade shaft. An example is Johnson '670 , the ultimate sawing machine for adjustability. Johnson is very much concerned with giving the maximum amount of

pivotability to all of his parts, as best evidenced in figure 3. Johnson teaches that placing a small motor directly over, and radially beyond the saw blade enables the blade to tilt more than 45 degrees in either direction.

A second example of this is the German patent to Haffner (mentioned now for the first time I support of the Examiner's taking of Official Notice). Haffner clearly shows in figure 2 how placing the motor shaft radially beyond, and parallel to, the blade shaft enables the blade to pivot 45 degrees in either direction. Haffner also teaches the key trick of employing a skinny transmission (figures, 3,6).

There are many other examples of prior art that employ the motors that are radially beyond the blade and parallel to the blade shaft: See Langworthy '669 and Ambrosio et al.'592. Both of these patents place the motor in this location to enable more room for the saw to operate resulting in greater angleability.

It would have been obvious to one of ordinary skill in the art to have modified Ito by using a small motor directly over, and radially beyond the saw blade, as is well known and suggested by Johnson, Haffner, Langworthy and Ambrosio, in order to fulfill Ito's desire for multi-directional pivoting. It is deemed that Ito's motor shaft angling and Johnson's motor shaft positioning are equivalents known for the same purpose, and therefore it would have been obvious to replace one with another as per MPEP 2144.06.

In regards to claims 2 and 3, the motor shaft could be belted or geared to the saw blade shaft, as taught by Langworthy's figures 2 and 3. It would have been obvious to one of ordinary skill in the art to have either belted or geared the motor shaft and saw

blade shaft, as taught by Langworthy, since these are art recognized equivalents known for the same purpose.

**Non-Issue - Claim rejections – 35 USC 103**

Claim 37 is rejected under 35 U.S.C. 103(a) as being unpatentable any of the above rejections, and further in view of Brickner et al.'902.

If it is interpreted that the teachings of the above rejections are not sufficient to modify the base references to tilt both left and right to an angle *greater* than 45°, then Examiner introduces Brickner '902, who teaches that mitering angles should extend to 47° (lines 31 and 32, column 2). This is done to give the operator an opportunity to compensate for any slight warpage of the workpiece or machine. For example, if one was making a mitered-corner picture frame, and the wood was slightly warped, one might be only able to cut a 44° angle with his 45° miter saw, thus yielding a picture frame that had gaps at its joints.

It would have been obvious to one of ordinary skill in the art to have further modified any of the above rejections by making it pivot 47° either way, since a 47° miter saw could compensate for warpage better than a 45° miter saw could.

***(10) Response to Argument***

Appellant has stated that all claims stand or fall with claim 1, so the Examiner has responded to these arguments as if claim 1 were the only claim. If, for some

reason, the board chooses to consider arguments for other claims, the case should be remanded to the Examiner so that he can address those claims in his response.

**Non-issue – Finality**

Appellant's argument that the finality of the rejection is improper is noted. Since Appellant has elected to proceed instead of challenging this point, the argument is moot.

**Issue I - Claim rejections – Oath**

Appellant has not challenged this rejection, and so it is assumed that it will stand.

**Issue II - Claim rejections – 35 USC 103 employing admitted prior art**

Appellant states that Examiner is relying on the Japanese Application 49901/88. This is incorrect. As pointed out previously, Examiner is not relying of the Japanese '901 Application, but is instead relying on the admitted prior art from lines 11-33 of column 1 of Appellant's patent, accompanied by Appellant's acknowledgement in column 1 that it is an old and well known desire to have a miter saw pivot 45 degrees in both directions.

Appellant argues that it was improper for the Examiner to take Official Notice. This is interpreted to be a challenge, and Examiner has accordingly provided references to back up his taking of Official Notice. Johnson, Ambrosio and Langworthy were already exampled in the rejection. The German patent to Haffner is now (for the 1st time) also

exampled in the rejection in further support of the taking of Official Notice. The reason the Examiner took Official Notice is because so many references showed this feature. However, since Appellant has challenged this taking of Official Notice, Examiner has removed it and the Board need only considered the four references (Johnson, Ambrosio, Langworthy and Haffner) to determine obviousness. Since Langworthy and Ambrosio were brought in mainly for the dependent claims (not independently contested here), the board may choose to ignore Langworthy and Ambrosio.

Appellant argues that none of the secondary references are the same type of miter saw as is the base reference (Appellant's admitted prior art). The *in re Oetiker* test for analogous arts *states*

*"In order to rely on a reference as a basis for rejection of an applicant's invention, the reference must either be in the field of applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the inventor was concerned."*

In this case, all of the art is both from Appellant's field of endeavor (advancing circular saw miter cutting) and also are directed to the problem with which the inventor was concerned (pivoting the saw 45° to make miter cuts).

Appellant argues that Johnson's miter saw is not from the same field as the admitted prior art, because the admitted prior art is compact and fits on a desk top. Nonetheless, Johnson, Haffner and the admitted prior art are similar enough in style and intent that they logically would have commanded themselves to an inventor's attention in considering his problem.

Truthfully, there are some differences. Johnson's cutting motion is linear, whereas the admitted prior art's cutting motion is oscillating. Haffner's saw is an inverted compound miter saw. However, the purpose and effect of the devices are quite similar to Appellant's, namely to move a circular saw blade into a workpiece to make a variety of miter cuts. One of ordinary skill in the art would quickly recognize that the Admitted prior art, Johnson and Haffner are all from the same field of endeavor and all are designed explicitly for making a large variety of miter cuts using an advancing circular saw blade. So while there are some differences, they are similar enough that the teachings of one are obvious to apply to another.

Appellant argues that there is no motivation to combine. However, Appellant himself has stated that the motivation to angle up to 45° both ways is an old and well known desire. Furthermore, Ito expresses this motivation quite clearly. Given this desire, one of ordinary skill would assay the known motor-blade relationships and try the motor and transmission configuration shown by at least Johnson and Haffner, and easily achieve the claimed invention.

Appellant argues that there is no motivation to make the motor or transmission smaller. Appellant also points out that none of the prior art mention changing the motor or transmission size. Examiner notes that this step may not even be necessary, since the motors and transmissions of Johnson and Haffner appear to need no resizing to pivot 45 degrees either way. Appellant is reminded that that references need not be bodily incorporated into one another, but instead should be analyzed for what they suggest to one another. In this case, Johnson, Haffner, Langworthy or Ambrosio

suggest putting a motor in the claimed position, but it is the aforementioned old and well known desire to angle to 45° both ways that would motivate one of ordinary skill to conduct the routine engineering of properly sizing the various parts to achieve that which is desired.

Appellant argues that the "desire" to pivot 45° both ways in a miter saw comes from Appellant's own specification and therefore is an improper motivation to combine the prior art. On the contrary, this desire was known for years (as admitted in column 1) and also shown by Ito '834.

Appellant argues that even if the admitted prior art is modified as suggested by the Examiner, it still would not pivot 45 degrees to either side without contacting the workpiece support surface. Examiner responds by noting that Haffner, in particular, shows pivoting 45 degrees to either side, and Haffner has clearly made a skinny transmission and positioned his motor so that they do not contact anything during said pivoting.

Appellant argues that Johnson cannot pivot 45 degrees to both sides, at least not in situations where he is cutting on the side of the workpiece that is opposite the blade transmission, as seen in Appellant's page 23. It is noted that Appellant's drawing may be somewhat exaggerated and Examiner also notes that the test, as claimed, is NOT whether the transmission would hit the workpiece, but whether the transmission would hit the workpiece support surface. Even Appellant's own transmission would hit the top surface of an overly thick workpiece. Examiner also notes that Johnson's track 49, which spans almost 180 degrees, clearly shows that the saw blade is capable of

pivoting 45 degrees (and then some) to either side. Examiner Acknowledges that this ability is contingent upon certain workpiece and workpiece support configurations, but *the same goes for Appellant's device*. Examiner further points out that Haffner clearly shows pivoting 45 degrees either way while using a motor shaft that is parallel to the blade shaft and radially beyond the blade.

Appellant argues against the analogousness of the Ambrosio and Langworthy patents. However, these patents were only mentioned to cover some features of the dependent claims. Since Appellant has stated that all claims stand or fall with claim 1, there is not much point arguing about Langworthy or Ambrosio.

**Issue II - Claim rejections – 35 USC 103 employing Bergler**

Bergler is quite similar to Appellant's admitted prior art, except the motor shaft is radially beyond the blade. The key paragraph in Bergler (line 45-57, column 3) is as follows;

*"As FIG. 2 indicates, saw assembly 9 can be pivoted to one side through an angle β of 45° motor 16 and 16a assuming a position 16a'. In the embodiment, pivoting in the other direction is prevented by the fact that pivot bearing 18 is equipped with a corresponding stop extension 34. Of course, it would also be possible in the opposite direction if provision were made for driving housing 15 and other parts of saw assembly 9 not to pivot so far outward that they would prevent rotation of base plate 1, round table 10 and saw assembly 9 through 180° between miter and table saw positions about axis 6' of bearing pins 6."*

Bergler is clearly referring to pivoting the saw about a horizontal axis to make miter cuts, as seen in figure 2. The terms "other direction" and "opposite direction", being part of inter-linked sentences, both mean the same thing and are referring to angling in the negative $\beta$ direction, but only if the suggested structural changes are made.

When Bergler says *"it would also be possible in the opposite direction*", the term "*it"* is referring back to "pivoting 45°" from earlier in the paragraph. This leaves one of ordinary skill with the task of modifying Bergler's "*driving housing 15 and other parts of saw assembly"* to achieve the stated goal of pivoting 45° in the opposite direction.

This suggested modification is within the skill of one of ordinary skill in the art and could be accomplished in three steps as follows;

1) Bergler mentions that the stop 34 would stop pivoting in the opposite direction (line 48-51, column 3). As seen in figure 2, it would be simple to reposition this stop 45° further to the left, since Bergler himself suggests pivoting 45° further to the left.

2) Bergler suggests modifying the drive housing (line 52, column 3) so that it doesn't hit anything. This could be done by making it smaller, as seen in Johnson, and/or making the transmission skinnier and the motor further away, as seen in Haffner.

3) Bergler suggests modifying "*other parts of the saw assembly*" so that Bergler would retain his ability to flip upside down and convert into a table saw. This suggested modification has numerous possible solutions, such as making the whole table wider by spacing the two pivots (6,6) further apart so that the tilted saw did not hit the side frame (2) when the whole saw table is flipped over.

Please see the Examiner's responses to the previous rejection for addressing issues such as the analogousness of the secondary references.

Even if it is interpreted that Bergler does not teach pivoting a full 45° to either side, Examiner notes that such is a well known desire, as shown by Ito, and one of ordinary skill would thusly have been motivated to make Bergler pivot 45° to either side.

The only other unique issue in the Bergler rejection is whether the horizontal pivot shaft (33) is at the claimed position vertically. However, this argument (pages 32-35 of Appellant's brief) is not germane to claim 1 since argued claim 1 does not claim this position vertically.

**Issue III - Claim rejections – 35 USC 103 employing Ito**

Appellant argues that there is no suggestion to modify Ito's angled motor shaft with a parallel motor shaft of the prior art (most notably Johnson and Haffner).

In this case, it is obvious to substitute one motor configuration for another, since they are both art recognized equivalents known for the same purpose. For example, Both Ito's and Haffner's motor and transmission configurations were clearly designed to enable miter cuts of up to 45 degrees and larger in either direction. This is a similar situation to the last example set forth in MPEP 2144.06, quoted herebelow;

*The mere fact that phthalocyanine and selenium function as equivalent photoconductors in the claimed environment was not sufficient to establish that one would have been obvious over the other. However, there was evidence that both phthalocyanine and selenium were known photoconductors in the art of*

*electrophotography. "This, in our view, presents strong evidence of obviousness in substituting one for the other in an electrophotographic environment as a photoconductor." 209 USPQ at 759.).*

To paraphrase the above, in this case, Ito, Johnson and Haffner are evidence that both motor configurations were known in the art of mitering circular saws. This, in the Examiner's view, presents strong evidence of obviousness in substituting one for the other in any mitering circular saw.

Please see the Examiner's responses to the previous rejection for addressing issues such as the analogousness of the secondary references.

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

KENNETH E. PETERSON
PRIMARY EXAMINER

kp
16 June 05

Conferees

Allan N. Shoap (SPE 3724)

Derris Banks (SPE 3725)

SUGHRUE MION ZINN MACPEAK & SEAS
2100 PENNSYLVANIA AVENUE NW
WASHINGTON, DC 20037-3202

PTO 05-3984 German Patent No. 36 40 784 C1

# MITER-BOX SAW

Georg Haffner

UNITED STATES PATENT AND TRADEMARK OFFICE
WASHINGTON, D.C. MAY 2005
TRANSLATED BY THE MCELROY TRANSLATION COMPANY

FEDERAL REPUBLIC OF GERMANY
GERMAN PATENT OFFICE
PATENT NO. 36 40 784 C1

| | |
|---|---|
| Int. Cl.[4]: | B 23 D 45/14<br>B 27 B 27/06 |
| Filing No.: | P 36 40 784.4-14 |
| Filing Date: | November 28, 1986 |
| Date Granted: | March 31, 1988 |

MITER-BOX SAW

[Gehrungssäge]

| | |
|---|---|
| Inventor: | Georg Haffner |
| Grantee: | Gotthold Haffner GmbH & Co. |

| | |
|---|---|
| Publications Considered for Evaluation of Patentability: | DE 24 12 822 C3<br>DE 28 11 615 A1<br>DE brochure "Double miter-box saw DGS 164," Gotthold Haffner GmbH + Co., Maschinenfabrik [factory], 7136 Ötisheim |

Opposition can be raised within 3 months after publication of the granting

Claims

1. Miter-box saw with an angular workpiece support, which has a horizontal support surface and a vertical contact surface and which is arranged on a pivoting frame, which can be tilted and fixed about a tilting axis running in the plane of the horizontal support surface and in the plane of the saw blade for setting the miter angle, and with a carrier arm, which carries the saw aggregate unit and which is mounted so that it can move in the plane of the saw blade for generating a feeding movement under the action of a feed motor in the pivoting frame, such that the axis of the saw blade moves in a region underneath the horizontal support surface and a segment of the saw blade passes through gaps in the support and contact surfaces, characterized

in that between the carrier arm (8, 8', 8") and the pivoting frame (5) there is a pillow block (14, 14', 14"), which can be adjusted relative to the pivoting frame perpendicular to the axis (A) of the saw blade and by means of which the axis (A) of the saw blade can also be brought optionally into a region behind the vertical contact surface (3).

2. Miter-box saw according to Claim 1, characterized in that the pillow block (14, 14') can be moved on a horizontal guide (15), which runs underneath the horizontal support surface (2) and parallel to the tilting axis (K) and which is connected to the pivoting frame (5).

3. Miter-box saw according to Claim 2, characterized in that the feed motor (17) engages the pillow block (14, 14').

4. Miter-box saw according to Claim 2 or 3, characterized in that the carrier arm (8) can pivot on the pillow block (14) about a pivot axis (12) running horizontal and parallel to the axis (A) of the saw blade and can be fixed by means of a fixing device (16) in each of its two end positions, so that the axis (A) of the saw blade comes to lie selectively underneath the horizontal plane running through the horizontal support surface (2) or behind the vertical plane going through the vertical contact surface (3).

5. Miter-box saw according to Claim 2 or 3, characterized in that the pillow block (14') carries a vertical guide (20), which runs parallel to the vertical contact surface (3) and parallel to the plane (S-S) of the saw blade and on which a sled (21) connected rigidly to the carrier arm (8') can be moved vertically.

6. Miter-box saw according to Claim 5, characterized in that the sled (21) can be fixed in its upper and its lower end position by means of a fixing device (22, 22a).

7. Miter-box saw according to Claim 5 and 6, characterized in that an adjusting cylinder (22) is provided for moving and fixing the sled (21).

8. Miter-box saw according to Claim 1, characterized in that the pillow block (14") can be moved on a vertical guide (23), which runs parallel to the vertical contact surface (3) and parallel to the plane (S-S) of the saw blade and which is connected to the pivoting frame (5) and can be fixed by means of a fixing device (24) in two end positions, that the carrier arm (8") can pivot on the pillow block (14") about a pivot axis (25) running parallel to the axis (A) of the saw blade, and that the feed motor (26) engages the carrier arm (8").

9. Miter-box saw according to Claim 8, characterized in that an adjusting cylinder (24) is provided for moving and fixing the pillow block (14").

10. Miter-box saw according to at least one of Claims 1-9, characterized in that the saw-blade shaft (11) is mounted on one free end (8a) of a double-armed carrier arm (8), that the drive motor (9) is arranged on the other free end (8b) of the carrier arm (8), and drives the saw-blade shaft (11) by means of an endless belt (10), and that the pivot axis (12) is provided

between two free ends (8a, 8b) approximately in the common center of gravity of the carrier arm (8), the saw blade (13), and the drive motor (9).

11. Miter-box saw according to Claim 10, characterized in that one free end (8a) of the carrier arm (8) is embodied as a fork (27a, 27b), on whose two legs (27a, 27b) the saw-blade shaft is mounted, wherein the saw blade (13) is arranged between two fork legs (27a, 27b).

The invention relates to a miter-box saw with an angular workpiece support, which has a horizontal support surface and a vertical contact surface and which is arranged on a pivoting frame, which can be tilted and fixed about a pivot axis running in the plane of the horizontal support surface and in the plane of the saw blade for setting the miter angle, and with a carrier arm, which carries the saw aggregate unit and which is mounted so that it can move in the plane of the saw blade for generating a feeding movement under the effect of a feed motor in the pivoting frame, so that the saw-blade axis moves in a region underneath the horizontal support surface and a segment of the saw blade passes through gaps in the support and contact surfaces from below.

In a known miter-box saw of this type (DE 28 11 615 A1), the carrier arm can pivot up and down about a horizontal axis running parallel to the saw-blade axis. In the rest position, the free end of the carrier arm carrying the saw blade is located in the lowered position, so that the saw blade does not extend upwards above the support surface. To perform a miter cut, a workpiece, which can be composed of wood, plastic, or aluminum, is laid on the support surface and brought backwards into contact on the contact surface. When the miter cut is performed, the carrier arm is moved upwards from below, whereby the saw blade passes from below through the breaks in the support and contact surfaces. With such a known miter-box saw, flat, wide workpieces can be sawed.

Another miter-box saw for the same purpose is known, in which the carrier arm of the saw blade is guided so that it can move on a guide of the pivot arm, which extends parallel to the horizontal contact surface and which extends in the plane of the saw blade. Tall, narrow workpieces cannot be mitered with these two known types of miter-box saws, because the saw blade does not extend far enough above the horizontal support surface in the vertical direction.

Therefore, there are also miter-box saws (DE 24 12 822 C3), in which the carrier arm can pivot on the pivoting frame about an axis running horizontal and parallel to the saw axis and extends essentially vertically upwards from this pivot axis. In this way, the saw-blade axis lies behind the vertical contact surface. By means of the feed motor, the carrier arm can be pivoted forwards from its rest position, whereby the saw blade passes forward from behind through a gap in the vertical contact surface and the horizontal support surface. With this known miter-box saw, however, flat and wide workpieces cannot be sawed, because the saw blade does not extend far enough past the vertical contact surface.

In another known miter-box saw, which is also designed for sawing tall, narrow workpieces (brochure for double miter-box saw DGS 184, Gotthold Haffner GmbH + Co., Maschinenfabrik [factory], 7136 Ötisheim), the carrier arm is guided so that it can move on a guide running parallel to the support surface and in the direction of the plane of the saw blade. In this way, in each position of the saw, the saw-blade axis is arranged behind the vertical contact surface, and the saw blade passes from behind through the gaps in the contact and support surfaces.

The present invention is based on the problem of creating a miter-box saw of the type mentioned above, with which selectively both flat, wide workpieces and also tall, narrow workpieces can be mitered.

This is achieved according to the invention in that between the carrier arm and the pivoting frame, there is a pillow block, which can be moved relative to the pivoting frame perpendicular to the saw-blade axis and by means of which the saw-blade axis can also be brought selectively into a region behind the vertical contact surface.

With this miter-box saw according to the invention, both flat and wide workpieces and also tall and narrow workpieces can be mitered. For sawing flat and wide workpieces, the carrier arm can be brought into its lower position, in which the saw-blade axis moves into a region underneath the horizontal support surface. For sawing the workpiece, the saw blade projects with a segment above the horizontal support surface, wherein the core of the saw blade segment coincides with the horizontal support surface. For sawing tall and narrow workpieces, the carrier arm is bought into a position in which the saw-blade axis is located behind the vertical contact surface by adjusting the pillow block. By moving the saw blade forward, a segment of the saw blade then projects forward past the vertical contact surface, wherein the core of the segment runs vertically and coincides with the vertical contact surface.

Advantageous configurations of the invention are characterized in the subordinate claims.

The invention is explained in more detail in the following with reference to several embodiments shown in the drawing. Shown are:

Figure 1, a first embodiment of the miter-box saw in a position for cutting flat, wide workpieces,

Figure 2, a position of this miter-box saw for cutting tall, narrow workpieces.

Figure 3, an end view in the direction III of Figure 2,

Figure 4, a second embodiment,

Figure 5, a third embodiment,

Figure 6, details of an advantageous mounting of the saw-blade shaft,

Figure 7, a perspective view of the possible miter cuts.

The miter-box saws shown in various embodiments each have an angular workpiece support, which comprises a horizontal support surface 2 and a vertical contact surface 3. The workpiece support 1 is arranged stationary on a frame 4. This frame can move on a machine bed in the longitudinal direction of the workpieces to be sawed, i.e., perpendicular to the plane of the drawing according to Figure 1. In the frame 4, a pivoting frame 5 can pivot about a tilting axis K running in the plane of the horizontal support surface 2 and in the plane S-S of the saw blade for setting the miter angle α (Figure 3) and can be fixed by means of the hand lever 6. The saw blade 13 is mounted on one free end 8a of a carrier arm 8, wherein this carrier 8 is embodied as a double-armed lever. On the other free end of the carrier arm 8, the drive motor 9 is fixed, which drives the saw-blade shaft 11 by means of an endless belt 10 (Figure 6). The carrier arm 8 can pivot about a pivot axis 12 running horizontal and parallel to the saw-blade axis A, wherein this pivot axis 12 is arranged approximately at the same center of gravity of the carrier arm 8, saw blade 13, and drive motor 9. The pivot axis 12 is arranged in a pillow block 14, which, on its side, is guided so that it can move in the direction B on a horizontal guide 15 running underneath the horizontal support surface 2 and parallel to the tilting axis K. The guide 15 is connected to the pivoting frame 5. Furthermore, a fixing device 16 is provided, with which the carrier arm 8 can be fixed in one of its two end positions, such that the saw-blade axis A comes to lie selectively underneath the horizontal plane running through the horizontal support surface 2, as shown in Figure 1, or behind the vertical plane passing through the vertical contact surface 3, as shown in Figure 2.

Furthermore, a feed motor 17, which can be embodied as a cylinder, is connected to the pivoting frame 5. The feed motor 17 engages the pillow block 14 via the piston rod 17a.

In Figure 7, the two variants of miter cuts possible with the saws according to the invention are shown. If a miter cut is performed on a flat, wide workpiece W1, then this workpiece is laid with its wide side on the horizontal support surface and brought into contact with its narrow side on the vertical contact surface 3. In contrast, if a tall, narrow workpiece W2 is to be mitered, then this workpiece is set with its narrow side on the horizontal support surface 2 and brought into contact with its wide side on the vertical contact surface 3. The basis for this different arrangement is that only one segment 13a or 13b of the saw blade 13 can pass through the gaps 18, 19 in the support surface 2 or the contact surface 3.

Now, if a flat, wide workpiece W1 is to be mitered, then the free end 8a of the carrier arm 8 according to Figure 1 is pivoted downwards and the carrier arm 8 on the pillow block 14 is blocked by means of the fixing device 16. In the original position, the saw blade 13 is then located in the dashed, rear end position. The workpiece W1 is laid with its wide side on the support surface 2 and brought into contact on the contact surface 3. The feed motor 17 then pushes the pillow block 14 to the left, wherein the segment 13a of the saw blade 13 passes

through the slits 18, 19 and in this way, the desired miter cut is performed on the workpiece W1. The saw-blade axis A is here moved essentially in a region underneath the horizontal support surface 2.

For sawing a miter cut on a tall and narrow workpiece W2, first the pillow block 14 is moved into its right end position, and then, after loosening the fixing device 16, the free end 8a of the carrier arm 8 is pivoted upwards. In this position, the carrier arm 8 is again blocked by means of the fixing device 16 relative to the pillow block 14. The saw blade 13 then assumes the position shown with dash-dot lines in Figure 2, and the workpiece W2 can be set with its narrow side on the support surface 2 and can be brought into contact with its wide side on the contact surface 3. For performing the miter cut, then the pillow block 14 is pushed to the left by means of the feeding device 17 on the horizontal guide 15, wherein a segment 13b of the saw blade 13 projects forward past the contact surface 3. The saw-blade axis A here moves into a region behind the vertical contact surface 3.

In the embodiment shown in Figures 1 and 2, the feeding movement of the saw blade 13 is realized by moving the pillow block 14 along the horizontal guide 15 through the feed motor 17. It would also be conceivable, as shown with dash-dot lines in Figure 1, to arranged a feed motor 17' between the pillow block 14 and the carrier arm 8. In this case, then the feeding movement of the saw blade 13 is realized by pivoting the carrier arm 8 relative to the pillow block 14, similar to how it is described in even more detail with reference to Figure 5. The feed motor 17 would then be used only as an adjusting device in order to move and fix the pillow block for performing miter cuts on flat, wide workpieces W1 into its left end position or for performing miter cuts on tall, narrow workpieces W2 into its right end position.

With the miter-box saw, not only can flat and wide workpieces W1 or tall and narrow workpieces W2 be sawed selectively, but, for example, angular workpieces W3, as shown with dash-dot lines in Figure 1, can also be sawed. In this case, a part of the miter cut is performed with the carrier arm positioned according to Figure 1 and the other part of the miter cut is performed with the carrier arm positioned according to Figure 2.

For performing such cuts, the embodiment shown in Figure 4 is especially suited.

In the embodiment shown in Figure 4, parts with the same function are designated also with the same reference symbols, as they have been used in Figures 1 and 2. The above description of these parts applies accordingly. In the embodiment shown in Figure 4, the pillow block 14 carries a vertical guide 20, which runs parallel to the vertical contact surface 3 and parallel to the plane S-S of the saw blade. (The plane of the saw blade is the plane of the drawing in this case.) A sled 21, which is connected rigidly to the carrier arm 8', can move on the vertical guide 20. An adjusting cylinder 22, whose piston rod 22a engages the sled 21, is provided as an adjusting and fixing device for the sled 21. For performing miter cuts on flat and wide

workpieces W1, the sled 21 is lowered into its lower end position shown completely in Figure 4 and blocked there by means of the adjusting cylinder 22. By moving the pillow block 14' by means of the feed motor 17 to the left, the saw cut is performed, wherein the saw-blade axis A moves in a region of the horizontal plane passing through the support surface 2. In contrast, if tall and narrow workpieces W2 are to be sawed, then the sled 21 is moved by means of the adjusting cylinder 22 into its upper end position and blocked there. By moving the pillow block 14' to the left, the saw cut is then performed, wherein the saw-blade axis moves in a region behind the vertical contact surface 3.

Also in the embodiment shown in Figure 5, parts with the same function are again designated with the same reference symbols, as those that were used in Figures 1 and 2. In the pivoting frame 5, a vertical guide 23 is provided, which runs parallel to the vertical contact surface 3 and parallel to the plane of the saw blade (plane of the drawing). The pillow block 14" is guided so that it can move vertically on this vertical guide 23 and can be fixed in its two end positions. For moving and fixing the pillow block 14", for example, an adjusting cylinder 24 can be provided. The carrier arm 8", on whose free end the saw blade 13 is mounted, is mounted on the pillow block 14" so that it can pivot about an axis 25 running horizontally and parallel to the saw-blade axis A. Furthermore, the feed motor 26 engages the carrier arm 8". For cutting flat and wide workpieces W1, the pillow block 14", as shown in Figure 5, is brought into its lower end position and held there by means of the adjusting cylinder 24. For performing the saw cut, the carrier arm 8" is pivoted forwards by means of the feed motor 26, wherein the segment 13a of the saw blade 13 passes through the breaks in the support surface 2 and the contact surface 3. If tall and narrow workpieces W2 are to be cut, then the pillow block 14" is moved and locked in its upper end position by means of the adjusting cylinder 24. For performing the saw cut, the carrier arm 8" is pivoted to the left by means of the feed motor 26, wherein the segment 13b of the saw blade projects forwards past the contact surface 3.

The cutting region of the miter-box saw is dependent on the height of the segment 13a, 13b of the saw blade 13. For equal-sized saw-blade diameters, this height depends on how large the bearing arrangement is on the free end of the carrier arm. In addition, when tilted about the tilting axis K, the overhang of the bearing arrangement on the saw-blade axis in the axial direction plays a role. So that even small miter angles $\alpha$ of approximately 30° can be cut with sufficient cutting height, and thus so that the saw aggregate unit can be pivoted in two direction by means of the pivoting frame 5, the configuration shown in Figure 6 is advantageous. Here, the free end 8a of the carrier arm 8 is embodied as a fork. The saw-blade shaft 11 is here mounted on the two legs 27a and 27b, and the saw blade 13 engages between the two legs 27a and 27b. The saw-blade shaft 11 comprises the two parts 11a and 11b, wherein the part 11a is mounted on the leg 27a so that it cannot move in the axial direction. The part 11b is mounted in the leg 27b so

that it can move in the axial direction, so that after loosening and removing the retaining screw 28, the part 11b can be moved upwards according to Figure 6 so far that it is possible to replace the saw blade 13.

9

Fig.2
W2
3
8a
13
13b
1
III
2
K
A
B
K
4
6
8
5
16
12
9
15
14
17a
17

JA000344

10

Fig.3
S
13
3
A
K
α
α
2
4
15
5
S'
15
6

JA000345

11

Fig. 4
3
13
20
22
W2
W1
1
K
2
K
22a
4
5
15
A
8'
14'
21
17

JA000346



12

Fig.5
3
W2
W1
13b
1
13a
2
13
K
K
A
4
5
24
23
25
14"
8"
26
Fig.6
28
11
A
10
27a
11a
13
8
8a
27b
11b

JA000347

Fig.7
W2
3
13
19
W1
2
18
13